PETER J. SALMON, OSB No. 141860
Email: psalmon@aldridgepite.com
ALDRIDGE PITE, LLP
621 SW MORRISON STREET, SUITE 425
PORTLAND, OR 97205
TELEPHONE: (858) 750-7600
FACSIMILE:  (619) 326-2430

Attorneys for Defendant Federal Home Loan Mortgage Corporation aka Freddie Mac

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| MARY P. STRONG, an individual,<br><br>           Plaintiff,<br><br>     v.<br><br>LEHMAN BROTHERS BANK, FSB, BAC HOME LOANS SERVICING LP., AND NATIONSTAR MORTGAGE LLC.; FEDERAL HOME LOAN MORTGAGE CORPORATION AS TRUSTEE FOR SECURITIZED TRUST FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 2998; FREDDIE MAC; AURORA COMMERCIAL CORP.; ELECTRONIC REGISTRATION SYSTEM, AKA "MERS" AND DOES 1 THROUGH 100, INCLUSIVE,<br><br>           Defendants. | Case No. 16CV19876<br><br>**NOTICE OF REMOVAL** |

## I.    <u>INTRODUCTION</u>

Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"), by and through its attorneys, hereby removes the above-captioned matter, which has been filed by Plaintiff Mary P. Strong ("Plaintiff"), to the United States District Court for the District of Oregon. Removal is

NOTICE OF REMOVAL                                                                                            Page 1

based on 28 U.S.C. § 1331 (Federal Question Jurisdiction) and authorized by 12 U.S.C. § 1452(f)(3). As grounds for removal, Defendant states as follows:

## II.    BACKGROUND

Plaintiff commenced this action on June 23, 2016, by filing a Complaint with the Clerk of the Circuit Court of Oregon for Deschutes County (the "State Court Action"). The State Court Action has been assigned Case Number 16CV19876. No appearances have been filed on behalf of any of the defendants to the State Court Action.

## III.    STATUTORY REQUIREMENTS

Defendant removes this matter pursuant to 28 U.S.C. § 1331, providing that a Federal Court has Federal question subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." The statute that created Defendant Freddie Mac, 12 U.S.C. § 1452(f)(2), provides that "[A]ll civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value." 12 U.S.C. § 1452(f)(2).

Freddie Mac is a Defendant to the State Court Action, which is a civil action. Therefore, the action is "deemed to arise under the law of the United States", and this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 12 U.S.C. § 145(f)(2).

## IV.    PROCEDURAL REQUIREMENTS

Removal to this Court is Proper. Pursuant to 28 U.S.C. §§ 1441(a)-(b) and 1446(a), Freddie Mac files this Notice of Removal in the United States District Court for the District of Oregon, which is the Federal district court embracing the state court where Plaintiff's Complaint

was filed, the Circuit Court of Oregon for Deschutes County. Venue is proper in the district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 117.

Removal is Timely. Defendant has not been served properly with the Complaint, and is not aware of any service of the Complaint on the other defendants. Freddie Mac may remove an action at "any time before trial" pursuant to 12 U.S.C. § 1452(f)(3). This case has not proceeded to trial, and removal is therefore timely.

Bond and Verification. Pursuant to Section 1016 of the Judicial Improvements and Access to Justice Act of 1988, no bond is required in connection with this Notice of Removal. Pursuant to Section 1016 of the Act, this Notice need not be verified.

Signature. This Notice of Removal is signed pursuant to Fed.R.Civ.P. 11. *See* 28 U.S.C. § 1446(a).

Pleadings and Process. True and correct copies of the Complaint filed in the State Court Action, and a current docket sheet, are attached as Exhibits "1" and "2", respectively. *See* 28 U.S.C. § 1446(a).

Notice. Freddie Mac will promptly serve Plaintiff with this Notice of Removal. *See* 28 U.S.C. § 1446(a) and (d). Freddie Mac will also promptly file with the Clerk of the Circuit Court of Oregon for Deschutes County, and serve on Plaintiff and Defendants, a Notice of Removal to Federal Court pursuant to 28 U.S.C. § 1446(d).

/././

/././

/././

/././

/././

NOTICE OF REMOVAL                                                                  Page 3

WHEREFORE, this action should proceed in the United States District Court for the District of Oregon as an action properly removed.

Dated:  July 22, 2016                    ALDRIDGE PITE, LLP


By:    /s/ Peter J. Salmon
        PETER J. SALMON, OSB No. 141860
        psalmon@aldridgepite.com
        4375 Jutland Drive, Suite 200
        San Diego, CA 92117
        Phone No.: (858) 750-7600
        Fax No.: (619) 590-1385

        Attorneys for Defendant
        FEDERAL HOME LOAN MORTGAGE CORPORATION

Mary Strong, Plaintiff pro se
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **MARY P. STRONG, an individual** | **Case No. 16CV19876** |
| | |
| **Plaintiff,** | **COMPLAINT FOR:** |
| | 1. **LACK OF STANDING TO** |
| | **FORECLOSE;** |
| | 2. **FRAUD IN THE CONCEALMENT;** |
| **vs.** | 3. **FRAUD IN THE INDUCEMENT;** |
| | 4. **INTENTIONAL INFLICTION OF** |
| | **EMOTIONAL DISTRESS** |
| **LEHMAN BROTHERS BANK, FSB, BAC** | 5. **QUIET TITLE;** |
| **HOME LOANS SERVICING LP., AND** | 6. **SLANDER OF TITLE;** |
| **NATIONSTAR MORTGAGE LLC.;** | 7. **DECLARATORY RELIEF;** |
| **FEDERAL HOME LOAN MORTGAGE** | 8. **RESCISSION.** |
| **CORPORATION AS TRUSTEE FOR** | |
| **SECURITIZED TRUST FREDDIE MAC** | |
| **MULTICLASS CERTIFICATES, SERIES** | |
| **2998; FREDDIE MAC; AURORA** | |
| **COMMERCIAL CORP.; ELECTRONIC** | |
| **REGISTRATION SYSTEM, AKA** | |
| **"MERS" AND DOES 1 THROUGH 100,** | |
| **INCLUSIVE** | |
| | |
| **Defendants.** | |

COMPLAINT – STRONG V. NATIONSTAR ET AL

## BACKGROUND

Nationstar Mortgage has refused payments totaling $38,255.71 made by Plaintiff/homeowner through June 23, 2016, as detailed in Exhibit A attached here. Nationstar Mortgage has failed to respond coherently to Plaintiff's Qualified Written Request attached here as Exhibit B. Nationstar Mortgage has refused, repeatedly to provide answers to numerous requests from me to explain and justify disparities in their accounting with respect to my mortgage loan. See Exhibits 1 - 19 to Plaintiff's Declaration and Exhibits in Support of Complaint, attached here.

Plaintiff had no reasonable way of knowing what Defendants had done and were doing with respect to the treatment, securitization and servicing of this debt. Defendants did not and would not disclose their true actions, nor was there language in the mortgage contract signed by Plaintiff describing Defendants' actions relating to the sale, securitization and servicing of this loan.

The law requires that any party that prosecutes a foreclosure must have the power to foreclose. Furthermore, the use of forged signatures on recorded documents constitutes fraud.

In HOOKER, Plaintiffs V. NORTHWEST TRUSTEE SERVICES INC; BANK OF AMERICA, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. Defendants (Case 1:10-cv-03111-PA), Defendants' Motion to Dismiss is denied. Defendants are not permitted to violate Oregon law regulating non-judicial foreclosure. The Oregon Trust Deed Act "represents a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor." Staffordshire Investments, Inc. v. Cal-Western Reconveyance Corp., 209 Or.App. 528, 542, 149 P.3d 150, 157(2006). In part due to the legislature's desire "to protect the grantor against the unauthorized loss of its property," a party conducting a non-judicial foreclosure must demonstrate strict compliance with the Act.

In re McCoy, 2011 WL 477820, at *3. Defendants appear to argue that rather than requiring the recording of every assignment of the trust deed, the Act allows defendants to instead track every assignment of the trust deed within the MERS system, recording only the final assignment of the

trust deed in the county land records. Because the Oregon Trust Deed Act requires the recording of all assignments by the beneficiary, defendants' argument fails.  ORS 86.735(1); see In re McCoy, 2011 WL 477820, at *3 4. Oregon's recording requirement is consistent with the longstanding rule that the trust deed or mortgage generally follows the note.  Carpenter v. Longan, 83 U.S. 271, 274 (1872); U.S. Nat'l Bank of Portland v. Holton, 99 Or. 419, 427 9, 195 P. 823, 826 (1921) (collecting cases).

## I. <u>THE PARTIES</u>

Plaintiff is now, and at all times relevant to this action, a resident of the County of DESCHUTES, State of OREGON.

Defendant, LEHMAN BROTHERS BANK, FSB, BAC HOME LOANS SERVICING LP., and NATIONSTAR MORTGAGE LLC. (herein referred to as "LEHMAN BROTHERS, BAC, and NATIONSTAR") is a National Banking Association, doing business in the County of DESCHUTES, State of OREGON. Plaintiff is further informed and believes, and thereon alleges, that LEHMAN BROTHERS, BAC, and NATIONSTAR is the Originator of the loan.

Defendant, FEDERAL HOME LOAN MORTGAGE CORPORATION (herein referred to as "FREDDIE MAC"), as Trustee for securitized trust FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 2998 (herein referred to as "SERIES 2998"). Plaintiff is informed and believes, and thereon alleges that, Defendant FREDDIE MAC, is a national banking association, doing business in the County of DESCHUTES, State of OREGON and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, AURORA COMMERCIAL CORP. Plaintiff is informed and believes, and thereon alleges that, Defendant AURORA COMMERCIAL CORP., is a corporation, doing business in the County of DESCHUTES, State of OREGON and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Exhibit 1
Page 3 of 144

Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Plaintiff is informed and believes, and thereon alleges, that MERS is a corporation duly organized and existing under the laws of OREGON, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of DESCHUTES, State of OREGON. Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Mortgage/Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust, as more particularly described in this Complaint.

At all times relevant to this action, Plaintiff has owned the Property located at 2559 NW MONTEREY PINES DRIVE BEND, OR 97701 (the "Property").

Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and therefore allege, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture

## II. JURISDICTION

The transactions and events which are the subject matter of this Complaint all occurred within the County of DESCHUTES, State of OREGON.  The Property is located within the County of DESCHUTES, State of OREGON with an address of 2559 NW MONTEREY PINES DRIVE BEND, OR 97701.

## III. INTRODUCTORY ALLEGATIONS

This is an action brought by Plaintiff for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

Plaintiff/homeowner disputes the title and ownership of the real property in question (the "Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership of Plaintiff's mortgage note and/or Mortgage/Deed of Trust, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Mortgage/Deed of Trust related to the Property, and, thus, do not have lawful ownership or a security interest in Plaintiff's Home which is described in detail herein. For these reasons, the Court should Quiet Title to the property in Plaintiff's name.

Plaintiff homeowner brings causes of action against all defendants for fraud, rescission, quiet title, declaratory judgment and injunctive relief upon the facts and circumstances surrounding Plaintiff's original loan transaction and subsequent securitization.

Plaintiff alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Mortgage/Deed of Trust, resulting in imperfect security interests and claims.

Plaintiff further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or indorsement of the Promissory Note and/or proper assignment of the Mortgage/Deed of Trust herein; therefore, none of the Defendants have perfected any claim of title or security interest in the Property. Defendants, and each of them, do not have the ability to

COMPLAINT – STRONG V. NATIONSTAR ET AL

**Exhibit 1**
**Page 5 of 144**

establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired. Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiff and Defendants, and each of them. Plaintiff desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Mortgage/Deed of Trust.

Plaintiff also seeks redress from Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:

1. An invalid and unperfected security interest in Plaintiff's Home hereinafter described;
2. Void "True Sale(s)" violating OREGON law and express terms of the Pooling and Servicing Agreement ("PSA") governing the securitization of Plaintiff's mortgage;
3. An incomplete and ineffectual perfection of a security interest in Plaintiff's Home;

## IV. <u>SPECIFIC ALLEGATIONS</u>

On or about JUNE 28, 2005 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with LEHMAN BROTHERS, BAC, and NATIONSTAR by obtaining a $182,200 mortgage loan secured by Plaintiff's principal residence, (Subject Property). This note was secured by a First Mortgage/Trust Deed on the Property in favor of LEHMAN BROTHERS, BAC, and NATIONSTAR.

This NOTE does not detail or describe anywhere in the terms of this contract signed and agreed to by Plaintiff Mary Strong the meaning of "transfer", nor does this document describe sale of this mortgage debt and the payments of interest and principal made by Plaintiff Mary Strong to high risk CDO (Credit Default Obligation), CMO (Collateralized Mortgage Obligation) and CDS (Credit Default Swap) markets, nor did Plaintiff Mary Strong contractually agree at any time that this loan would be sold/transferred or otherwise distributed to the CDO, CMO/CDS securitization markets, and subsequently assigned to various "servicers", without Plaintiff's knowledge, permission or prior agreement.

At no time did Plaintiff Mary Strong have knowledge of these securitization tools, nor

did Plaintiff understand or agree that Plaintiff Mary Strong's mortgage Note would be used in this manner, without Plaintiff's knowledge or permission.

Plaintiff Mary Strong's purchase of this home and Plaintiff Mary Strong's agreement to terms of a mortgage loan were undertaken for the purpose of providing Plaintiff Mary Strong a primary residence and a conservative and safe investment.  If Plaintiff had desired to invest her funds in Wall Street derivatives, this is what Plaintiff would have done.  Due to high-risk actions taken with Plaintiff Mary Strong's personal funds, without Plaintiff Mary Strong's explicit knowledge, permission or agreement in the CDO, CMO and CDS bond markets, Plaintiff has suffered damage as described in this Complaint.

Defendants have refused payments made by Plaintiff/homeowner totaling $38,255.71 through June 23, 2016 as detailed in Exhibit A attached. Nationstar Mortgage has failed to respond coherently to my Qualified Written Request attached here as Exhibit B.  Nationstar Mortgage has refused, repeatedly to provide answers to numerous requests from me to explain and justify disparities in their accounting with respect to my mortgage loan. See Exhibits 1 - 19 to Plaintiff's Declaration and Exhibits in Support of Complaint, attached.

Plaintiff's loan was securitized, with the Note not being properly transferred to Defendant, FREDDIE MAC, acting as the Trustee for the SERIES 2998 Trust holding plaintiff's note. Documents filed with the SEC by the securitization participants allegedly claim that the note and Mortgage/Deed of Trust at issue in this case were sold, transferred and securitized by Defendants, with other loans and mortgages with an aggregate principal balance of approximately $533,570,057 into the SERIES 2998 Trust, which is a Common Law Trust formed pursuant to New York law. A detailed description of the mortgage loans which form the SERIES 2998 Trust is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC and which can be accessed through the above mentioned footnote.

An expert, certified, forensic audit of the Plaintiff's loan documents reveals that Plaintiff's

mortgage note was required to at least go through this assignment chain of key parties before it reached the REMIC trustee it was destined for.  The Plaintiff's PSA requires that his/her note or Mortgage/Deed of Trust had to be indorsed and assigned, or transferred, respectively, to the trust and executed by multiple intervening parties in the above chain of assignment before it reached the REMIC Trustee.

Plaintiff executed a series of documents, including but not limited to a Note and Mortgage/Deed of Trust, securing the Property in the amount of note. The original beneficiary and nominee under the Mortgage/Deed of Trust was MERS.

Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage on the Property, the debt or obligation evidenced by the Note and the Mortgage/Deed of Trust executed by Plaintiff in favour of the original lender and other Defendants regarding the Property was not properly assigned and/or transferred to Defendants operating the pooled mortgage funds or REMIC trusts in accordance with the PSA and/or OREGON law to the entities making and receiving the purported assignments to this trust.

Plaintiff alleges that the PSA requires that each Note or Mortgage/Deed of Trust had to be indorsed, assigned, or transferred, respectively, to the trust and executed by multiple intervening parties before it reached the Trust. Here, neither the Note and/or the Mortgage/Deed of Trust, or both, was assigned to the Securitized Trust by the closing date. Therefore, under the PSA, any assignments of the Mortgage/Deed of Trust beyond the specified closing date for the Trust are void.

Plaintiff further alleges that even if the Mortage/Mortgage/Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers/assignments to and from each intervening party.

Exhibit 1
Page 8 of 144

Plaintiff is informed and believes, and thereon alleges, that the SERIES 2998 Trust had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment in mortgage backed securities as described in the Prospectus identified herein below. A detailed description of the mortgage loans which form the SERIES 2998 Trust is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC and which can be accessed through the below mentioned footnote.[1]

Plaintiff also alleges that the Note was secured by the Mortgage/Deed of Trust. Plaintiff alleges that as of the date of the filing of this Complaint, the Mortgage/Deed of Trust had not been legally assigned to any other party or entity.

Plaintiff is informed and believes, that Defendant FREDDIE MAC, alleges that it is the "holder and owner" of the Note and the beneficiary of the Mortgage/Deed of Trust. However, the Note and Mortgage/Deed of Trust identify the mortgagee and note holder as the original lending institution or Mortgage Originator. Documents state that the original lender allegedly sold the mortgage loan to SERIES 2998 Trust.

Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for SERIES 2998 Trust, the Note was duly indorsed, transferred and delivered to SERIES 2998 Trust, including all intervening transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Mortgage/Deed of Trust was duly assigned, transferred and delivered to SERIES 2998 Trust, via the trustee FREDDIE MAC, including all intervening transfers/assignments.

Plaintiff further alleges that any documents that purport to transfer any interest in the Note to SERIES 2998 Trust after the Trust closing date are void as a matter of law, pursuant to New York trust law and relevant portions of the PSA.

---

[1] http://www.sec.gov/Archives/edgar/data/815018/000116231807000567/m0565424b5.htm

Plaintiff's debt or obligation did not comply with New York law, and/or other laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest in the Property was, thus, never perfected. The alleged holder of the Note is not the beneficiary of the Mortgage/Deed of Trust. The alleged beneficiary of Plaintiff's Mortgage/Deed of Trust does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or is not the real party in interest, or agent or nominee of the real aprt in interest, with regard to any action taken or to be taken against the Property.

Plaintiff is also informed and believes, and thereon alleges that at all times herein mentioned, and any assignment of a Mortgage/Deed of Trust without proper transfer of the obligation that it secures is a legal nullity.  In order for and defendant, including the trusteeof the Securitized Trust, to have a valid and enforceable secured claim against Plaintiff's Home, the party claiming the right to foreclose must prove and certify to all parties that, among other things required under the PSA:

1.  There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

2.  The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Plaintiff alleges that the Trust cannot demonstrate that it had perfected its security interest in Plaintiff's Home that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case, through their agents or otherwise.

Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to the

Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff's herein and all other mortgage loans identified in the PSA.

Plaintiff is further informed and believes, and thereon alleges, that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificates described in the PSA, and were intended by the parties to be a "bona fide" or a "True Sale." Since, as alleged herein below, True Sales did not actually occur, Plaintiff alleges that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

Plaintiff is further informed and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the Mortgage/Deed of Trust on Plaintiff's Home herein.

Plaintiff is informed and believes, and thereon alleges, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust. Plaintiff further alleges, on information and belief, that the PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to SERIES 2998 Trust, which Mortgage Files include the original Deeds of Trust, herein.

Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Mortgage/Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to:

The splitting or separation of title, ownership and interest in Plaintiff's Note and Mortgage/Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff's Mortgage/Deed of Trust;

a.      When the loan was sold to each intervening entity, there were no Assignments of the Mortgage/Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

b.      The failure to assign and transfer the beneficial interest in Plaintiff's Mortgage/Deed of Trust to FREDDIE MAC, in accordance with the PSA of the Defendants, as Securitization Participants;

c.      The failure to indorse, assign and transfer Plaintiff's Note and/or mortgage to Defendant FREDDIE MAC, as Trustee for SERIES 2998 Trust, in accordance with the PSA and applicable New York law and/or the Uniform Commercial Code;

d.      No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under OREGON law, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

e.      Defendants, and each of them, violated the pertinent terms of the PSA.

Plaintiff, therefore, alleges, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate

Furthermore, the terms of the finance transaction with LEHMAN BROTHERS, BAC, and NATIONSTAR are not clear or conspicuous, nor consistent, and are illegal which violates several statutes and is in essence creates a fraudulent and unenforceable loan. Further, this loan

was underwritten without proper due diligence by LEHMAN BROTHERS, BAC, and NATIONSTAR as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns. LEHMAN BROTHERS, BAC, and NATIONSTAR also used a "GDW Cost of Savings" as the Index for the basis of this loan. Because the Lender controls this Index and it is directly based upon the average rate of interest LEHMAN BROTHERS, BAC, and NATIONSTAR parent company, it was not a valid index for the basis of the loan.

In addition, and unbeknownst to Plaintiff, LEHMAN BROTHERS, BAC, and NATIONSTAR illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan which LEHMAN BROTHERS, BAC, and NATIONSTAR knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only. Had LEHMAN BROTHERS, BAC, and NATIONSTAR used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining comply with the requirement to provide Plaintiff with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff would not have qualified for the loan in the first place. Consequently, LEHMAN BROTHERS, BAC, and NATIONSTAR sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff. LEHMAN BROTHERS, BAC, and NATIONSTAR ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

There was no determination of the ability of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

Additionally, Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

The purpose of entering into the above-described mortgage loan transactions was for Plaintiff to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' combined actions as alleged herein.

## V. FIRST CAUSE OF ACTION:
## LACK OF STANDING/WRONGFUL FORECLOSURE

**A.      No Defendant has Standing to Foreclose**

Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have the right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Property, or cannot prove to the court they have a valid interest as a real party in interest to foreclose. Thus, the purported power of sale, or power to foreclose judicially, by the above specified Defendants, and each of them, no longer applies.

Plaintiff is informed and believes and there upon allege that the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest. The only individuals who are the holder of the note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks or other entities holding the note in the middle of the chain of transfers were paid in full.

Plaintiff further contends that the above specified Defendants, and each of them, do not have the right to foreclose on the Property because said Defendants, and each of them, did not properly comply with the terms of Defendants' own securitization requirements (contained in the PSA)

and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

Plaintiff requests that this Court find that the purported power of sale contained in the Note and Mortgage/Deed of Trust has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them. Plaintiff further requests that title to the Property remain in its name, with said Mortgage/Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem that any attempted sale of the Property is "unlawful and void".

**B.    Defendant MERS Cannot be a Real Party in Interest in a Securitized Mortgage**

Since the creation of Plaintiff's Note herein and Mortgage/Deed of Trust, Defendant MERS was named the "beneficiary" of the Mortgage/Deed of Trust.

Plaintiff is informed and believes, and thereon alleges, that Defendant MERS lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MERS' powers and duties to functioning as an electronic registration system of certain types of securities.

Plaintiff is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have standing.

Plaintiff is informed and believes, and thereon alleges, that pursuant to New York law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

The Note in this action identifies the entity to whom it was payable, the original lender. Therefore, the Note herein cannot be transferred unless it is indorsed; the attachments to the notice of default do not establish that indorsements were made, nor are there any other notices which establish that the original lender indorsed and sold the note to another party.

Furthermore, insofar as the parties to the securitization of Plaintiff's Note and Mortgage/Deed of Trust base their claim that the Note was transferred or assigned to Defendant FREDDIE MAC, the Trustee of the Securitized Mortgage herein, by the original lender, it is well established state law that the assignment of a Mortgage/Deed of Trust does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

Pursuant to state law, to perfect the transfer of mortgage papers as collateral for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The Note herein specifically identifies the party to whom it was payable to and the Note, therefore, cannot be transferred unless it is indorsed.

Defendants, and each of them, cannot produce any evidence that the Promissory Note has been transferred; therefore, Defendant MERS could only transfer whatever interest it had in the Mortgage/Deed of Trust herein. The Promissory Note and Mortgage/Deed of Trust are inseparable: an assignment of the Note carries the mortgage (ie, Mortgage/Deed of Trust) with it, while an assignment of the Mortgage/Deed of Trust alone is a nullity.[2] Therefore, if one party

---

[2]  *Niday v. GMAC Mortg., LLC*, 251 Or.App. 278, 284 P.3d 1157 (D. Or. 2012) ("It was well established that the mortgage was merely an incident to the underlying debt.") (*Citing Beauchamp v. Jordan*, 176 Or 320, 327, 2 157 P2d 504 (1945) ("They were merely an incident to the debts evidenced by the above mentioned notes and the transfer of the notes effected a transfer of these mortgages." (Citations omitted; emphasis added.)); *Rutherford v. Eyre & Co.*, 174 Or 162, 172, 148 5 P2d 530 (1944) ("[S]ome point is sought to be made by the plaintiffs of the fact that the 6 collateral agreements were not formally assigned to Eyre and Co. But this, of course, was not essential; the mortgages were but incidents to the notes, and endorsement and 8 delivery of the notes carried the mortgages with them  and necessarily, also, the 9 collateral agreements, as an integral part of those instruments.")).

receives the Note and another party receives the Mortgage/Deed of Trust (as in this case), the holder of the Note prevails regardless of the order in which the interests were transferred.

Defendants MERS has failed to submit documents authorizing MERS, as nominee for the original lender, to assign the subject mortgage to the foreclosing trustee. Hence, MERS lacked authority as mere nominee to assign Plaintiff's mortgage, making any assignment from MERS defective.

In the instant action, MERS, as the nominee not only lacks authority to assign the mortgage, but cannot demonstrate the Trustee's knowledge or assent to the assignment by MERS to the foreclosing trustee.

Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying note, is void under law. Therefore, Defendant, MERS, cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in real property, and cannot recover anything from Plaintiff.

Defendants, and each of them, through the actions alleged above, have or claim the right to illegally commence foreclosure under the Note on the Property via a foreclosure action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that real property is unique.

The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home and will lose the Property.

Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff

has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## VI. SECOND CAUSE OF ACTION:
## FRAUD IN THE CONCEALMENT

Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization, Defendant concealed the fact that Borrower's loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans. Changing the character of the loan in this way had a materially negative effect on Plaintiff that was known by Defendant but not disclosed.

Defendant knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans.

Defendant intended to induce Plaintiff based on these misrepresentations and improper disclosures.

Plaintiff's reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendants true intentions and profits from the proposed risky loan. Plaintiff would have known that the actions of Defendant would have an adverse effect on the value of Plaintiff's home.

Defendants' failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans and accept the Services as alleged herein. Defendants were aware of the misrepresentations and profited from them.

As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## VII. <u>THIRD CAUSE OF ACTION:</u>
## <u>FRAUD IN THE INDUCEMENT</u>

Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

Defendants, intentionally misrepresented to Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

Defendants misrepresented that they are the "holder and owner" of the Note and the beneficiary of the Mortgage/Deed of Trust. However, this was not true and was a misrepresentation of material fact. Documents state that the original lender allegedly sold the mortgage loan to

SERIES 2998 Trust. Defendants were attempting to collect on a debt to which they have no legal, equitable, or pecuniary interest in. This type of conduct is outrageous. Defendants are fraudulently foreclosing on the Property which they have no monetary or pecuniary interest. This type of conduct is outrageous.

Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans and accept the Services as alleged herein.

The material misrepresentations were made by Defendants with the intent to cause Plaintiff to reasonably rely on the misrepresentation in order to induce the Plaintiff to rely on the misrepresentations and foreclosure on the Property. This material misrepresentation was made with the purpose of initiating the securitization process as illustrated above, in order to profit from the sale of the Property by selling the note to sponsors who then pool the note and sell it to investors on Wall Street and other New York investment banks.

Defendants were aware of the misrepresentations and profited from them.

As a direct and proximate result of the misrepresentations and concealment, Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## VIII. FOURTH CAUSE OF ACTION:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.    Nationstar Mortgage has refused payments totaling $38,255.71 made by Plaintiff/homeowner through June 23, 2016, as detailed in Exhibit A attached.    Nationstar Mortgage has failed to respond coherently to my Qualified Written Request attached here as Exhibit B.  Nationstar Mortgage has refused, repeatedly to provide answers to numerous requests from me to explain and justify disparities in their accounting with respect to my mortgage loan. See Exhibits 1 - 19 to Plaintiff's Declaration And Exhibits In Support of Complaint, attached.

The actions of Defendants, as set forth herein, have resulted in the Plaintiff being threatened with the loss of the Property. This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

Defendants' conduct – fraudulently attempting to foreclose or claimng the right to foreclose on a property in which they have no right, title, or interest is  outrageous and extreme and exceeds all bounds. Defendants have not acted in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard for Plaintiff/homeowner legal rights and the law.

## IX. FIFTH CAUSE OF ACTION:
## SLANDER OF TITLE

Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

Exhibit 1
Page 21 of 144

Plaintiff incorporates here each and every allegation set forth above. Defendants, and each of them, disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of documents by a party who does not possess that right.

Said Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's legal title to the Property. By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiff's legal title was made to the world at large.

As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive them of their exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiff is entitled to an award of punitive damages in an

amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

## X. SIXTH CAUSE OF ACTION:
### QUIET TITLE

Plaintiff's title to the above-described property is derived as follows: On or about JUNE 28, 2005 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with LEHMAN BROTHERS, BAC, and NATIONSTAR by obtaining a $182,200 mortgage loan secured by Plaintiff's principal residence, (Subject Property). This note was secured by a First Trust Deed on the Property in favor of LEHMAN BROTHERS, BAC, and NATIONSTAR.

All Defendants named herein claim an interest and estate in the property adverse to plaintiff in that defendant asserts he is the owner of the note secured by the Mortgage/Deed of Trust to the property the subject of this suit.

All Defendants named herein claims an interest and estate in the property adverse to plaintiff in that defendant asserts he is the owner of Mortgage/Deed of Trust securing the note to the property the subject of this suit.

The claim of all defendant are without any right whatsoever, and defendants have no right, estate, title, lien or interest in or to the property, or any part of the property.

The claim of all defendant herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to plaintiff's title, and these claims constitute a cloud on plaintiff's title to the property.

Plaintiff, therefore, alleges, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an

Exhibit 1
Page 23 of 144

unsecured claim against Plaintiff's estate.

Plaintiff requests the decree permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to plaintiff's title to the property; and

Plaintiff request the court award plaintiff costs of this action, and such other relief as the court may deem proper.

## XI. SEVENTH CAUSE OF ACTION:
## DECLARATORY RELIEF

Plaintiff re-alleges and incorporatess by reference all preceding paragraphs as though fully set forth herein.

An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties regarding the Note and Mortgage/Trust Deed.

Plaintiff contends that pursuant to the Loans, Defendants do not have authority to foreclose upon and sell the Property.

Plaintiff is informed and believes and upon that basis alleges that Defendants dispute Plaintiff's contention and instead contend they may properly foreclose upon the Property.

Plaintiff therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

Plaintiff requests a determination of the validity of the Mortgage/Trust Deeds as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deeds.

Plaintiff requests a determination of the validity of the NOD (Notice Of Default).

Plaintiff requests a determination of whether any Defendant has authority to foreclose on the Property.

Plaintiff requests all adverse claims to the real property be must determined by a decree of this court.

Plaintiff requests the decree declare and adjudge that plaintiff is entitled to the exclusive possession of the property.

Plaintiff requests the decree declare and adjudge that plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

Plaintiff requests the decree declare and adjudge that defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## XIV. EIGHTH CAUSE OF ACTION:
## RESCISSION

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

Plaintiff is entitled to rescind the loan and all accompanying loan documents for all of the foregoing reasons: 1) TILA Violations; 2) Failure to provide a Mortgage Loan Origination Agreement; 3) Fraudulent Concealment; 4) Fraudulent Inducement; ; 5) failure to abide by the PSA; 6) making illegal or fraudulent transfers of the note and Mortgage/Deed of Trust; and 5) Public Policy Grounds, each of which provides independent grounds for relief.

Exhibit 1
Page 25 of 144

The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind. Here, Defendants have failed to properly disclose the details of the loan. Specifically, the initial disclosures do not initial TILA disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan she could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, will ask for the following for each Cause of Action to be awarded:

### FIRST CAUSE OF ACTION - STANDING

1. For Compensatory Damages in an amount to be determined by proof at trial;
2. For Special Damages in an amount to be determined by proof at trial;
3. For General Damages in an amount to be determined by proof at trial;
4. For Punitive Damages as allowed by law;
5. For Restitution as allowed by law;
6. For Attorney's Fees and Costs of this action;
7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:
a. Plaintiff, Plaintiff is the prevailing party;
b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the

Property;

c.     The Sponsor has no enforceable secured or unsecured claim against the Property;

d.     The Depositor has no enforceable secured or unsecured claim against the Property;

e.     The Mortgage Originator has no enforceable secured or unsecured claim against the
Property;

f.     Determines all adverse claims to the real property in this proceeding;

g.     Plaintiff is entitled to the exclusive possession of the property;

h.     Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the
above-described real property.

i.     Defendants, and each of them, and all persons claiming under them, have no estate, right,
title, lien, or interest in or to the real property or any part of the property.

## SECOND CAUSE OF ACTION – FRAUD IN THE CONCEALMENT

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

## THIRD CAUSE OF ACTION – FRAUD IN THE INDUCEMENT

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

## FOURTH CAUSE OF ACTION – I.I.E.D.

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

## FIFTH CAUSE OF ACTION – SLANDER OF TITLE

1.    For Compensatory Damages in an amount to be determined by proof at trial;

2.    For Special Damages in an amount to be determined by proof at trial;

3.    For General Damages in an amount to be determined by proof at trial;

4.    For Punitive Damages as allowed by law;

5.    For Restitution as allowed by law;

6.    For Attorney's Fees and Costs of this action;

7.    For Declaratory Relief, including but not limited to the following Decrees of this Court that:

a.    Plaintiff, Plaintiff is the prevailing party;

b.    The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

c.    The Sponsor has no enforceable secured or unsecured claim against the Property;

d.    The Depositor has no enforceable secured or unsecured claim against the Property;

e.    The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

f.    Determines all adverse claims to the real property in this proceeding;

g.    Plaintiff is entitled to the exclusive possession of the property;

h.    Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

i.    Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

**SIXTH CAUSE OF ACTION – QUIET TITLE**

1.    For Compensatory Damages in an amount to be determined by proof at trial;

2.    For Special Damages in an amount to be determined by proof at trial;

3.    For General Damages in an amount to be determined by proof at trial;

4.    For Punitive Damages as allowed by law;

5.    For Restitution as allowed by law;

6.    For Attorney's Fees and Costs of this action;

7.    For Declaratory Relief, including but not limited to the following Decrees of this Court that:

a.  Plaintiff, Plaintiff is the prevailing party;

b.  The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

c.  The Sponsor has no enforceable secured or unsecured claim against the Property;

d.  The Depositor has no enforceable secured or unsecured claim against the Property;

e.  The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

f.  Determines all adverse claims to the real property in this proceeding;

g.  Plaintiff is entitled to the exclusive possession of the property;

h.  Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

i.  Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## SEVENTH CAUSE OF ACTION – DECLARATORY RELIEF

1.  For Compensatory Damages in an amount to be determined by proof at trial;

2.  For Special Damages in an amount to be determined by proof at trial;

3.  For General Damages in an amount to be determined by proof at trial;

4.  For Punitive Damages as allowed by law;

5.  For Restitution as allowed by law;

6.  For Attorney's Fees and Costs of this action;

7.  For Declaratory Relief, including but not limited to the following Decrees of this Court that:

a.  Plaintiff, Plaintiff is the prevailing party;

b.  The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

c.  The Sponsor has no enforceable secured or unsecured claim against the Property;

d.  The Depositor has no enforceable secured or unsecured claim against the Property;

e.  The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

f.  Determines all adverse claims to the real property in this proceeding;

g.    Plaintiff is entitled to the exclusive possession of the property;

h.    Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

i.    Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## EIGHTH CAUSE OF ACTION - RESCISSION

1.    For Compensatory Damages in an amount to be determined by proof at trial;

2.    For Special Damages in an amount to be determined by proof at trial;

3.    For General Damages in an amount to be determined by proof at trial;

4.    For Punitive Damages as allowed by law;

5.    For Restitution as allowed by law;

6.    For Attorney's Fees and Costs of this action;

7.    For Declaratory Relief, including but not limited to the following Decrees of this Court that:

a.    Plaintiff, Plaintiff is the prevailing party;

b.    The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

c.    The Sponsor has no enforceable secured or unsecured claim against the Property;

d.    The Depositor has no enforceable secured or unsecured claim against the Property;

e.    The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

f.    Determines all adverse claims to the real property in this proceeding;

g.    Plaintiff is entitled to the exclusive possession of the property;

h.    Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

i.    Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

Dated: _____     _____

                                                  Mary Strong, Plaintiff, pro se

# EXHIBIT A – COMPLAINT

# STRONG V. LEHMAN BROTHERS, FSB, BAC, NATIONSTAR ET AL

**MARY STRONG    REFERENCE No. CN-04-16-10887    NATIONSTAR LOAN #059885609**

| DUE DATE | DATE PAID | AMOUNT PAID | NOTES |
|---|---|---|---|
| June, July & August 2010 | 9/13/2010 | $2,303.62 | MS |
| September 2010 | 10/4/2010 | $621.62 | MS |
| October & partial November 2010 | 10/22/2010 | $681.91 | MS |
| November 2010 bal per Aurora letter 11/19 | 11/29/2010 | $249.02 | MS |
| Deember 2010 | 11/29/2010 | $445.40 | MS |
| January 2011 | 4/11/2011 | $417.31 | MS |
| February 2011 | 7/27/2012 | $455.27 | MPA |
| March 2011 | 7/27/2012 | $417.33 | MPA |
| April 2011 | 7/27/2012 | $417.33 | MPA |
| Mary 2011 | 5/31/2012 | $455.27 | MPA |
| June 2011 | 7/27/2012 | $417.33 | MPA |
| July 2011 | 7/27/2012 | $417.33 | MPA |
| Country Financial (hazard insurance) | 8/4/2011 | $261.37 | MS |
| August 2011 | 8/14/2012 | $417.33 | MPA |
| September 2011 | 9/11/2012 | $417.33 | MPA |
| October 2011 | 10/11/2012 | $417.33 | MPA |
| November 2011 | 11/14/2012 | $417.33 | MPA |
| December 2011 | 12/12/2012 | $417.33 | MPA |
| January 2012 | 1/11/2013 | $417.33 | MPA |
| February 2012 | 4/23/2013 | $455.25 | MS |
| March 2012 | 6/7/2013 | $398.34 | MS |
| April 2012 | 8/19/2013 | $398.34 | MS |
| NATIONSTAR REJECT/REFUND | 8/22/2013 | -$398.34 | EFT payment rejected 8/22/13 |
| TRAVELERS - hazard nsurance/12 mos | 8/20/2013 | $449.00 | MS |
| May 2012 | 8/30/2013 | $455.25 | MS |
| June 2012 | 9/16/2013 | $455.25 | MS |
| July 2012 | 10/2/2013 | $455.25 | MS |
| August 2012 | 4/10/2014 | $398.34 | MS |
| September 2012 - CHECK #1010 | 9/19/2014 | $641.90 | MS |
| October 2012 - CHECK #1011 | 10/21/2014 | $641.90 | MS |
| November 2012 - CHECK #1013 | 11/25/2014 | $649.23 | MS |
| December 2012 - CHECK #1014 | 12/17/2014 | $649.23 | MS |
| January 2013 | 11/11/2015 | $662.34 | MS |
| February 2013 | 11/18/2015 | $731.27 | MS |
| March 2013 (CHECK #1194) | Dec. 2015 | $1,263.00 | MS |
| NATIONSTAR REJECT/REFUND | 12/12/2015 | -$1,263.00 | Payment rejected 12/12/15 |
| April 2013 through January 2016 | 1/19/2016 | $23,758.35 | MS |
| NATIONSTAR REJECT/REFUND | 1/22/2016 | -$23,758.35 | EFT payment rejected 1/22/16 |

| | | | |
|---|---|---|---|
| March 2013 through Jan 2016 ($718.269/month) | 1/22/2016 | $25,139.44 | CASHIER'S CHECK #14389662 |
| February 2016 | 3/10/2016 | $952.71 | MS |
| NATIONSTAR REJECT/REFUND | 3/15/2016 | -$952.71 | EFT payment Rejected 3/15/16 |
| March 2016 | 3/25/2016 | $1,129.15 | CASHIER'S CHECK # 14398753 |
| NATIONSTAR REJECT/rec'd USPS 4/9/16 | | -$1,129.15 | CASHIER'S CHECK #14398753 |
| April 2016 | 4/18/2016 | $1,129.15 | EFT pmt |
| NATIONSTAR PMT REJECTED 4.21.16 | 4/21/2016 | -$1,129.15 | REJECTED SELCO EFT PMT |
| May 2016 | 5/12/2016 | $1,129.15 | EFT payment |
| NATIONSTAR PMT REJECTED 5.17.16 | 5/17/2016 | -$1,129.15 | REJECTED SELCO EFT PMT |
| May 2016 | 5/18/2016 | $4,043.15 | EFT pmt |
| NATIONSTAR PMT REJECTED 5.23.16 | 5/17/2016 | -$4,043.15 | REJECTED SELCO EFT PMT |
| June 2016 | 6/9/2016 | $952.71 | EFT pmt |
| NATIONSTAR PMT REJECTED 6.14.16 | 6/14/2016 | -$952.71 | REJECTED SELCO EFT PMT |
| June 2016 | 6/17/2016 | $3,500.00 | EFT pmt |
| NATIONSTAR PMT REJECTED 6.23.16 | 6/23/2016 | -$3,500.00 | REJECTED SELCO EFT PMT |
| | | | |
| TOTAL PAID JUNE 2010 - JUNE 2016 (73 mos): | | $42,663.41 | |
| Less total interest June 2010 - June 2016 (73 mos. * $398.34) | | -$29,078.82 | |
| BALANCE PAID JUNE 2010 - JUNE 2016: | | $13,584.59 | MS |
| | | | |
| PROPERTY TAX *(paid by MS through 2009)* | | | |
| 2010 Property Taxes (Aurora) | | $2,387.90 | AURORA |
| 2011 Property Taxes | | $2,345.27 | SERICER |
| 2012 Property Taxes | | $2,362.02 | SERICER |
| 2013 Property Taxes | | $2,473.58 | SERICER |
| 2014 Property Taxes | | $2,561.64 | SERICER |
| 2015 Property Taxes | | $2,637.40 | SERICER |
| ADD TOTAL PROPERTY TAXES: | | $14,767.81 | |
| *ADD Insurance @ $488/year ???* | ???? | | |
| BALANCE PAID LESS PROPERTY TAXES: | | -$1,183.22 | |
| | | | |
| PRINCIPAL PMTS DUE STARTING JUNE 2015 ($182,000/20 yrs) | | -$9,110.04 | *$759.17* |
| | | | |
| BALANCE DUE A/O 6.22.16: | | -$10,293.26 | |
| **TOTAL PAYMENTS REJECTED** | | | |
| **BY NATIONSTAR THROUGH JUNE 23, 2016:** | | **-$38,255.71** | |

EXHIBIT A – COMPLAINT, STRONG V. LEHMAN BROTHERS,
FSB, BAC, NATIONSTAR ET AL

**Exhibit 1**      2
**Page 32 of 144**

*EXHIBIT B*

Mary Strong
2559 NW Monterey Pines Drive
Bend, Oregon 97701

December 21, 2015

Nationstar Mortgage
P.O Box 619098
Dallas, TX 75261-9741

RE:    Qualified Written Request
       Mortgage Loan Number 059885609

RE: QUALIFIED WRITTEN REQUEST (RESPA 12 U.S.C. § 2605(e)) AND DEMAND FOR
IMMEDIATE RESPONSE

THIS IS A REQUEST THAT YOU ARE REQUIRED TO COMPLY WITH. YOU HAVE THE
OBLIGATION TO IMMEDIATELY FORWARD THIS DEMAND LETTER TO THE
APPROPRIATE PARTY. A TIMELY RESPONSE IS REQUIRED.

To whom it may concern:

My name is Mary Strong. My real property is located at 2559 NW Monterey Pines Drive, Bend,
Oregon 97703.

**This letter is a Qualified Written Request under RESPA**. Please be advised that I have the
following specific concerns over your accounting and billing practices and I hereby dispute each
of the following:

BILLING AND ACCOUNTING DISPUTES THAT REQUIRE YOUR RESPONSE:
- The current monthly payment amount is not warranted by the terms of the note and deed
  of trust. The amount of the monthly payment should be lower than that based on the note,
  deed of trust, and truth in lending statement provided at the time the loan was originated.

- The most recent monthly mortgage statement "past due payment amount" is not correct,
  and not warranted by the note or deed of trust. These charges are disputed and not
  justified.

- There is evidence in my possession that you may be servicing this loan (collecting
  payments) on behalf of a party that cannot show it is legally entitled to enforce the note
  and deed of trust. As such you may be collecting loan payments that you are not legally
  entitled to. You are therefore required to validate the debt alleged to be owed to you,
  which is hereby dispute). I demand that you identify the true owner of the loan (name,
  address, and phone number) under 15U.S.C. Sec. 1641(f) including:

*EXHIBIT B*

Exhibit 1
Page 33 of 144

1. Assignment of Deed of Trust made by agent of Assignee without any known involvement by Assignor.  Document was assigned to **Nationstar Mortgage LLC by Nationstar**, assignment document was signed by employee of Nationstar Mortgage as Assistant Secretary. **Brady Nichas** is a Nationstar Mortgage LLC employee; she never discloses her employment by Assignee. Nationstar Mortgage is shown as "its attorney in fact" but never provides the power of attorney or legal representation agreement, and in **working for Assignee, not Assignor**. Approximately 9 years have gone by since the economic transfer of the Mortgage. There is also no indication that Nationstar Mortgage LLC was directly involved in the ownership of this loan. Bank of America, an unproven purchaser of loan had attorney employee pose as Assignor representative without disclosure of purchase supporting documentation almost 5 and then 9 years following Freddie Mac probable acquisition)

2. All evidence of (checks, wire transfers, bills of sale, purchase agreements, note endorsements, assignments of Deed of Trust) purchase/sale transfers among Originator, Lehman Brothers Bank, FSB; Seller, Countrywide Home Loans, Inc.; sponsor, Bank of America, NA; and Freddie Mac; OR rescission of such Assignment of Deed of Trust, Trustee's Deed and Grant Deed and until such then notarized proof of purchase documents as applicable can be produced.

GIVEN THESE LEGITIMATE AND BONA FIDE ACCOUNTING AND BILLING DISPUTES SET FORTH ABOVE, THAT RELATE TO THE SERVICING OF MY LOAN, I HEREBY SERVE THIS QUALIFIED WRITTEN REQUEST UPON WHICH YOU MUST RESPOND WITHIN ESTABLISHED DEADLINES. YOUR FAILURE TO DO SO WILL RESULT IN LEGAL ACTION.

To clarify the above billing and accounting issues and disputes I demand a clear, complete, and legible copy of each of the following

1. LIFE OF LOAN ACCOUNTING: Provide a detailed accounting of all payments made on the above loan, from the origination of the loan to present. The Life of Loan Accounting for the above referenced loan(s) must answer the questions/disputes set forth above and must include:
(a) a detailed accounting of all payments demanded and received to date on this account in an easy to read and understandable format including the amounts applied to principal, interest, escrow, and to other charges,
(b) an accounting for all fees, including late fees and other charges incurred by the borrowers to date and all amounts paid out of the borrower's escrow account, if any;
(c) a description of the current interest rate and current index being used (if adjustable loan), and a complete history of all interest rate change dates and the index calculation used at that time that support the change in interest rate charged (if adjustable loan); and
(d) any other documentation necessary to fully and completely address the above billing and accounting disputes.

Exhibit 1
Page 34 of 144

Please ensure that this information covers the entire life of the loan, including all periods prior to the time you may have been servicing this loan and all times at which you have been the loan servicer of this loan.

2. COPY OF MORTGAGE LOAN FILE / MORTGAGE LOAN DOCUMENTS: Provide a copy of all loan documents pertaining to above-referenced mortgage(s)/loans including producing a copy of the original promissory note (with all endorsements; all note addendums and alonges, if any); copy of the Deed of Trust (along with any riders or addendums; and any assignments of deed of trust); any and all loan applications/1003's, Copies of any and all Notices of Right to Cancel under Federal Truth in Lending Law ("TILA"), including any "acknowledgements" of receiving copies of these TILA disclosures; all disclosures provided at the time of the origination of the loan, including all ARM disclosures, Federal CHARM disclosures, Credit Score Disclosures, all TILA disclosure statements (preliminary and final), TILA Itemization of Amount Financed, all Good Faith Estimates ("GFE"), all final HUD-1 or HUD1A closing statements; All escrow related disclosures and instructions including escrow/impound documents, Buy-down agreements; a complete copy of the appraisal for the subject property; all rate lock and rate sheets; any loan float sheets associated with this loan transaction; and any other information you maintain in regard to the above-referenced loan.

3. **Nationstar Research Reference #RR-340363 and #RR-340368:**
   - Please explain to me the conflict in the Nationstar statement highlighted in red below, and the interest shown at 3% on the March 18, 2014 statement, following the Nationstar Letter dated January 14, 2014 indicating the interest rate of 2.625%?

     *"The interest rate of 2.625% has remained the same from September 2013, through September 2015, with the same contractual payment amount of $398.34. September 1, 2015, the interest only period expired and the contractual principal and interest payment increased to $987.25, with an interest rate of 2.75%."*

   - Please advise the conflict between this Nationstar statement highlighted in red below regarding these payments, which were *NOT* placed in a "suspense account", they've been rejected and **returned to me** as follows:

     \* $398.34 on August 22, 2013
     \* $100 on September 10, 2014
     \* $662.34 on November 11, 2015
     \* $731.27 on November 18, 2015
     \* $1,263.30 on December 12, 2015

     *"Payments not applied on the billing statement indicates funds were received, and were not enough to apply a full contractual payment to the account, so they are placed in a suspense (holding) account."*

4. Please detail what exactly has been done to this property and by whom to warrant your "property inspection fees", and indicate/quote the specific language and location in my mortgage loan contract that entitles Nationstar to charge these fees

**Exhibit 1**
**Page 35 of 144**

5.  Please detail your "title examination fees", what purpose this fee serves, and indicate/quote the specific language and location in my mortgage loan contract that entitles Nationstar to charge these fees

6.  Please detail what exactly what constitutes your "posting cost fees", what purpose this fee serves, and indicate/quote the specific language and location in my mortgage loan contract that entitles Nationstar to charge these fees

7.  Please detail what exactly what constitutes your "foreclosure fees", what purpose this fee serves, and indicate/quote the specific language and location in my mortgage loan contract that entitles Nationstar to charge these fees

8.  Please advise how your fraudulent accounting practices entitles you to charge me your "legal fees", and indicate/quote the specific language and location in my mortgage loan contract that entitles Nationstar

9.  Why is the Amount due shown on the January 21, 2014 $29,338.82, and the amount due shown on the March 18, 2014 statement $18,701.31?

10.  Why is the Principal amount of the monthly payment shown as $56.91 on the February 19, 2014 statement, and $0.00 on the March 18, 2014 statement?

11.  Why is escrow being charged for insurance that was prepaid by Mary Strong?

12.  Cite specific language that entitles Nationstar to "fees & charges" shown?

13.  Why has my loan rate increased when the LIBOR rate to which my mortgage contract is tied has consistently decreased?

14.  Please explain the $10,019.32 disparity between the $22,807.96 amount due I calculate below, and the $32,827.28 outstanding amount indicated in the Nationstar billing statement sent to me December 2015, and quote the exact language in my mortgage contract that entitles Nationstar to this excess $10,019.32:

- Monthly payment itemized:
  Interest:               $398.34
  Property Tax:                $206.14
  Hazard Insurance:       $ 37.42
  Total payment:          $641.90

- $641.90/month (Tax, Ins. & Interest) 2013 & 2014, Jan - May 2015 (29 months): $18,615.10
- $698.81/month ($56.91 Principal added as of June 2015 – November 2015 (6 months): $4,192.86
- Total: $22,807.96

Exhibit 1
Page 36 of 144

YOU MUST RESPOND TO THIS REQUEST WITHIN 10 BUSINESS DAYS. The copies must be legible and all documents shall be copied in their entirety.  To the extent any of your responses to this request contain proprietary codes or identifiers, or transaction codes, or other codes that may mean something to you, but which may be unintelligible to the average consumer, you are hereby requested to provide IN PLAIN ENGLISH a definition or explanation that clearly indicates the precise meaning of each transaction code or other proprietary code that may be used. Please forward all of the above-requested information in LEGIBLE hard copy format, to the following address:

Mary Strong
2559 NW Monterey Pines Drive
Bend, Oregon 97703

Please note, this is an attempt to thoroughly investigate your loan billing and servicing practices that are in dispute in regard to the above-referenced loan. Under Section 6 of the Real Estate Settlement and Procedures Act (RESPA), including the recent Dodd-Frank Amendments, you are required to acknowledge this request and substantively respond to the issues presented herein and resolve these disputes within proper timeframes.  Additionally, pursuant to the above statutory section, you are required to immediately discontinue any and all negative credit reporting to each of the three credit bureaus (Experian, Trans Union, and Equifax), in regard to the above-referenced loan account during the dispute process. I expect this statutory right to be strictly honored.  Failure to comply in all regards with this request will compel an appropriate response. I look forward to receiving your detailed response to this request under RESPA.

Mary Strong

CC: Joyce Pierce, Consumer Finance Protection Bureau, Case number: 151218-002190

Exhibit 1
Page 37 of 144

Mary Strong, Plaintiff, pro se
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **MARY P. STRONG, an individual** | **Case No. 16CV19876** |
| **Plaintiff,** | **PLAINTIFF'S DECLARATION AND EXHIBITS IN SUPPORT OF COMPLAINT FOR:** |
| **vs.** | 1.    **LACK OF STANDING TO FORECLOSE;** |
| | 2.    **FRAUD IN THE CONCEALMENT;** |
| **LEHMAN BROTHERS BANK, FSB, BAC HOME LOANS SERVICING LP., AND NATIONSTAR MORTGAGE LLC.; FEDERAL HOME LOAN MORTGAGE CORPORATION AS TRUSTEE FOR SECURITIZED TRUST FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 2998; FREDDIE MAC; AURORA COMMERCIAL CORP.; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, AKA "MERS" AND DOES 1 THROUGH 100, INCLUSIVE** | 3.    **FRAUD IN THE INDUCEMENT;** |
| | 4.    **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** |
| | 5.    **QUIET TITLE;** |
| | 6.    **SLANDER OF TITLE;** |
| | 7.    **DECLARATORY RELIEF;** |
| | 8.    **RESCISSION.** |
| **Defendants.** | |

---

I, Mary Strong, declare as follows:

I am the Plaintiff in the above-referenced matter.  I am competent to make this declaration based on my personal knowledge.  I submit this declaration in support of Plaintiff's Complaint.  Referenced below and attached hereto are true and correct copies of **EXHBITS 1 - 18 :**

**EXHIBIT 1:**  Deed of Trust dated June 28, 2005, Adjustable Rate Rider, Addendum To Adjustable Rate Rider, Interest-Only Addendum To Adjustable Rate Rider, and Prepayment Rider, signed and notarized June 29, 2005 and recorded July 5, 2005

This document does not clearly detail or describe anywhere in the terms of this contract signed and agreed to by Plaintiff Mary Strong the meaning of "transfer", nor does this document specifically describe the sale of this mortgage debt and the payments of interest and principal made by Plaintiff Mary Strong to high-risk CDO (Credit Default Obligation), CMO (Collateralized Mortgage Obligation) and CDS (Credit Default Swap) markets, nor did Plaintiff Mary Strong contractually agree at any time to these specific terms.

At no time did Plaintiff Mary Strong agree to have Plaintiff Mary Strong's mortgage Note subdivided and used as a hedging tool in high-risk pools of debt for the benefit of the CMO, CDO and CDS bond markets.

Plaintiff Mary Strong's purchase of this home and Plaintiff Mary Strong's agreement to terms of a mortgage loan were undertaken for the purpose of providing Plaintiff Mary Strong a primary residence and a conservative and safe investment.  At no time did Plaintiff Mary Strong agree that Plaintiff Mary Strong's funds may be used in high-risk derivatives in the bond markets.

Due to high-risk actions taken with Plaintiff Mary Strong's personal funds, without Plaintiff Mary Strong's explicit knowledge, permission or agreement in the CDO, CMO and CDS bond markets, Plaintiff Mary Strong has suffered extreme financial loss and damage through no fault of her own.

**EXHIBIT 2:** Payments made by Plaintiff and "rejected/returned" by Nationstar Mortgage on August 22, 2013. Plaintiff has received no viable explanation for rejected/returned payments in spite of numerous requests for same.

**EXHIBIT 3:** Plaintiff's letter dated September 16, 2013 to Jeffrey Bass, Customer Relations Specialist at Nationstar Mortgage itemizing ten (10) questions and requests for explanation regarding gross accounting disparities, overstatement and errors in Nationstar Mortgage statements for subject property, and submitted previously to Nationstar Mortgage.

**EXHIBIT 4:** Plaintiff's letter dated November 15, 2013 to the State of Oregon Foreclosure Avoidance Program (Resolution Conference Case Number BI-130912-653), Instrument Number 197885 issuing Plaintiff's formal request for permanent modifications to Plaintiff's Mortgage Loan # 0598856094.

**EXHIBIT 5:** Plaintiff Mary Strong's "MAKING HOME AFFORDABLE" RMA application for Mortgage Loan Number 0598856094, dated November 28, 2013.

**EXHIBIT 6:** Plaintiff's email dated March 29, 2014 @ 11:52 a.m. addressed to Casey C. Pence, Melissa Sherrer and James Nicita at Nationstar Mortgage, with copies to April Curtis and Ann Kelly (Oregon Making Home Affordable program) requesting explanation and answers to Plaintiff's detailed questions regarding statement and accounting disparities in mortgage loan statements from Nationstar Mortgage regarding Plaintiffs' Loan Number 0598856094.

**EXHIBIT 7:** Plaintiff's emails between Ellis Wilder, Associate Attorney, McCarthy Holthus LLP  (representing Nationstar Mortgage) and Sandy Steele, Lead Public Service Representative, Oregon Homeownership Stabilization Initiative during the period August 24, 2012 to May 16, 2014 reiterating my request for explanations and answers to questions regarding gross accounting disparities, irregularities and inconsistencies on the part of Nationstar Mortgage regarding Plaintiff's Mortgage Loan Number 0598856094.

**EXHIBIT 8:** Plaintiff's email dated May 29, 2014 to Ellis Wilder (representing Nationstar Mortgage) requesting explanation for disparities between record of payments displayed on the Nationstar Transaction History website and Plaintiff's record of payments made, or the record of documented payments made by OHSI MPA per Sandy Steele.

**EXHIBIT 9:** Plaintiff's Mediation Conference notes from meeting with Ellis Wilder (representing Nationstar Mortgage) on June 5, 2014.

**EXHIBIT 10:** Plaintiff's June 6, 2014 letter to Nationstar Mortgage requesting answers and explanation to questions raised in my letter to Nationstar dated May 30, 2014, and the Mediation conference June 6, 2014 with Ellis Wilder present and Nationstar representative on the phone.  This letter outlines in detail the published terms in the Home Affordable Modification Program, and that I qualify for modification under those terms.

**EXHIBIT 11:** Plaintiff's letter dated June 23, 2014 to Nationstar Mortgage requesting explanation for disparities in Nationstar accounting and charges, and failure to adhere to HAMP Tier 2 Waterfall guidelines.

**EXHIBIT 12:**  Plaintiff's letter dated August 30, 2014 to Nationstar Mortgage reiterating questions previously submitted and unanswered by Nationstar regarding Nationstar accounting and billing irregularities on subject property.

**EXHIBIT 13:**  September 10, 2014 letter from Nationstar refusing payment by Plaintiff of $100 toward charges on Mortgage Loan Number 0598856094.

**EXHIBIT 14:**  Plaintiff's Consumer Complaint form dated and filed October 2, 2014 against Nationstar Mortgage.

**EXHIBIT 15:**  Plaintiff's email dated October 2, 2014 to Julie Jejia, April Crane and Tommy Price at Nationstar Mortgage requesting explanation of Nationstar's statement "Nationstar is unable to determine why the payment for $100.00 has not been cashed".

**EXHIBIT 16:**  Plaintiff's letter dated October 20, 2014 to Nationstar Mortgage itemizing Plaintiff's $641.90 mortgage payment on subject property.

**EXHIBIT 17:**  Plaintiff's letter dated November 16, 2014 to Derek Savells, April Crane and Ashley Gregory, Nationstar Mortgage, requesting explanation for the **$7,318.46** disparity in amount due described in the letter received by Plaintiff from Nationstar dated October 31, 2014.

**EXHIBIT 18:**  Plaintiff's email, with attachments, dated November 28, 2014 to Derek Savells and Casey Courtney at Nationstar Mortgage requesting again an explanation for the **$7,318.46** disparity described in Exhibit 17, above.

**EXHIBIT 19:**  Plaintiff's Qualified Written Request dated December 21, 2015 sent to Nationstar Mortgage.  No coherent answers to Plaintiff's specific questions have ever been provided to Plaintiff by Defendants in response to this Qualified Written Request.

**I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERTSTAND THAT IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.:**

**DATED: _____**

s/ Mary Strong_____
Mary Strong, Plaintiff, pro se

## CERTIFICATE OF SERVICE

I certify that on this _____ day of _____ 2016, the foregoing **PLAINTIFF'S DECLARATION IN SUPPORT OF COMPLAINT FOR LACK OF STANDING TO FORECLOSE; FRAUD IN THE CONCEALMENT; FRAUD IN THE INDUCEMENT; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; QUIET TITLE; SLANDER OF TITLE; DECLARATORY RELIEF; VIOLATIONS OF TILA; VIOLATIONS OF RESPA; RESCISSION** was served on the following via [ ] hand delivery [ ] overnight delivery [ ] fax and mail [ ] email and mail [X] mailing by depositing with U.S. mail in Bend, Oregon, enclosed in a sealed envelope with first class postage prepaid, address as follows:

LEHMAN BROTHERS BANK, FSB
1271 6th Ave
New York, NY 10020

BAC HOME LOANS SERVICING LP
6400 Legacy Drive
Plano, TX 75024

NATIONSTAR MORTGAGE LLC
8950 Cypress Waters Blvd
Dallas, TX 75019
(972) 459-4904

FEDERAL HOME LOAN MORTGAGE CORPORATION AS TRUSTEE FOR
SECURITIZED TRUST FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 2998
8200 Jones Branch Drive
McLean, VA 22102-3110

AURORA COMMERCIAL CORP.
Brandywine Building1000 West Street
Wilmington, Delaware, U.S.

MORTGAGE ELECTRONIC REGISTRATION SYSTEM,
1901 E. Voorhees Street, suite C
Danville, IL 61834

s/ Mary Strong_____
Mary Strong, Plaintiff, pro

7061:604647

100025440002502562
0035765346

Until a change is requested all tax statements shall be
sent to the following address.
    AURORA LOAN SERVICES
    P.O. BOX 1706
    SCOTTSBLUFF, NE 69363-1706

WHEN RECORDED MAIL TO
    AURORA LOAN SERVICES, LLC
    601 5th Ave, PO Box 4000
    Scottsbluff, NE 69363

DESCHUTES COUNTY OFFICIAL RECORDS  2005-42362
NANCY BLANKENSHIP, COUNTY CLERK

$131.00
0037845820050042362021Q212
07/05/2005 12:08:32 PM

TAX ACCOUNT NUMBER    197885

M-DT Cnt=1 Stn=4 TRACY
$105.00 $11.00 $10.00 $5.00

[Space Above This Line For Recording Data]

# DEED OF TRUST

Mortgage Electronic Registration Systems, Inc. (MERS) is the Grantee of this Security Instrument
        MIN   100025440002502562

**DEFINITIONS**    **Mortgage Electronic Registration Systems, Inc.(MERS) is the
Grantee of this Security Instrument**

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated    **June 28, 2005**
together with all Riders to this document.
(B) "Borrower" is

    **MARY P STRONG , AN UNMARRIED WOMAN**



FIRST AMERICAN TITLE
ISURANCE COMPANY OF OREGON
P.O. BOX 323
PEND, OR 97709

Borrower is the trustor under this Security Instrument.
(C) "Lender" is    **LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK**

Lender is a
organized and existing under the laws of    **UNITED STATES**
Lender's address is    **5200 SW MACADAM AVE., #255, PORTLAND, OR 97239**

(D) "Trustee" is    **FIRST AMERICAN TITLE INSURANCE COMPANY**

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3038 1/01

VMP -6A(OR) (0406)
Page 1 of 15    Initials:
    VMP Mortgage Solutions, Inc. (800)521-7291

# EXHIBIT 1

100025440002502562
0035765346

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **June 28, 2005**
The Note states that Borrower owes Lender

**ONE HUNDRED EIGHTY TWO THOUSAND TWO HUNDRED & 00/100**                     Dollars
(U.S. $        **182,200.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **August 1, 2035**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | PREPAY/ |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP®-6A(OR) (0409)                Page 2 of 15          Initials: _____          Form 3038  1/01

# EXHIBIT 1

100025440002502562
0035765346

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                                  of      Deschutes                                        :
        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LOT 9 OF WESTSIDE PINES, PHASE II, CITY OF BEND, DESCHUTES COUNTY, OREGON.

which currently has the address of

2559 NW MONTEREY PINES DRIVE                                                    [Street]
BEND                            [City] , Oregon      97701      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

VMP-6A(OR) (0408)                    Page 3 of 15            Initials:            Form 3038  1/01

# EXHIBIT 1

100025440002502562
0035765346

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and

VMP®-6A(OR) (0408)                    Page 4 of 15                    Initials: _____                    Form 3038  1/01

**EXHIBIT 1**

100025440002502562
0035765346

Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

# EXHIBIT 1

100025440002502562
0035765346

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to

## EXHIBIT 1

100025440002502562
0035765346

Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

## EXHIBIT 1

100025440002502562
0035765346

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

VMP®-6A(OR) (0408)                Page 8 of 15        Initials: _____        Form 3038  1/01

# EXHIBIT 1

100025440002502562
0035765346

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

VMP®-6A(OR) (0405)　　　　　　　Page 9 of 15　　　Initials _____　　　Form 3038  1/01

## EXHIBIT 1

10002544000252562
0035765346

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

## EXHIBIT 1

100025440002502562
0035765346

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

# EXHIBIT 1

10002544000025062562
0035765346

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

VMP-6A(OR) (0409)    Page 12 of 15    Form 3038  1/01

# EXHIBIT 1

100025440002502562
0035765346

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

**27. Required Evidence of Property Insurance.**

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

VMP®-6A(OR) (0406)          Page 13 of 15          Initials _____          Form 3038 1/01

## EXHIBIT 1

100025440002502562
0035765346

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
MARY P STRONG                                -Borrower

_____

_____ (Seal)
                                             -Borrower

_____ (Seal)      _____ (Seal)
                      -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                      -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                      -Borrower                                    -Borrower

VMP-6A(OR) (0408)                  Page 14 of 15                  Form 3038  1/01

**EXHIBIT 1**

Case 6:16-cv-01498-MC    Document 1    Filed 07/25/16    Page 64 of 149

100025440002502562
0035765346

STATE OF OREGON,                Deschutes County ss:
     On this    29   day of   June   2005   , personally appeared the above named
Mary P. Strong

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires: 8-7-2006        Before me:

(Official Seal)                         Cheryl J. Scott
                                        Notary Public for Oregon

```
         OFFICIAL SEAL
      CHERYL J SCOTT
   NOTARY PUBLIC - OREGON
   COMMISSION NO. 360157
   MY COMMISSION EXPIRES AUG. 7, 2006
```

Initials: _____

VMP-6A(OR)  (0405)          Page 15 of 15              Form 3038  1/01

**EXHIBIT 1**

PLAINTIFF'S DECLARATION & EXHIBITS IN SUPPORT OF COMPLAINT     **Exhibit 1** Page 23
**Page 60 of 144**

100025440002502562
0035765346

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 28th day of    June, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

LEHMAN BROTHERS BANK, FSB

("Lender") of the same date and covering the property described in the Security Instrument and located at:

2559 NW MONTEREY PINES DRIVE, BEND, OREGON 97701

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of    5.250    %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of August , 2010 and on that day every    6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal . The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding    TWO AND 25 HUNDREDTHS    percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL ) - Single Family - Fannie Mae Uniform Instrument



VMP-838R (0402)    Form 3138 1/01
Page 1 of 3    Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291

# EXHIBIT 1

100025440002502562
0035765346

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.250 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO

( 2.000                                                                 percentage points

6        %) from the rate of interest I have been paying for the preceding months. My interest rate will never be greater than 11.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

VMP-838R (0402)                    Page 2 of 3          Initials: _____          Form 3138 1/01

**EXHIBIT 1**

100025440002502562
0035765346

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)                    _____ (Seal)
MARY P STRONG         -Borrower                                           -Borrower

_____ (Seal)                    _____ (Seal)
                      -Borrower                                           -Borrower

_____ (Seal)                    _____ (Seal)
                      -Borrower                                           -Borrower

_____ (Seal)                    _____ (Seal)
                      -Borrower                                           -Borrower

VMP-838R (0402)                    Page 3 of 3                    Form 3138 1/01

# EXHIBIT 1

100025440002502562
0035765346

## ADDENDUM TO ADJUSTABLE RATE RIDER

     This addendum is made   **June 28 , 2005**           and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

     The property covered by this addendum is described in the Security Instrument and located at:
     **2559 NW MONTEREY PINES DRIVE , BEND , OREGON 97701**

**AMENDED PROVISIONS**
     In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
     **Limits on Interest Rate Changes**
     The interest rate I am required to pay at the first Change Date will not be greater than   **11.250**% or less than   **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than  **TWO**       percentage point(s) (  **2.000**    %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than   **11.250**   %. My interest rate will never be less than   **2.250**  %.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

     Uniform Covenant 18 of the Security Instrument is amended to read as follows:

     **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

     If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

     If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

     In Witness Thereof, Trustor has executed this addendum.

---
Witness

---
Date                             MARY R STRONG

---
Date

---
Date

---
Date

DIS0221
1202 LIBOR Addendum to Rider                               1/01

## EXHIBIT 1

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER: 0035765346

PROPERTY ADDRESS: 2559 NW MONTEREY PINES DRIVE
BEND, OREGON 97701

THIS ADDENDUM is made this 28th day of June , 2005 and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to
LEHMAN BROTHERS BANK, FSB, 5200 SW MACADAM AVE., #255, PORTLAND, OR 97239
(the Lender).
THIS ADDENDUM supersedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

### 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
####    (C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding 2.25 percentage point(s) ( 2.25 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Dated: 6/79/05

_____
MARY P STRONG

_____

_____

_____

DIS0291
Form 603F

page 1 of 1

1/01

## EXHIBIT 1

100025440002502562
0035765346

## PREPAYMENT RIDER
### *(Multi-state)*

This Prepayment Rider is made this 28th day of     June, 2005        and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to               LEHMAN BROTHERS BANK, FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at   2559 NW MONTEREY PINES DRIVE BEND, OREGON 97701
(the "Property").

**Additional Covenants.**  Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note.  A payment of only part of the unpaid principal is known as a "partial prepayment."

**If, within the      3   -year period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment.  The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation.  No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first      0 year(s) of the term of the Note, no prepayment penalty will be assessed.  In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____(Seal)          _____(Seal)
Borrower   MARY P STRONG                          Borrower

_____(Seal)          _____(Seal)
Borrower                                          Borrower

60382
ALSB2M1                        page 1 of 1                              11/16/99

# EXHIBIT 1

# NATIONSTAR PAYMENT REJECTED/RETURNED 8/22/13

| | |
|---|---|
| **Account:** | 458( |
| **e-Mail:** | marystrong@bendbroadband.c |
| **Last Login:** | 08/22/13 5:19 |

**Account History**   **Detail Search**

**View history for:** S10 - Selco Select Checking - $500.88 ⌄

| Date | Description | Deposit | Withdrawal | Balance |
|---|---|---|---|---|
| 08/22/13 | Deposit NATIONSTAR MORTGAGE BILL PAY RTD-REJECT/REFUND | $398.34 | | $527.03 |
| 08/19/13 | Nationstar Mortgage 3140744337 | | $398.34 | $848.15 |
| 06/10/13 | Nationstar Mortgage 3140665108 | | $398.34 | $235.66 |
| 04/24/13 | Nationstar Mortgage 3140611355 | | $455.25 | $1,057.41 |

**Download history as:** Select Format ⌄   **or View as:** Select Format ⌄

## EXHIBIT 2

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701

September 16, 2013

Nationstar Mortgage
350 Highland Drive
Lewisville, TX 75067

Attn:    Jeffrey Bass, Customer Relations Specialist

RE:    Loan Number 0598856094
       Nationstar Reference Number:  13443-6094

Your letter to me dated September 6, 2013 does not address my questions submitted in my letter to you
dated August 29, 2013.  I will reiterate and expand on my request for information and disclosure on your
part:

1.  Please confirm your receipt of Evidence of Property Insurance, policy # 991788726 633 1,
    8/16/2013 – 8/16/2014, Traveler's Home and Marine Insurance.
2.  Please advise why my $398.34 payment was rejected and returned by Nationstar August 22,
    2013.
3.  Please explain why current payment due for October 2013 is not indicated on your website.
4.  Please explain why the payment due February 2012 is a different amount than the payment due
    March 1, 2012.
5.  Please explain and itemize the "next payment" amount of $1,2.93.95 due on March 1, 2012"
    shown on my account on your website
6.  Please explain and itemize the $838.70 escrow payment amount shown on my account on your
    website
7.  Please itemize the past due amount of  $21,634.59 shown when I login to my account on your
    website
8.  Why did Nationstar advise OHSI (*Oregon Homeownership Stabilization Initiative/Mortgage
    Payment Assistance Program*) that the payments on this loan were *$417.33* and not the actual true
    amount of *$792.42*
9.  How was this information communicated to OHSI?
10. Please send me a copy of the information provided to OHSI regarding the monthly payment due
    on this loan

Do not send me another copy of your "detailed transaction payment history" printout.  Send me a clear,
succinct answer to each of my bullet points above.

Cc:  Devin Crowe, "Single Point of Contact"

**EXHIBIT 3**

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701

November 15, 2013

State of Oregon
Foreclosure Avoidance Program

RE:    Resolution Conference – Case Number BI-130912-653
       Instrument Number: 197885
       Recording Number: 2005-42362
       Loan Number:  0598856094

This letter serves as my formal request for the following permanent modifications to the above-referenced mortgage loan:

(1) Convert the interest rate to a fixed rate for the remaining 20 years at the current rate (LIBOR + 2%)
(2) Modify the loan balance to $164,300.00 to reflect the underwater status of this loan, based on the Deschutes County Assessed Value (attached)
(3) Remove escrow from the loan for hazard insurance and property taxes.  I have paid hazard insurance through 2014 and have paid the first installment for current property tax due.

Regards,

Mary Strong

**EXHIBIT 4**

Search By: Last Name/Address ▾

Last Name: Strong    Street Address: IW Monterey Pines Drive    [Graph It]    [Clear]

**Mailing Name:** STRONG, MARY
**Map and Taxlot:** 171136AA03200
**Account:** 197885
**Property Address:** 2559 NW MONTEREY PINES DR

*Current year (2013-2014) values will be available by October 25, 2013.*



**EXHIBIT 4**



Print Form

**Making Home Affordable Program**
Request For Modification and Affidavit (RMA)

MAKING HOME AFFORDABLE.gov

| REQUEST FOR MODIFICATION AND AFFIDAVIT (RMA) page 1 | COMPLETE ALL THREE PAGES OF THIS FORM |

▶ Loan I.D. Number  **0598856094**   ▶ Servicer  **Nationstar Mortgage**

| BORROWER | CO-BORROWER |
|---|---|
| Borrower's name **Mary Strong** | Co-borrower's name |
| Social Security number **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**  Date of birth **03/09/1953** | Social Security number   Date of birth |
| Home phone number with area code **541-728-7905** | Home phone number with area code |
| Cell or work number with area code | Cell or work number with area code |

| | | |
|---|---|---|
| *I want to:* | ☒Keep the Property | ☐ Sell the Property |
| *The property is my:* | ☒Primary Residence | ☐ Second Home   ☐ Investment |
| *The property is:* | ☒Owner Occupied | ☐ Renter Occupied   ☐ Vacant |

Mailing address  **2559 NW Monterey Pines Drive, Bend, OR 97701**

Property address (if same as mailing address, just write same)   E-mail address
**same**                    **marystrong@bendbroadband.com**

| | |
|---|---|
| *Is the property listed for sale?* ☐ Yes ☒No | *Have you contacted a credit-counseling agency for help* ☐ Yes ☒No |
| *Have you received an offer on the property?* ☐ Yes ☒No | *If yes, please complete the following:* |
| Date of offer _____ Amount of offer $ _____ | Counselor's Name: _____ |
| Agent's Name: _____ | Agency Name: _____ |
| Agent's Phone Number: _____ | Counselor's Phone Number: _____ |
| For Sale by Owner? ☐ Yes ☒No | Counselor's E-mail: _____ |
| *Who pays the real estate tax bill on your property?* | *Who pays the hazard insurance premium for your property?* |
| ☒ do  ☐ Lender does  ☐ Paid by condo or HOA | ☒ do  ☐ Lender does  ☐ Paid by Condo or HOA |
| Are the taxes current? ☒ Yes  ☐ No | Is the policy current? ☒ Yes  ☐ No |
| Condominium or HOA Fees ☐ Yes  ☒ No  $ _____ | Name of Insurance Co.: **Travelers #991788266331** |
| Paid to: _____ | Insurance Co. Tel #: **1-877-872-8737** |

| | |
|---|---|
| *Have you filed for bankruptcy?* ☒Yes ☐No  If yes: ☒Chapter 7 ☐Chapter 13 | Filing Date: **Discharge Order 5/19/10** |
| Has your bankruptcy been discharged? ☒Yes ☐No  Bankruptcy case number **10-30801-tmb7** | |

*Additional Liens/Mortgages or Judgments on this property:*

| Lien Holder's Name/Servicer | Balance | Contact Number | Loan Number |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| HARDSHIP AFFIDAVIT |
|---|

**I (We) am/are requesting review under the Making Home Affordable program.**
**I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):**

☒My household income has been reduced. For example: unemployment, underemployment, reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower.

☐My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt.

☒My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes.

☐My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time.

☐ Other:

Explanation (continue on back of page 3 if necessary): _____

*page 1 of 3* ▶

**EXHIBIT 5**

**REQUEST FOR MODIFICATION AND AFFIDAVIT (RMA)** page 2　　　　COMPLETE ALL THREE PAGES OF THIS FORM

**INCOME/EXPENSES FOR HOUSEHOLD** ▶ Number of People in Household:

| Monthly Household Income | | Monthly Household Expenses/Debt | | Household Assets | |
|---|---|---|---|---|---|
| Monthly Gross Wages | $ 1,250.00 | First Mortgage Payment | $ 455.25 | Checking Account(s) | $ 100.00 |
| Overtime | $ | Second Mortgage Payment | $ n/a | Checking Account(s) | $ ---- |
| Child Support / Alimony / Separation² | $ 0 | Insurance (hazard) | $ 37.42 | Savings/ Money Market | $ n/a |
| Social Security/SSDI | $ 0 | Property Taxes | $ 202.92 | CDs | $ n/a |
| Other monthly income from pensions, annuities or retirement plans | $ 0 | Credit Cards / Installment Loan(s) (total minimum payment per month) | $ 0 | Stocks / Bonds | $ n/a |
| Tips, commissions, bonus and self-employed income | $ 0 | Alimony, child support payments | $ n/a | Other Cash on Hand | $ n/a |
| Rents Received | $ 400.00 | Net Rental Expenses | $ n/a | Other Real Estate (estimated value) | $ n/a |
| Unemployment Income | $ 0 | HOA/Condo Fees/Property Maintenance | $ n/a | Other  furnishngs | $ 400.00 |
| Food Stamps/Welfare | $ 0 | Car Payments | $ n/a | Other | $ 0 |
| Other (investment income, royalties, interest, dividends etc.) | $ 0 | Other  SR22 Ins.  groceries  utilities | $ 31.14  $100.00  $296.00 | Do not include the value of life insurance or retirement plans when calculating assets (401k, pension funds, annuities, IRAs, Keogh plans, etc.) | |
| *Total (Gross Income)* | $ 1,650.00 | *Total Debt/Expenses* | $ XXXXXXXX  1,122 | *Total Assets* | $ 500.00 |

**INCOME MUST BE DOCUMENTED**

¹Include combined income and expenses from the borrower and co-borrower (if any). If you include income and expenses from a household member who is not a borrower, please specify using the back of this form if necessary.
²You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.

**INFORMATION FOR GOVERNMENT MONITORING PURPOSES**

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. If you do not wish to furnish the information, please check the box below.

| BORROWER | ☒ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: | ☐ Female  ☐ Male | Sex: | ☐ Female  ☐ Male |

| To be completed by interviewer | | Name/Address of Interviewer's Employer |
|---|---|---|
| This request was taken by:  ☐ Face-to-face Interview  ☐ Mail  ☐ Telephone  ☐ Internet | Interviewer's Name (print or type) & ID Number | |
| | Interviewer's Signature　　　Date | |
| | Interviewer's Phone Number (include area code) | |

page 2 of 3 ▶

**EXHIBIT 5**

**REQUEST FOR MODIFICATION AND AFFIDAVIT (RMA)  page 3**    **COMPLETE ALL THREE PAGES OF THIS FORM**

### ACKNOWLEDGEMENT AND AGREEMENT

*In making this request for consideration under the Making Home Affordable Program, I certify under penalty of perjury:*

1. That all of the information in this document is truthful and the event(s) identified on page 1 is/are the reason that I need to request a modification of the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

2. I understand that the Servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements and may require me to provide supporting documentation. I also understand that knowingly submitting false information may violate Federal law.

3. I understand the Servicer will pull a current credit report on all borrowers obligated on the Note.

4. I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the Servicer may cancel any Agreement under Making Home Affordable and may pursue foreclosure on my home.

5. That:  my property is owner-occupied; I intend to reside in this property for the next twelve months; I have not received a condemnation notice; and there has been no change in the ownership of the Property since I signed the documents for the mortgage that I want to modify.

6. I am willing to provide all requested documents and to respond to all Servicer questions in a timely manner.

7. I understand that the Servicer will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me assistance based solely on the statements in this document.

8. I am willing to commit to credit counseling if it is determined that my financial hardship is related to excessive debt.

9. I understand that the Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  I understand and consent to the disclosure of my personal information and the terms of any Making Home Affordable Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services in conjunction with Making Home Affordable; and (e) any HUD-certified housing counselor.

▶ _____        11/28/13
Borrower Signature                                                              Date

▶ _____        _____
Co-Borrower Signature                                                         Date

**HOMEOWNER'S HOTLINE**

*If you have questions about this document or the modification process, please call your servicer.*
*If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in English and Spanish.*



**888-995-HOPE™**
Homeowner's HOPE™ Hotline

**NOTICE TO BORROWERS**

Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the Making Home Affordable Program are under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income, expenses, or assets will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution. By signing this document you certify, represent and agree that: "Under penalty of perjury, all documents and information I have provided to Lender in connection with the Making Home Affordable Program, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll-free), 202-622-4559 (fax), or www.sigtarp.gov. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220.

page 3 of 3

## EXHIBIT 5

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Saturday, March 29, 2014 11:52 AM
**To:** 'Casey C. Pence'; 'Melissa Sherrer'; 'James Nicita'
**Cc:** 'April Curtis'; 'charliey@bendnet.com'; 'Ann Kelly'; marystrong@bendbroadband.com
**Subject:** RE: BI-130912-653 - Mary P. Strong

Please explain the disparities in Mortgage Loan Statements for this loan as follows:

- Why is the interest rate shown at 3% on the March 18, 2014, following the Nationstar Letter dated January 14, 2014 indicating the interest rate of 2.625%?
- Why is the Amount due shown on the November 19, 2013 $27,913.89, and the amount due shown on the March 18, 701.31 statement $18,701.31?
- Why is the Principal amount of the monthly payment shown as $56.91 on the February 19, 2014 statement, and $0.00 on the March 18, 2014 statement?
- Why is escrow being charged for insurance that has been prepaid by Mary Strong?
- What are "fees & charges" shown?
- Why are their "payments unapplied"?
- Please explain why there has been no response to my numerous written requests for information and explanation on the handling of this loan.

Mary Strong

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Nationstar Mortgage Loan Number 0598856094** | | | | | | | | | | | | |
| STATEMENT DATE | AMOUNT DUE | INTEREST BEARING PRINCIPAL BALANCE | INTEREST RATE | ESCROW BALANCE | PRINCIPAL | INTEREST | ESCROW FOR TAXES AND INSURANCE | REGULAR MONTHLY PAYMENT | TOTAL FEES AND CHARGES | OVERDUE PAYMENTS | TOTAL AMOUNT DUE | PARTIAL PAYMENT UNAPPLIED (???) |
| 3/18/14 | $18,701.31 | $182,099.05 | 3.000% | $10,902.64 | $0.00 | $455.25 | $276.02 | $731.27 | $314.30 | $17,655.74 | $18,701.31 | $1,077.15 |
| 2/19/14 | $18,026.95 | $182,099.05 | 2.625% | $10,902.64 | $56.91 | $398.34 | $276.02 | $731.27 | $314.30 | $16,981.38 | $18,026.95 | |
| 1/21/14 | $29,338.82 | $182,099.05 | 2.625% | $10,902.64 | ?? | $455.25 | $243.55 | $698.80 | $314.30 | $28,039.76 | $29,338.82 | |
| 1/14/2014 * | - | - | 2.625% | - | - | - | - | $641.89 | - | - | - | - |
| 11/19/13 | $27,913.89 | $182,099.05 | 2.625% | $10,902.64 | ?? | $455.25 | $234.25 | $689.50 | $314.30 | $26,774.58 | $27,913.89 | $37.94 |
| * Letter advising interest rate effective 3/1/14 | | | | | | | | | | | | |

**EXHIBIT 6**

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Saturday, May 03, 2014 2:34 PM
**To:** 'ewilder@McCarthyHolthus.com'
**Cc:** annk@neighborimpact.org; 'Kimberly.Tinsley@nationstarmail.com';
'Dana.Dillard@nationstarmail.com'; 'Kevin Scalise'; 'marystrong@bendbroadband.com'
**Subject:** FW: Mary Strong | OR-13-589945-MED

I reiterate my request for explanation and answers to the following questions, submitted by me numerous times with no answer to date from Nationstar:

1. The total dollar amount of the down payment made by me in 2003 and credited against this mortgage debt
2. The total dollar amount of Interest paid by me on this debt since November 2003
3. The total dollar amount of Principal paid by me, if any, since November 2003
4. Does Nationstar have evidence of the purchase contract and terms that I signed?  If yes, can they produce it?

Oregon Foreclosure Avoidance Mediation Program... BI-130912-653 - Mary P. Strong        Nationstar Mortgage Loan Number 059885609

- Why is the interest rate shown at 3% on the March 18, 2014, following the Nationstar Letter dated January 14, 2014 indicating the interest rate of 2.625%?
- Why is the Amount due shown on the January 21, 2014 $29,338.82, and the amount due shown on the March 18, 2014 statement $18,701.31?
- Why is the Principal amount of the monthly payment shown as $56.91 on the February 19, 2014 statement, and $0.00 on the March 18, 2014 statement?
- Why is escrow being charged for insurance that has been prepaid by Mary Strong?
- What are "fees & charges" shown?
- What are "payments unapplied"?
- Why has my loan rate increased when the LIBOR rate has consistently decreased?

### Nationstar Mortgage Loan Number 0598856094

| STATEMENT DATE | AMOUNT DUE | INTEREST BEARING PRINCIPAL BALANCE | INTEREST RATE | ESCROW BALANCE | PRINCIPAL | INTEREST | ESCROW FOR TAXES AND INSURANCE | REGULAR MONTHLY PAYMENT | TOTAL FEES AND CHARGES | OVERDUE PAYMENTS | TOTAL AMOUNT DUE | PAR PAYM UNAPP (?? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/18/14 | $18,701.31 | $182,099.05 | 3.000% | $10,902.64 | $0.00 | $455.25 | $276.02 | $731.27 | $314.30 | $17,655.74 | $18,701.31 | $1 |
| 2/19/14 | $18,026.95 | $182,099.05 | 2.625% | $10,902.64 | $56.91 | $398.34 | $276.02 | $731.27 | $314.30 | $16,981.38 | $18,026.95 | |
| 1/21/14 | $29,338.82 | $182,099.05 | 2.625% | $10,902.64 | ?? | $455.25 | $243.55 | $698.80 | $314.30 | $28,039.76 | $29,338.82 | |
| 1/14/2014 * | - | - | 2.625% | - | - | - | - | $641.89 | - | - | - | |
| 11/19/13 | $27,913.89 | $182,099.05 | 2.625% | $10,902.64 | ?? | $455.25 | $234.25 | $689.50 | $314.30 | $26,774.58 | $27,913.89 | |

* Letter advising interest rate effective 3/1/14

**LIBOR, other interest rate indexes**

| | This week | Month ago | Year ago |
|---|---|---|---|
| 1 Month LIBOR rate | 0.15 | 0.16 | 0.20 |

**Libor, other interest rate indexes**

| | This week | Month ago | Year ago |
|---|---|---|---|
| 6 Month LIBOR rate | 0.33 | 0.33 | 0.44 |

## EXHIBIT 7

- Your letter denying modification states **"because in performing our underwriting of a potential modification we could not reduce your principal and interest payment by at least 10%."** Please explain.
- Your letter denying foreclosure avoidance options states that I do not meet the program guidelines because:
  **"Your current monthly housing expense, which includes the monthly principal and interest payment on your first lien mortgage loan plus property taxes, hazard and insurance and homeowner's dues (if any) is less than or equal to 31% of your gross monthly income. Your housing expense must be greater than the 31% of your gross monthly income to be eligible for a Home Affordable Modification."**

Average monthly wages: $1,260                     Nationstar Mortgage
Payment: $455.25
Monthly rental income: $400                          Hazard insurance: $37.41
<u>Net Average Monthly income: $1,660</u>          Property Tax: $212.50
                                                           <u>Net Monthly</u>
                                                   <u>Mortgage expense: $705.16</u>

<u>$705.16 divided into $1,660.00 = 42% monthly housing expense relative to income</u>

**EXHIBIT 7**

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Friday, May 16, 2014 12:15 PM
**To:** Ellis Wilder
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; 'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

This highlights my concern exactly. The "right arm" (Nationstar) doesn't seem to know/understand or have correct and complete access to information from the "left arm" (Aurora) on this mortgage debt. Your answer explains nothing.

The $417 amount, presumably, represented an interest-only portion of a total payment, (although, based on incomplete and erroneous/ever changing detail on payment breakdowns communicated to me by Nationstar, I am not clear whether this $417 was interest only or included principal), and did not include property tax and insurance escrows being charged to me, according to the information I have. Why not?

**From:** Ellis Wilder [mailto:ewilder@McCarthyHolthus.com]
**Sent:** Friday, May 16, 2014 11:38 AM
**To:** Mary Strong
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; 'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

Mary,

Regarding the Hardest Hit fund, Nationstar did not report any information to the program. Aurora, the prior servicer, reported that information. Typically the hardest hit program requires the servicer to report the next-due payment, as well as the current contract payment. We have no record of what Aurora provided to Hardest Hit, and Aurora's residential loan servicing division no longer exists. Nationstar has received only one contact from Hardest Hit, in which HH asked whether NS was receiving and applying payments. NS received payments in the amount of the next-due 2011 payments and applied them as they received them. I have contacted HH to look into what Aurora reported to them, but HH won't release that information to me.

However, HH indicated to me that they always pay out the most delinquent payment first. Meaning that even if Aurora had reported both the $417 2011 payment and the $767 2012 payment, HH still would have only paid out the $417 payment as that was the most delinquent payment due. Again, I do not know exactly what Aurora reported, but even if they did not report the 2012 payment, their failure to do so would not have affected the amount that HH paid out.

I hope that explains things.

Ellis W Wilder | Associate Attorney | Member Oregon State Bar
McCarthy ♦ Holthus LLP
  m. 920 SW 3rd Avenue 1st Floor
    Portland, Oregon 97204
  p. 971.201.3200 | f. 971.201.3202
  e. ewilder@mccarthyholthus.com

# EXHIBIT 7

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, May 08, 2014 3:55 PM

**To:** Ellis Wilder
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; 'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

Take all the time you need Ellis, I appreciate your diligence.  I have sent numerous requests over the past nine months for detailed information without response, and you can find all of these requests by me documented on the Mediation Portal.

Mary

**From:** Ellis Wilder [mailto:ewilder@McCarthyHolthus.com]
**Sent:** Thursday, May 08, 2014 3:40 PM
**To:** Mary Strong
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; 'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

Mary,

I want to make sure I give you the most accurate answer possible.  Auora began the OHSI reporting and Aurora also initiated the impounding of escrow.  While Nationstar has some aurora records it will take some time to get you this information.  I will do my best to get back to you early next week at the absolute latest.  I appreciate your patience.

Thank you.

Ellis W Wilder | Associate Attorney | Member Oregon State Bar
McCarthy ♦ Holthus LLP
  m. 920 SW 3rd Avenue 1st Floor
     Portland, Oregon 97204
  p. 971.201.3200 | f. 971.201.3202
  e. ewilder@mccarthyholthus.com

*"Service Second to None"*

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, May 08, 2014 10:59 AM
**To:** Ellis Wilder
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; 'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

Why was the full monthly payment due, including escrows, not communicated to OHSI by the servicer?

*"Even though Hardest Hit was making payments in 2012, those payments were being applied to the delinquent, 2011 monthly payments, as these were the oldest payments due."*

## EXHIBIT 7

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, May 08, 2014 10:58 AM
**To:** 'Ellis Wilder'
**Cc:** 'annk@neighborimpact.org'; 'Kimberly.Tinsley@nationstarmail.com';
'Dana.Dillard@nationstarmail.com'; 'Kevin Scalise'; 'marystrong@bendbroadband.com';
'homeowner.help@state.or.us'; 'IDSMH'
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

1.  What is the escrow breakdown of the $767 monthly impounded by Aurora?
2.  What was the escrow breakdown when the monthly payment was $797?
3.  Does history exist anywhere on this loan prior to its' transfer to Nationstar for servicing?

Mary

**From:** Ellis Wilder [mailto:ewilder@McCarthyHolthus.com]
**Sent:** Thursday, May 08, 2014 9:54 AM
**To:** Mary Strong
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com;
'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

I probably was not clear enough in my first email.  Aurora was technically the entity that began impounding escrow
in 2012.  Nationstar acquired the servicing rights shortly thereafter.  The $767.67 includes interest and escrow
impounded by Aurora.  Nationstar continued to impound escrow once it began servicing the loan.

Ellis W Wilder | Associate Attorney | Member Oregon State Bar
McCarthy ♦ Holthus LLP
  m. 920 SW 3rd Avenue 1st Floor
      Portland, Oregon 97204
  p. 971.201.3200 | f. 971.201.3202
  e. ewilder@mccarthyholthus.com

*"Service Second to None"*

CONFIDENTIALITY NOTICE: The information contained herein may be privileged and protected by the attorney/client
and/or other privilege. It is confidential in nature and intended for use by the intended addressee only. If you are
not the intended recipient, you are hereby expressly prohibited from dissemination distribution, copy or any use
whatsoever of this transmission and its contents. If you receive this transmission in error, please reply or call the
sender and arrangements will be made to retrieve the originals from you at no charge.
Federal law requires us to advise you that communication with our office could be interpreted as an attempt to
collect a debt and that any information obtained will be used for that purpose.

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, May 08, 2014 9:50 AM
**To:** Ellis Wilder
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com;
'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

No, that was my monthly payment before Nationstar took over servicing this loan.  Please refer to history of the
loan.

## EXHIBIT 7

**From:** Ellis Wilder [mailto:ewilder@McCarthyHolthus.com]
**Sent:** Thursday, May 08, 2014 9:39 AM
**To:** Mary Strong
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; 'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

The 2011 payments were $417.  I believe that the $767.67 is the current interest and escrow payment.

Ellis W Wilder | Associate Attorney | Member Oregon State Bar
McCarthy ♦ Holthus LLP
  m. 920 SW 3ʳᵈ Avenue 1ˢᵗ Floor
     Portland, Oregon 97204
  p. 971.201.3200 | f. 971.201.3202
  e. ewilder@mccarthvholthus.com

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, May 08, 2014 9:27 AM
**To:** Ellis Wilder
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; 'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

So, my monthly payments of $767.67 to Aurora were interest only?

**From:** Ellis Wilder [mailto:ewilder@McCarthyHolthus.com]
**Sent:** Thursday, May 08, 2014 9:07 AM
**To:** Mary Strong
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; 'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us; IDSMH
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

Mary,

Part of the confusion here lies in how servicers process payments.  If you miss your payment for April, for example, and then make a payment in May, the payment that you made in May gets posted to April, since that was the most recent payment due.  The May payment would thus still show as due, even though you made your payment in the month on May.  Every payment you make is always posted to the oldest payment due-date, as this keeps holes from forming in the payment history.  Section 2 of the Deed of Trust requires the servicer to apply payments in this way.

According to the terms of your Deed of Trust, each payment gets applied in the following way: (1) outstanding interest, (2) outstanding principal, and then (3) escrow, starting from the oldest due-date and moving forward.  Thus, before Nationstar can start applying payments to escrow, it first has to pay off all of the delinquent principal and interest payments.  The payments in question from 2011 are interest only, so we only have to worry about interest, but all of that delinquent interest has to get paid off before Nationstar can start applying payments to escrow items.

When you signed up for the hardest hit program you were already more than a year delinquent on your mortgage.  Even though Hardest Hit was making payments in 2012, those payments were being applied to the

# EXHIBIT 7

delinquent, 2011 monthly payments, as these were the oldest payments due.

When a servicer begins to impound taxes and insurance into monthly mortgage payments, that escrow impound only applies to current payments, going forward.  It does not retroactively apply to past-due, delinquent payments.  Nationstar did not begin impounding escrow until 2012.  Thus, while new payments coming due from 2012 onward had taxes and insurance included, the delinquent, 2011 payments did not.

The Hardest Hit program pays for 1 year of the mortgage, but will not bring the mortgage current if it's already delinquent.  In this case, you already had more than a year of delinquent payments that did not have escrow impounded.  Thus, when Nationstar provided Hardest Hit with the information it needed to make a year's worth of payments,  it gave Hardest Hit the figures that they would need to make 2011 payments, not 2012 payments, as all of those payments made by Hardest Hit in 2012 would actually be "posted" to the 2011 due-dates, and all of those 2011 delinquent payments need to get paid off before Nationstar can start applying payments to 2012.  Again, the Deed of Trust requires the servicer to apply payments this way.

Each month Hardest hit would pay off an old, 2011 payment, and a new 2012 payment would come due.  The 2012 payment consisted of interest and escrow, while the 2011 payment consisted only of interest.  That is why your arrearage continued to increase even while Hardest hit was making these payments.

Ellis W Wilder | Associate Attorney | Member Oregon State Bar
McCarthy ♦ Holthus LLP
  m. 920 SW 3rd Avenue 1st Floor
     Portland, Oregon 97204
  p. 971.201.3200 | f. 971.201.3202
  e. ewilder@mccarthyholthus.com

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, May 08, 2014 7:00 AM
**To:** Ellis Wilder
**Cc:** annk@neighborimpact.org; Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; 'Kevin Scalise'; 'marystrong@bendbroadband.com'; homeowner.help@state.or.us
**Subject:** FW: Loan #: 0598856094
 Please explain to me why interest, property taxes and insurance were not requested by Nationstar to be  included in these payments under the OHSI program.

Mary Strong

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Wednesday, March 19, 2014 1:04 PM
**To:** 'Homeowner HELP'
**Cc:** marystrong@bendbroadband.com
**Subject:** RE: Loan #: 0598856094
 Sandy, I'm following up regarding your contact with your Servicer Liason on the matter below, to learn if this disparity in payment amounts due and paid through your program can be resolved.  The payments made by your program did not include property tax and insurance as required per Nationstar.
                    *"However, I have contacted our Servicer Liaison to confirm this or if we have any options to*
                    *resolve this issue.  I will keep you updated as to what I find out."*

Thank you,

Mary Strong

# EXHIBIT 7

**From:** Homeowner HELP [mailto:homeowner.help@state.or.us]
**Sent:** Thursday, July 18, 2013 2:11 PM
**To:** Mary Strong
**Subject:** RE: Loan #: 0598856094

Hello Mary,

I think we have indeed found the issue.  If you had taxes and insurance impounded in with your mortgage payments each month this is probably the case.  In looking into the record Aurora shows only 0.01 for taxes and the same 0.01 for insurance on the original record they sent dated 3/6/2013.  Which since we only pay the amount quoted by the servicer, this is what was paid.  If this is the case, both Aurora and Nationstar sent payment confirmation records showing no shortages on each payment and no payment change record to add additional taxes and insurance was ever sent by either servicer throughout the program.

It has been our policy in the past that we do not go back and make adjustment payments with regards to taxes and insurance not reported to us by the servicer.  However, I have contacted our Servicer Liaison to confirm this or if we have any options to resolve this issue.  I will keep you updated as to what I find out.

Best Regards,

*Sandy Steele*

*Lead Public Service Representative 3*
*Oregon Homeownership Stabilization Initiative*
*Oregon Housing and Community Services*
*725 Summer St NE, Suite B/Salem, OR  97301-1266*
*Office:  503.986.2025/Fax:  503.986.2014*

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, July 18, 2013 11:45 AM
**To:** 'Homeowner HELP'
**Subject:** RE: Loan #: 0598856094

It appears they neglected to inform you of the taxes and insurance attached to the monthly payment.

*Once prequalification reviews are done by underwriters, we send an electronic record request for payment information of payment amount including taxes and insurance that may be attached to the monthly payment*

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, July 18, 2013 11:44 AM
**To:** 'Homeowner HELP'
**Subject:** RE: Loan #: 0598856094

Thank you for your help.  Have you received the fax from them yet?

## EXHIBIT 7

**From:** Homeowner HELP [mailto:homeowner.help@state.or.us]
**Sent:** Thursday, July 18, 2013 10:52 AM
**To:** Mary Strong
**Subject:** RE: Loan #: 0598856094

Hello Mary,

Thank you for contacting our office.  I understand your frustration with this payment issue, however we are unable to contact Shacara or Prius in regards to your mortgage.  Our Servicer Liaison is the only representative from our office who has direct contact with servicers and he only speaks to the Hardest Hit department contact within each servicer.

Electronic records of payment amounts are transmitted between the servicers and our office.  Once prequalification reviews are done by underwriters, we send an electronic record request for payment information of payment amount including taxes and insurance that may be attached to the monthly payment, next payment due date, and their validation to accept payment from our office on your behalf.  On 3/6/2012 their Aurora's Hardest Hit Department returned the validation showing your payment was $455.27.  Our office is mandated by US Treasury to pay only what the servicer tells us to pay.   Aurora's Hardest Hit Department then sent us a payment change record on 6/5/2012 indicating your payment was reduced to $417.33.  Your account was then transferred to Nationstar and no payment change records were ever sent from Nationstar to our office to indicate any change in payment amount.

I have contacted our Servicer Liaison to see if we can get in touch with Nationstar's Hardest Hit Department to sort this issue out and once I have information back from him I will contact you.

Best Regards,

*Sandy Steele*
*Lead Public Service Representative 3*
*Oregon Homeownership Stabilization Initiative*
*Oregon Housing and Community Services*

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, July 18, 2013 8:30 AM
**To:** 'Homeowner HELP'; mortgagehelp@neighborimpact.org
**Cc:** marystrong@bendbroadband.com
**Subject:** RE: Loan #: 0598856094

Sandy,

I spoke with Shacara (supervisor) and Prius at Nationstar Mortgage - 877-343-5602 this morning.

They indicate that there is no instruction from OHSI/HHF (Hardest Hit Fund) regarding payment amounts for my mortgage.  Prius is faxing a Detailed Mortgage Acitiovty Report to you at 503-986-2014.  Please feel free to call Prius or his supervisor Shacara at Nationstar Mortgage - 877-343-5602 to clarify the discrepancy between the payments you made and the full $791 monthly payment amounts that were due on this account (please see attached and below).

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701

# EXHIBIT 7

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Tuesday, July 16, 2013 5:18 PM
**To:** devin.crowe@NationstarMail.com
**Cc:** 'Homeowner HELP'; mortgagehelp@neighborimpact.org; marystrong@bendbroadband.com
**Subject:** RE: Loan #: 0598856094

Nationstar Customer Service
ATTENTION:  DEVIN CROWE

Please see my email below, I'm trying to work with NeighborImpact and OHSI to understand why the full $20,000 available through the MPA program was not applied to my mortgage, Loan # 0598856094.  Please see attached:

1.  Payments made to Aurora & Nationstar since September 2010
2.  Nationstar escrow statement as displayed on your website
3.  Nationstar statement dated 6.18.13 displayed on your website

As previously requested, please email me a DETAILED MORTGAGE ACTIVITY REPORT, and fax a copy of your DETAILED MORTGAGE ACTIVITY REPORT for this loan to FAX # 503-986-2014, ATTENTION SANDY.

Thank you,

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905
marystrong@bendbroadband.com


**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Friday, July 12, 2013 2:51 PM
**To:** 'devin.crowe@NationstarMail.com'
**Cc:** 'Homeowner HELP'
**Subject:** RE: Loan #: 0598856094

1.  Please fax a "detailed mortgage activity report" from June 2011 to this number:  503-986-2014 - ATTENTION:  Sandy

2.  Please send a "detailed mortgage activity report" from June 2011 to present to me at this email address

Mary Strong
2559 NW Monterey Pines Drive
Bend, Oregon 97701
541-728-7905


**EXHIBIT 7**

**From:** Homeowner HELP [mailto:homeowner.help@state.or.us]
**Sent:** Friday, July 12, 2013 9:56 AM
**To:** Mary Strong
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

Good Morning Mary,

Thank you for contacting our office. We are available to speak to you from 8-5, Monday-Friday, and if you are able to call in and speak to us, that would be the most accurate way to discuss your payment issue. However, we did make payments based on what Aurora, then Nationstar asked us to pay each month and we cannot pay different from what they state is due. Please call us at your earliest convenience @ 503-986-2025 so we can go over the payment discrepancy with you. Have a nice day.

Regards,

OHSI Team
Oregon Homeownership Stabilization Initiative
725 Summer Street NE
Salem. OR 97301-1266
**Phone (503) 986-2025**
Fax (503) 986-2014
homeowner.help@hcs.state.or.us.



Ref: 06

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Friday, July 12, 2013 9:22 AM
**To:** 'Mortgage Help'; 'Homeowner HELP'
**Cc:** marystrong@bendbroadband.com
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

Ray, I'm trying to figure out why the MPA program payments made on my behalf didn't cover the full monthly payment amount, including escrows. The monthly payment amount should have been $753.48 or $9,041.76 for 12 monthly payments (please see attached) up to the maximum $20,000 total allowed under the program. Instead the payments made by MPA were only $417.33 per month.

Can you help?

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905

## EXHIBIT 7

**From:** Homeowner HELP [mailto:homeowner.help@state.or.us]
**Sent:** Tuesday, September 18, 2012 9:26 AM
**To:** 'Mary Strong'
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

Good Morning Mary,

Thank you for contacting our office. Below are the payments made on your behalf to date. Based on the records provided by your servicer in March 2012 the account was almost 12 months due. At the beginning of the program 3 payments were sent, the 2 would have taken the account to 10 months past due. The program has not brought you current as that is not the intentions of the program. There could also be other fees associated on the account due to the past due balance such as inspection fees, foreclosure fees, legal fees, ect.

| Borrower Name | Payment Date | Amount | Actual Paid Date |
|---|---|---|---|
| STRONG, MARY P. | 2/1/2012 | $ 417.33 | 7/27/2012 |
| STRONG, MARY P. | 3/1/2012 | $ 417.33 | 7/27/2012 |
| STRONG, MARY P. | 4/1/2012 | $ 417.33 | 7/27/2012 |
| STRONG, MARY P. | 5/1/2012 | $ 455.27 | 5/31/2012 |
| STRONG, MARY P. | 6/1/2012 | $ 417.33 | 7/27/2012 |
| STRONG, MARY P. | 7/1/2012 | $ 417.33 | 7/27/2012 |
| STRONG, MARY P. | 8/1/2012 | $ 417.33 | 8/14/2012 |
| STRONG, MARY P. | 9/1/2012 | $ 417.33 | 9/11/2012 |

Regards,

OHSI Team
Oregon Homeownership Stabilization Initiative
725 Summer Street NE
Salem, OR 97301-1266
Phone: (503) 986-2025
homeownerhelp@hcs.state.or.us
http://www.oregonhomeownerhelp.org

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Saturday, September 15, 2012 12:13 PM
**To:** mortgagehelp@neighborimpact.org; homeowner.help@state.or.us
**Cc:** marystrong@bendbroadband.com
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

I received an invoice in the mail today from Nationstar Mortgage dated 9/6/12 (their loan #0598856094) indicating a past-due amount of $14,778.14. Please help me understand the apparent disconnect between my MPA approval for a total $20,000 value and the accounting just sent to me by Nationstar Mortgage.

I will forward this letter from Nationstar to NeighborImpact, 20310 Empire Avenue, Ste A110, Bend, OR 97701, Attn: Ray, MPA Team.

Mary Strong

**EXHIBIT 7**

---

PLAINTIFF'S DECLARATION & EXHIBITS IN SUPPORT OF COMPLAINT

Exhibit 1  Page 49
Page 86 of 144

**From:** Homeowner HELP [mailto:homeowner.help@state.or.us]
**Sent:** Monday, August 27, 2012 8:56 AM
**To:** 'Mary Strong'
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

Good Morning Mary,

Thank you for contacting our office. We have made one payment to Aurora for May and the rest of the payments to Nationstar. Here is another payment history with the lender information attached to the report. If you have any further questions please contact us at (503)986-2025 which might be easier so we have a clear understanding of all the questions or concerns you might have.

| Servicer | ID | Borrower Name | Payment Date | Amount | Actual Paid Date | Batch # |
|----------|-----|---------------|-------------|--------|-----------------|---------|
| AURORA | OR3959 | STRONG, MARY P. | 5/1/2012 | $ 455.27 | 5/31/2012 | 1055 |
| NATIONSTAR | OR3959 | STRONG, MARY P. | 2/1/2012 | $ 417.33 | 7/27/2012 | 1068 |
| NATIONSTAR | OR3959 | STRONG, MARY P. | 3/1/2012 | $ 417.33 | 7/27/2012 | 1068 |
| NATIONSTAR | OR3959 | STRONG, MARY P. | 4/1/2012 | $ 417.33 | 7/27/2012 | 1068 |
| NATIONSTAR | OR3959 | STRONG, MARY P. | 6/1/2012 | $ 417.33 | 7/27/2012 | 1068 |
| NATIONSTAR | OR3959 | STRONG, MARY P. | 7/1/2012 | $ 417.33 | 7/27/2012 | 1068 |
| NATIONSTAR | OR3959 | STRONG, MARY P. | 8/1/2012 | $ 417.33 | 8/14/2012 | 1070 |

Thank you for your inquiry.

Regards,

OHSI Team
Oregon Homeownership Stabilization Initiative
725 Summer Street NE
Salem, OR 97301-1266
Office: 503-986-2025
Fax: 503-986-2014
homeownerhelp@hcs.state.or.us.


**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Saturday, August 25, 2012 11:45 AM
**To:** 'Homeowner HELP'
**Cc:** marystrong@bendbroadband.com
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

Have you referenced the Aurora loan #0035765346 on these payments made to Nationstar?

Mary


# EXHIBIT 7

**From:** Homeowner HELP [mailto:homeowner.help@state.or.us]
**Sent:** Friday, August 24, 2012 1:01 PM
**To:** 'Mary Strong'
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

Mary,

Here is the payment history:

| Borrower Name | Payment Date | Amount | Actual Paid Date |
|---|---|---|---|
| STRONG, MARY P. | 5/1/2012 | $    455.27 | 5/31/2012 |
| STRONG, MARY P. | 2/1/2012 | $    417.33 | 7/27/2012 |
| STRONG, MARY P. | 3/1/2012 | $    417.33 | 7/27/2012 |
| STRONG, MARY P. | 4/1/2012 | $    417.33 | 7/27/2012 |
| STRONG, MARY P. | 6/1/2012 | $    417.33 | 7/27/2012 |
| STRONG, MARY P. | 7/1/2012 | $    417.33 | 7/27/2012 |
| STRONG, MARY P. | 8/1/2012 | $    417.33 | 8/14/2012 |

Regards,

OHSI Team
Oregon Homeownership Stabilization Initiative
725 Summer Street NE
Salem, OR 97301-1266
Phone: (503) 986-2025
homeownerhelp@hcs.state.or.us.



**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Friday, August 24, 2012 12:20 PM
**To:** 'Homeowner HELP'
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

Can you email me a copy of payments that have been made to my account?

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Friday, August 24, 2012 12:19 PM
**To:** 'Homeowner HELP'
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

Sorry, I'm still confused.  What is it that you want me to fax and to who?  Who at Nationstar are you sending payments to?

## EXHIBIT 7

**From:** Homeowner HELP [mailto:homeowner.help@state.or.us]
**Sent:** Friday, August 24, 2012 11:57 AM
**To:** 'Mary Strong'
**Subject:** RE: MPA - NeighborImpact OR-12-522860-JUD

Sorry for the confusion Mary,

It looks like we have sent a total of 7 payments, of which 6 should already been posted to your account. The 7th is the August payment that may not be shown yet. Can you please request an full account detailed history from Nationstar as it sounds like they are not posting the payments correctly to your account and they have not send us updated information on payments. You may either reply to this email or fax the information to 503-986-2014.

Regards,

OHSI Team
Oregon Homeownership Stabilization Initiative
725 Summer Street NE
Salem, OR 97301-1266
Phone: (503) 986-2025
homeownerhelp@hcs.state.or.us.

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Wednesday, May 28, 2014 7:56 AM
**To:** 'Ellis Wilder'
**Cc:** 'annk@neighborimpact.org'; 'Kimberly.Tinsley@nationstarmail.com'; 'Dana.Dillard@nationstarmail.com'; 'Kevin Scalise'; 'homeowner.help@state.or.us'; 'IDSMH'
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED

Please explain why the interest rate indicated on the Nationstar Mortgage Loan Statement dated 5/20/14 for this property indicates a rate of 3%. According to my Adjustable Rate Rider and the 6-month LIBOR published in the Wall Street Journal, should this rate not be 2.6%?

$$.3239 + 2.250 = 2.6\%$$



**EXHIBIT 7**



**EXHIBIT 7**

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 28th day of June, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

LEHMAN BROTHERS BANK, FSB

("Lender") of the same date and covering the property described in the Security Instrument and located at:

2559 NW MONTEREY PINES DRIVE, BEND, OREGON 97701

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 5.250 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of August , 2010 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 25 HUNDREDTHS percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL ) - Single Family - Fannie Mae Uniform Instrument

VMP-838R (0402)   Form 3138 1/01

Page 1 of 3        Initials: [initials]

VMP Mortgage Solutions, Inc.

(800)521-7291



**EXHIBIT 7**

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **11.250** % or less than **2.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points ( **2.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **11.250** %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Initials _____

-838R (0402)                    Page 2 of 3                    Form 3138 1/01

**EXHIBIT 7**

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, May 29, 2014 12:23 PM
**To:** 'Ellis Wilder'
**Cc:** Kimberly.Tinsley@nationstarmail.com; Dana.Dillard@nationstarmail.com; homeowner.help@state.or.us; 'IDSMH'; sally.oneil@doj.state.or.us; carmen.wood@doj.state.or.us; msp@foreclosuremediationor.org; marystrong@bendbroadband.com
**Subject:** RE: Loan #: 0598856094 | OR-13-589945-MED; CFPB Case Number140318-001041

Please note and explain why this record of payments displayed on the Nationstar site does not match either 1) **my record** or 2) **Sandy Steele's record** of documented payments (OHSI MPA) on this loan.

The "My Nationstar Transaction History" does not enable me to view any payments other than these displayed here.

Your prompt response will be appreciated.  Please do not mail another computer printout, as this bears no resemblance to information found on the My Nationstar Transaction History", the statements mailed to me by Nationstar, nor information regarding records provided to me by OHSI MPA.

Regards,

Mary Strong
541-728-7905



| Effective Date | Type | Amount | Principal | Interest | Escrow | Fees | Balance |
|---|---|---|---|---|---|---|---|
| 09/03/2013 | Payment | 1,237.04 | 0.00 | 398.34 | 838.70 | 0.00 | 182,099.05 |
| 01/15/2013 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 12/14/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 11/16/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 10/12/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 09/13/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 09/13/2012 | Payment Reversal | -398.36 | 0.00 | -398.34 | -0.02 | 0.00 | 182,099.05 |
| 09/13/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 08/15/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 06/26/2012 | Escrow | 182.00 | 0.00 | 0.00 | 182.00 | 0.00 | 182,099.05 |

First  Previous  1  Next  Last

**EXHIBIT 8**



**Mary Strong – record of Nationstar payments through May 2014:**

| DUE DATE | PAID | AMOUNT | PAYOR |
|---|---|---|---|
| June, July & August 2010 | 9/13/2010 | $2,303.62 | MS |
| September 2011 | 10/4/2010 | $621.62 | MS |
| October & partial November 2010 | 10/22/2010 | $681.91 | MS |
| November 2010 bal pr Aurora letter 11/19 | 11/29/2010 | $249.02 | MS |
| Deember 2010 | 11/29/2010 | $445.40 | MS |
| January 2011 | 4/11/2011 | $417.31 | MS |
| February 2011 | 7/27/2012 | $455.27 | MPA |
| March 2011 | 7/27/2012 | $417.33 | MPA |
| April 2011 | 7/27/2012 | $417.33 | MPA |
| Mary 2011 | 5/31/2012 | $455.27 | MPA |
| June 2011 | 7/27/2012 | $417.33 | MPA |
| July 2011 | 7/27/2012 | $417.33 | MPA |
| *Country Financial (homeowner's insurance)* | *8/4/2011* | *$261.37* | *MS* |
| August 2011 | 8/14/2012 | $417.33 | MPA |
| September 2011 | 9/11/2012 | $417.33 | MPA |
| October 2011 | 10/11/2012 | $417.33 | MPA |
| November 2011 | 11/14/2012 | $417.33 | MPA |
| December 2011 | 12/12/2012 | $417.33 | MPA |
| January 2012 | 1/11/2013 | $417.33 | MPA |
| February 2012 | 4/24/2013 | $455.25 | MS |
| March 2012 | 6/10/2013 | $398.34 | MS |
| April 2012 | 8/19/2013 | $398.34 | MS |
| May 2012 | 8/30/2013 | $455.25 | MS |
| June 2012 | 9/16/2013 | $455.25 | MS |
| July 2012 | 10/2/2013 | $455.25 | MS |
| August 2012 | 4/10/2014 | $398.34 | MS |
| September 2012 - CHECK #1010 | 9/19/2014 | $641.90 | MS |
| October 2012 - CHECK #1011 | 10/21/2014 | $641.90 | MS |
| November 2012 - CHECK #1013 | 11/25/2014 | $649.23 | MS |
| December 2012 - CHECK #1014 | 12/17/2014 | $649.23 | MS |
| January 2013 | TBD | | |
| February 2013 | TBD | | |
| March 2013 | | | |
| April 2013 | | | |
| May 2013 | | | |
| June 2013 | | | |
| July 2013 | | | |
| *TRAVELERS - 2559 Insurance - 12 month premium* | *8/20/2013* | *$449.00* | *MS* |
| *NATIONSTAR REJECT/REFUND* | *8/22/2013* | *-$398.34* | |

**EXHIBIT 8**

**From:** STEELE Sandy * HCS [mailto:sandy.steele@state.or.us]
**Sent:** Wednesday, February 12, 2014 11:22 AM
**To:** 'MARYSTRONG@BENDBROADBAND.COM'
**Subject:** Payment History

Hi Mary,

Please find the following payment history.  To explain reading from left to right;  The month/year the payment was sent for, the amount of payment sent, the date the payment was electronically sent on your behalf, what servicer the payment was sent to, and finally the batch number the payment was sent under.

| | | | | |
|---|---|---|---|---|
| 02/2012 | $455.27 | 07/27/2012 | Nationstar | 1068 |
| 03/2012 | $417.33 | 07/27/2012 | Nationstar | 1068 |
| 04/2012 | $417.33 | 07/27/2012 | Nationstar | 1068 |
| 05/2012 | $455.27 | 05/31/2012 | Aurora | 1055 |
| 06/2012 | $417.33 | 07/27/2012 | Nationstar | 1068 |
| 07/2012 | $417.33 | 07/27/2012 | Nationstar | 1068 |
| 08/2012 | $417.33 | 08/14/2012 | Nationstar | 1070 |
| 09/2012 | $417.33 | 09/11/2012 | Nationstar | 1076 |
| 10/2012 | $417.33 | 10/11/2012 | Nationstar | 1083 |
| 11/2012 | $417.33 | 11/14/2012 | Nationstar | 1100 |
| 12/2012 | $417.33 | 12/12/2012 | Nationstar | 1107 |
| 01/2013 | $417.33 | 01/11/2013 | Nationstar | 1127 |

On 03/06/2012 we received a "V" (validation) record from Aurora showing next contractual payment due as $455.25 with a tax amount of $0.01 and an insurance amount as $0.01 for a total amount of payment of $455.27.  A payment change record was submitted by Aurora on 06/05/2012 showing payment amount changed to $417.33 with no tax or insurance included in payment.  One payment was sent to Aurora on 05/31/2012 for the amount quoted of $455.27.  Payments began with Nationstar on 06/01/2012 which we sent 5 payments in one batch that were due up to the current timeframe.  The following is a copy of the spreadsheet which shows the payment confirmation records received from Nationstar.  To explain reading from left to right;  the batch number payment was received under, the amount of total payment amount received, the total number of monthly payments received, the date of scheduled payment due, and to the far right is the amount which Nationstar posted to your account.  We never received a payment confirmation record for the payment for 5/2012 which was sent to Aurora.

| | | | | |
|---|---|---|---|---|
| BATCH 1068 | 2086.65 | 5 | 02/01/2012 | 2086.65 |
| BATCH 1070 | 417.33 | 1 | 08/01/2012 | 417.33 |
| BATCH 1076 | 417.33 | 1 | 09/01/2012 | 417.33 |
| BATCH 1083 | 417.33 | 1 | 10/01/2012 | 417.33 |
| BATCH 1100 | 417.33 | 1 | 11/01/2012 | 417.33 |
| BATCH 1107 | 417.33 | 1 | 12/01/2012 | 417.33 |
| BATCH 1127 | 417.33 | 1 | 01/01/2013 | 417.33 |

There were no other records submitted by either servicer Aurora or Nationstar which indicated any changes in payments, tax or insurance amounts during your time of participation.  Hope this information will be of assistance to you.

Best Regards,

*Sandy Steele*
*Lead Public Service Representative 3*
*Oregon Homeownership Stabilization Initiative*

# EXHIBIT 8

**PLAINTIFF MARY STRONG'S MEDIATION CONFERENCE NOTES JUNE 5, 2014**

Per Ellis Wilder (representing Nationstar) re my request for answers to my question in my letter dated May 30, 2014 to Nationstar with copy sent certified mail to the Department of Justice:

## *"I am not going to answer that"*
**Per the Nationstar representative on the phone:** *"is not going to answer that"*

Nationstar's calculations wrt HAMP denial:

| | | |
|---|---|---|
| Principal balance: | $182,099.05 | |
| Arrearages: | $ 24,679.75 | |
| Total Due: | $206,778.80 | ($629.90 P&I, 40 years @ 2%) |
| | | |
| *Less 30% max forbearance* | *$ 62,033.60* | |
| *New Balance* | *$144,745.20* | ($440.90 P&I, 40 years @ 2%) |

$440.90        P&I
$212.50 *property taxes*
$ 37.41 *hazard insurance*
$690.80

$690.80 is 31% of $2,228.40            (690.8 = .31X; Find X)

Nationstar calculates for a HAMP modification using a 2%, 40-year loan including required P&I plus insurance and taxes, monthly payment would need to be exactly equal to $543.76 to meet the 31% of income required for HAMP. Forbearance would have to be $86,865.97 which exceeds HAMP 30% forbearance allowed.

**Ellis Wilder indicates that HAMP requires <u>EXACTLY</u> 31% housing expense to income – no more, no less, and this is why I was denied.**

**Per Ellis Wilder (representing Nationstar) -** *"Nationstar uses an algorithm".*

HAMP
http://www.makinghomeaffordable.gov/tools/payment-reduction/Pages/default.aspx

**Payment Reduction Estimator**
Under the Home Affordable Modification Program, the target maximum amount for your mortgage payment (or mortgage debt-to-income) should be <u>approximately 31% of your gross (pre-tax) monthly income.</u> This Payment Reduction Estimator will help determine what your current mortgage debt-to-income is and how much your monthly payment could be reduced if you qualify for a modification. Based on your individual financial situation, under HAMP, your final modified payment may be above or below the 31% debt-to-income ratio.

**EXHIBIT 9**

| Amazon.com – Net Pay | | | | |
|---|---|---|---|---|
| **2013** | | | | |
| 6/7/2013 | $565.94 | | | |
| 6/21/2013 | $708.70 | | | |
| 7/5/2013 | $832.93 | | | |
| 7/19/2013 | $230.51 | | | |
| 8/2/2013 | $449.10 | | | |
| 8/17/2013 | $883.01 | | | |
| 8/30/2013 | $726.78 | | | |
| 9/13/2013 | $814.96 | | | |
| 9/27/2013 | $596.65 | | | |
| 10/11/2013 | $527.69 | | | |
| 10/25/2013 | $479.51 | | | |
| 11/8/2013 | $651.84 | | | |
| 11/22/2013 | $697.35 | | | |
| 12/6/2013 | $646.55 | | | |
| Total | $8,811.52 | | | |
| | | | | |
| Bi-Weekly Average (after tax): | $629.39 | | | |
| Monthly Average (after tax): | $1,258.79 | | | |
| Gross (pre tax) Income | $9,920.67 | *2013 W-2 AMN WACS INC* | | |
| Gross Monthly Average | $1,653.40 | | | |
| | | | | |
| *** Pay is biweekly, August only had three pay dates, two weeks apart. | | | | |

$1,653.40 + $400 (rent income) = $2,053.40 Gross income

**Payment Reduction Estimator**

**Total Monthly Payment on Your First (or "primary") Mortgage.** Be sure to INCLUDE principal, interest, taxes, insurance and homeowners association dues if applicable.
If you need help determining your total monthly payment, click here.

$ 705

Enter Your Gross Monthly Income. This is the income of all borrowers who signed your mortgage BEFORE taxes and any adjustments.
If you need help determining your gross monthly income, click here.

$ 2,053

**Calculate**

| | |
|---|---|
| This is Your Current Debt-to-Income (DTI) Level | 34% |
| Target DTI under the Home Affordable Modification | 31% |
| Potential New Monthly Payment If You Qualify | $ 637 |
| Potential Monthly Payment Reduction If You Qualify | $ 69 |

## EXHIBIT 9

**Our records show that Freddie Mac owns your mortgage and your note date (the date you closed your loan) – is June 28, 2005**
https://ww3.freddiemac.com/corporate/fm_owned.html?dt_owned=2005-06-28

**Loan Modification**

For homeowners who are several months behind on their mortgage – or expect to fall behind soon – a loan modification of the mortgage terms may provide a solution. **With a loan modification, you and your mortgage company will have a written agreement that changes one or more of the original terms of your note (such as the interest rate or duration of loan) to make your payments more affordable and sustainable.**

A modification may make sense if you:

- Are not current on your mortgage.
- Do not qualify for the federal Home Affordable Modification Program (HAMP)
- Do not qualify for the federal Home Affordable Refinance Program (HARP).
- Can afford the modified mortgage payments.

Be aware that all workout options affect your credit rating and some affect it more than others. You should discuss all potential impacts with your lender. You may also visit www.myfico.com for more information about your credit and how alternatives to foreclosure may affect it.

Home Affordable Refinance Program® and HAMP® are registered trademarks of the U.S. Department of Treasury

**EXHIBIT 9**

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701

June 6, 2014

Nationstar Mortgage
P.O Box 630348
Irving, TX 75063

RE:    Mortgage Loan Number 059885609
        Oregon Foreclosure Avoidance Mediation Program
        BI-130912-653 - Mary P. Strong   Nationstar
        Letter to Nationstar dated May 30, 2014

Pursuant to my letter dated May 30, 2014 and today's mediation conference with Ellis Wilder in attendance:

1. I reiterate my written request for answers to my questions as presented in my May 30, 2014 letter to Nationstar.

2. When asked for answers and explanations to my questions detailed in my May 30, 2014 letter to Nationstar in today's mediation conference, Ellis Wilder advised _**"I am not going to answer"**_, and when I requested the Nationstar representative on the telephone to answer my questions, Mr. Wilder indicated that the Nationstar representative _**"is not going to answer that"**_.

3. Attached is the January 14, 2014 letter from Nationstar Mortgage RE: Notice of Changes in Interest Rate and Monthly Installment Payments indicating effective March 1, 2014 the interest rate of 2.625%, and a monthly installment amount of $641.89.

   The Home Affordable Modification Program indicates as follows on their website found at this URL:
   http://www.makinghomeaffordable.gov/tools/payment-reduction/Pages/default.aspx

   > _'Under the Home Affordable Modification Program, the target maximum amount for your mortgage payment (or mortgage debt-to-income) should be **approximately 31%** of your gross (pre-tax) monthly income. This Payment Reduction Estimator will help determine what your current mortgage debt-to-income is and how much your monthly payment could be reduced if you qualify for a modification. Based on your individual financial situation, **under HAMP, your final modified payment may be above or below the 31% debt-to-income ratio.**'_

4. Below is the "Payment Reduction Estimator" displayed on the website outlining terms of the HAMP modification program: http://www.makinghomeaffordable.gov/tools/payment-reduction/Pages/default.aspx

   This calculator calls for gross monthly income. Based on my pretax income of $2,053 per month (average $1653.40 per month as reported from Amazon.com, and $400.00 per month rental income, as previously reported), my current debt-to-income level is 34%. This is derived from the monthly statement from Nationstar indicating the interest rate 2.625%, $398.34 principal, and $56.91 interest.

   Added to this $455.30 is $37.41/month hazard insurance (previously paid by Mary Strong through August 19, 2014), and $212.50 per month for property tax, for total housing expense monthly of $705.20.

## EXHIBIT 10

The calculator indicates **potential monthly payment reduction of $69.00,** and **potential new monthly payment of $637.00.**

**31% of my $2,053.00 monthly income = $636.40**

| Payment Reduction Estimator | |
|---|---|
| **Total Monthly Payment on Your First (or "primary") Mortgage.** Be sure to INCLUDE principal, interest, taxes, insurance and homeowners association dues if applicable. If you need help determining your total monthly payment, click here. | $ 705 |
| Enter Your Gross Monthly Income. This is the income of all borrowers who signed your mortgage BEFORE taxes and any adjustments. If you need help determining your gross monthly income, click here. | $ 2,053 |

**Calculate**

| | |
|---|---|
| This is Your Current Debt-to-Income (DTI) Level | 34% |
| Target DTI under the Home Affordable Modification | 31% |
| Potential New Monthly Payment If You Qualify | $ 637 |
| Potential Monthly Payment Reduction If You Qualify | $ 69 |

5. I request that this mortgage be modified with forbearance according to HAMP guidelines.
6. I request that my hazard insurance (prepaid by me to Traveler's Insurance for the period 8/20/13 through 8/19/14) and property taxes be removed from Nationstar escrow, to be paid independently by me to the insurance provider of my choice and to the Deschutes County Tax Assessor, as provided in the terms of the Deed pf Trust for this property signed and recorded with Deschutes County July 5, 2005. This language on page 5 of this Deed of Trust states: "Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow items at any time".

*[signature]*

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905

CC: Department of Justice
Attached:       Amazon 2013 W-2
                Nationstar Notice of Changes in Interest Rate and Monthly Installment Payments
                Nationstar Mortgage Loan Statement dated February 19, 2014

# EXHIBIT 10

| 1 Wages, tips, other comp. 9920.67 | 2 Federal income tax withheld |
|---|---|
| 3 Social security wages 9920.67 | 4 Social security tax withheld 615.08 |
| 5 Medicare wages and tips 9920.67 | 6 Medicare tax withheld 143.85 |

| d Control number 155160 LOS2/1F3 159200 | Dept. | Corp. | Employer use only 4815 |
|---|---|---|---|

c Employer's name, address, and ZIP code

**AMZN WACS INC**
**PO BOX 80726**
**SEATTLE WA 98108**

| b Employer's FED ID number 82-0544654 | a Employee's SSA number 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 |
|---|---|
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 |
| | 12b |
| 14 Other | 12c |
| | 12d |
| | 13 Stat emp/Ret. plan/3rd party sick pay |

e/f Employee's name, address and ZIP code

**MARY STRONG**
**2559 NW MONTEREY PINES DRIVE**
**BEND OR 97701**

| 15 State OR | Employer's state ID no. 1480896-3 | 16 State wages, tips, etc. 9920.67 |
|---|---|---|
| 17 State income tax | | 18 Local wages, tips, etc. |
| 19 Local income tax | | 20 Locality name |

Federal Filing Copy
**W-2** Wage and Tax **2013**
Statement OMB No. 1515-0008
Copy B to be filed with employee's Federal Income Tax Return.

**EXHIBIT 10**



Highland Drive
...isville ... 75067

January 14, 2014



3-632-84272-0000083-001-02-000-000-000-000

MARY P STRONG
2559 NW MONTEREY PINES DR
BEND OR 97701-5272

Re:   Notice of Changes in Interest Rate and Monthly Installment Payments
      Adjustable Rate Mortgage (ARM) Loan #: 0598856094

Dear Mary P Strong:

On **02/01/14**, the interest rate on your Adjustable Rate Mortgage (ARM) will automatically increase by **.000%** from **2.625%** to **2.625%** and your monthly installment amount will increase by **$.00** from **$641.89** to **$641.89**, in accordance with the terms of your ARM loan.

Should you choose to continue making voluntary payments on this loan, the new amount should be reflected in your 03/01/14 payment.

Your current interest rate was based on an index value of **.413%**. Your new interest rate is based on an index value of **0.348%**. To determine your new interest rate, we added the index value of **0.348%** as of **01/02/14**, to the agreed upon margin of **2.250%** for a total of **2.625%** rounded to the nearest **.125%**. The new interest rate of **2.625%** may not be more than **2.000%** higher or **2.000%** lower than the prior interest rate of **2.625%**. The original interest rate of your mortgage was **5.250%** which may not be decreased beyond **2.250%** or increased beyond **11.250%** during the life of the mortgage.

If you have an auto debit (ACH) for your payment, the amount drafted from your bank account will adjust with the changes on your loan.

Please refer to your loan documents for the option to convert to a fixed interest rate. Nationstar Mortgage LLC will not assess a prepayment penalty at any time in the event you would like to pay part or all of your mortgage balance.

If you have any questions regarding this notification, your Dedicated Loan Specialist is Amy Perez and can be reached at (877) 782-7612 EXT. 1015920, Monday through Friday between 8 a.m. and 5 p.m. (CST) or via mail at the above listed mailing address or visit us on the web at www.MyNationstarMtg.com.

Sincerely,

Nationstar Mortgage LLC

If an attorney represents you, please refer this letter to such attorney and provide us with such attorney's name, address and telephone number.

*If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you individually and you may have no personal obligation to pay this debt if you have received your discharge in bankruptcy. Please note, however, unless the Bankruptcy Court has ordered otherwise, we continue to retain whatever rights we hold in the property that secures the note, and we reserve the right to exercise those legal rights, but only against the property securing the original obligation.*

ARMBKLTR30

# EXHIBIT 10

 **Nationstar** MORTGAGE    P.O. BOX ...3 ...45

# MORTGAGE LOAN STATEMENT

**CONTACT INFORMATION**

Customer Service: 1-888-480-2432
Monday - Thursday; 8 a.m. - 8 p.m. CT
Friday; 8 a.m. - 6 p.m. CT and Saturday; 8 a.m. - 2 p.m. CT
MyNationstar.com

Your Dedicated Loan Specialist is Javier Garcia and can be reached
at (877) 762-7612 EXT. 1003793 or via mail at:
350 Highland Drive, Lewisville, TX 75067

4-692-87452-0026326-006-1-001-101-000-000

 MARY P STRONG
2559 NW MONTEREY PINES DR
BEND OR 97701-5272

| | |
|---|---|
| Statement Date: | 02/19/2014 |
| Loan Number: | 6598856094 |
| Payment Due Date: | 03/01/2014 |
| **Amount Due:** | **$18,026.95** |

*If payment is received after 03/17/14; $0.00 late fee will be charged.*

## Account Information

| | |
|---|---|
| Interest Bearing Principal Balance | $182,099.05 |
| Interest Rate(Until 09/01/2014) | 2.625% |
| Escrow Balance | -$10,902.64 |
| Prepayment Penalty | |

*Nationstar Mortgage LLC will not assess a prepayment penalty at any time in the event you would like to pay part or all of your mortgage balance.*

The Principal Balance does not represent the payoff amount of your account and is not to be used for payoff purposes.

## Explanation of Amounts Payable

| | |
|---|---|
| Principal | $56.91 |
| Interest | $398.34 |
| Escrow Amount (for Taxes & Insurance) | $276.02 |
| Optional Products and Services | $0.00 |
| Regular Monthly Payment | $731.27 |
| Total Fees and Charges | $314.30 |
| Overdue Payment(s) | $16,981.38 |
| **Total Amount Due** | **$18,026.95** |

## Lender Paid Expense Summary

| | Last Statement | Total |
|---|---|---|
| Legal Fees | $0.00 | $1,072.20 |
| Property Inspections | $0.00 | $234.00 |
| Total | $0.00 | $1,306.20 |

## Past Activity Breakdown

| | Payments Rec'd since 01/22/2014 | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes & Insurance) | $0.00 | $0.00 |
| Optional Insurance | $0.00 | $0.00 |
| Fees and Charges | $0.00 | $0.00 |
| Lender Paid Expenses | $0.00 | $0.00 |
| Partial Payment (Unapplied)** | $56.91 | $1,077.15 |
| Total | $56.91 | $1,077.15 |

## Transaction Activity (01/22/2014 to 02/19/2014)

| Date | Description | Total | Principal | Interest | Escrow | Other |
|---|---|---|---|---|---|---|
| 01/29/2014 | Partial Payment | $56.91 | | | | $56.91 |
| 01/29/2014 | Adjustment-Misc Suspense | -$56.91 | | | | -$56.91 |

## Important Messages          (See Reverse side for Additional Critical Notices)

*This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a demand for payment from any individual protected by the United States Bankruptcy Code. If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and is not an attempt to collect a debt. Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.*

*If you do not wish to receive this monthly information Statement in the future, or if you have any questions regarding this accounts, please call 877-782-7612.*

*Complaints asserting errors related to servicing of your loan, requests for information regarding your loan and qualified written requests (QWR) must be sent to P.O. Box 630348, Irving, TX 75063.*

· DETACH HERE AND RETURN WITH YOUR PAYMENT.  PLEASE ALLOW A MINIMUM OF 7 TO 10 DAYS FOR POSTAL DELIVERY

## EXHIBIT 10

USPS Tracking: https://tools.usps.com/go/TrackConfirmAction!input.action

- USPS Tracking #70123460000298441229
  Mail to Department of Justice
  *Your item was delivered at 11:16 am on June 9. 2014 in SALEM, OR 97301.*

- USPS Tracking #70123460000298441212
  Mail to Nationstar Mortgage
  *Your item was delivered at 11:38 am on June 9, 2014 in IRVING, TX 75063.*

From: Mary Strong                    To:     Nationstar Mortgage
      2559 NW Monterey Pines Drive           P.O Box 630348
      Bend, OR 97701                         Irving, TX 75063

Letter dated June 6, 2014

RE:     Mortgage Loan Number 059885609
        Oregon Foreclosure Avoidance Mediation Program
        BI-130912-653 - Mary P. Strong     Nationstar



**EXHIBIT 10**

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701

June 23, 2014

Nationstar Mortgage
P.O Box 630348
Irving, TX 75063

RE:    Mortgage Loan Number 059885609
       Oregon Foreclosure Avoidance Mediation Program
       BI-130912-653 - Mary P. Strong   Nationstar
       Letter to Nationstar dated May 30, 2014

In response to the Nationstar letter dated June 16, 2014 from April Crane, Customer Relations Specialist, I continue to find inconsistency and confusion in your referenced data points and facts. Please clarify the following:

- **Escrow charges**

Your third paragraph refers to "required escrow charges". The terms of this mortgage loan contract do not include "required escrow charges". Please refer to language on page 5 of the Deed of Trust which states: *"Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow items at any time"*.

- **Interest based on 6-month Libor Rate**

Nationstar Notice of Intent to Change the Interest Rate dated January 5, 2012 indicates 3% rate effective March 1, 2012 for a monthly payment amount $455.25.The published 6-month LIBOR rate effective January 2012 is 0.797. This would indicate a contract rate according to the terms of my mortgage loan contract of 2.797% with a monthly payment amount $417, not 3%. Please explain how you derive the 3% rate referenced in the fourth paragraph of your June 16, 2014 letter.

|  | 1-Month | 3-Month | 6-Month | 12-Month |
|---|---|---|---|---|
| January of 2012 | 0.2829 | 0.5659 | 0.797 | 1.1146 |

http://www.fedprimerate.com/libor/libor_rates_history.htm

-     Nationstar Notice of Intent to Change the Interest Rate dated January 5, 2011 indicates 2.75% rate effective March 1, 2011 for a monthly payment amount $417.31.
-     Nationstar Notice of Intent to Change the Interest Rate dated July 5, 2011 indicates 2.625% rate effective September 1, 2011 for a monthly payment amount $398.34.

## EXHIBIT 11

- **Delinquent payments**

If the account is 27 payments delinquent from March 1, 2012, as indicated in your letter, please advise which four (4) payments indicated paid in my records below have not been applied to this loan:

- **Aurora/Nationstar payments by mary strong 8/23/10 – 10/1/13**

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/13/2010 | EFT | Aurora Loan Services | June, July & August | --Split-- | 2,203 62 | R |
| 10/4/2010 | ENTERED | Aurora Loan Services | Due 9/16/10 (2559) | --Split-- | 621 62 | R |
| 10/22/2010 | EFT | Aurora Loan Services | October 2010 | --Split-- | 681 91 | R |
| 11/29/2010 | | Aurora Loan Services | December | Mortgage Payment | 445 40 | R |
| 11/29/2010 | EFT | Aurora Loan Services | Nov. bal. due per Aurora letter 11/19 | Mortgage Payment | 249 02 | R |
| 4/11/2011 | Bill Pay | Aurora Loan Services (2559) | Jan pmt | Mortgage Payment | 417 31 | R |
| 5/23/2013 | EFT | Nationstar Mortgage | 2559 P & I (May) | Category | 455 25 | R | Deposit |
| 6/7/2013 | EFT | Nationstar Mortgage | 2559 mortgage (June) | | 398 34 | R |
| 8/19/2013 | EFT | Nationstar Mortgage | 2559 mortgage (August) | | 398 34 | R |
| 8/22/2013 | ACH Tran | Nationstar Mortgage | NATIONSTAR MORTGAGE BILL PAY RTD-REJECT/REFUND | ????????????? | | R | 398 34 |
| 8/30/2013 | EFT | Nationstar Mortgage | 2559 mortgage (due 16th) SEPTEMBER | | 455 25 | R |
| 9/13/2013 | EFT | Nationstar Mortgage | 2559 mortgage (due 16th) | | 455 25 | R |
| 10/1/2013 | EFT | Nationstar Mortgage | 2559 mortgage (due 16th) | | 455 25 | |

- **Nationstar payments made on mary strong's behalf by OHSI per Sandy Steele email dated February 12, 2014 @ 11:22 a.m.:**

*Please find the following payment history. To explain reading from left to right; The month/year the payment was sent for, the amount of payment sent, the date the payment was electronically sent on your behalf, what servicer the payment was sent to, and finally the batch number the payment was sent under.*

| | | | | |
|---|---|---|---|---|
| 02/2012 | $455.27 | 07/27/2012 | Nationstar | 1068 |
| 03/2012 | $417.33 | 07/27/2012 | Nationstar | 1068 |
| 04/2012 | $417.33 | 07/27/2012 | Nationstar | 1068 |
| 05/2012 | $455.27 | 05/31/2012 | Aurora | 1055 |
| 06/2012 | $417.33 | 07/27/2012 | Nationstar | 1068 |
| 07/2012 | $417.33 | 07/27/2012 | Nationstar | 1068 |
| 08/2012 | $417.33 | 08/14/2012 | Nationstar | 1070 |
| 09/2012 | $417.33 | 09/11/2012 | Nationstar | 1076 |
| 10/2012 | $417.33 | 10/11/2012 | Nationstar | 1083 |
| 11/2012 | $417.33 | 11/14/2012 | Nationstar | 1100 |
| 12/2012 | $417.33 | 12/12/2012 | Nationstar | 1107 |
| 01/2013 | $417.33 | 01/11/2013 | Nationstar | 1127 |

*On 03/06/2012 we received a "V" (validation) record from Aurora showing next contractual payment due as $455.25 with a tax amount of $0.01 and an insurance amount as $0.01 for a total amount of payment of $455.27. A payment change record was submitted by Aurora on 06/05/2012 showing payment amount changed to $417.33 with no tax or insurance included in payment. One payment was sent to Aurora on 05/31/2012 for the amount quoted of $455.27. Payments began with Nationstar on 06/01/2012 which we sent 5 payments in one batch that were due up to the current timeframe. The following is a copy of the spreadsheet which shows the payment confirmation records received from*

## EXHIBIT 11

Nationstar.  To explain reading from left to right;  the batch number payment was received under, the amount of total payment amount received, the total number of monthly payments received, the date of scheduled payment due, and to the far right is the amount which Nationstar posted to your account.  We never received a payment confirmation record for the payment for 5/2012 which was sent to Aurora.

Best Regards,
**Sandy Steele**
Lead Public Service Representative 3
Oregon Homeownership Stabilization Initiative
Oregon Housing and Community Services
725 Summer St NE, Suite B/Salem, OR  97301-1266
Office:  503.986.2025/Fax:  503.986.2014

- **Please advise why all of these payments are not reflected on the Nationstar website:**

My Payment History                                        Showing 1 to 14 of 14 records

Display 25 ⌄ records                                Quick Filter: [          ]

| Effective Date | Type | Amount | Principal | Interest | Escrow | Fees | Balance |
|---|---|---|---|---|---|---|---|
| 01/15/2013 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 12/14/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 11/16/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 10/12/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 09/13/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 09/13/2012 | Payment Reversal | -398.36 | 0.00 | -398.34 | -0.02 | 0.00 | 182,099.05 |
| 09/13/2012 | Payment | 398.36 | 0.00 | 398.34 | 0.02 | 0.00 | 182,099.05 |
| 08/15/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 07/31/2012 | Payment | 417.33 | 0.00 | 417.31 | 0.02 | 0.00 | 182,099.05 |
| 06/26/2012 | Escrow | 182.00 | 0.00 | 0.00 | 182.00 | 0.00 | 182,099.05 |

First  Previous  1  Next  Last

**EXHIBIT 11**

• **Please explain why my $398.34 payment was rejected and returned by Nationstar 8/22/13.**



| Account: | | | 458044 |
| e-Mail: | | | marystrong@bendbroadband.com |
| Last Login: | | | 08/22/13 5:19 PM |

**Account History**     **Detail Search**

View history for: S10 - Selco Select Checking - $500.88 ∨

| Date | Description | Deposit | Withdrawal | Balance |
|------|-------------|---------|------------|---------|
| 08/22/13 | Deposit NATIONSTAR MORTGAGE BILL PAY RTD-REJECT/REFUND | $398.34 | | $527.03 |
| 08/19/13 | Nationstar Mortgage 3140744337 | | $398.34 | $848.15 |
| 06/10/13 | Nationstar Mortgage 3140665108 | | $398.34 | $235.66 |
| 04/24/13 | Nationstar Mortgage 3140611355 | | $455.25 | $1,057.41 |

Download history as: Select Format ∨   or View as: Select Format ∨

• **Please itemize the $10,902.64 escrow advance amount due referenced in your fourth paragraph of the second page of your June 16, 2014 letter.**

• **Please explain why escrow is being charged by Nationstar for insurance prepaid by Mary Strong:**

**ACORD**   **EVIDENCE OF PROPERTY INSURANCE**   DATE (MM/DD/YYYY) 8/16/2013

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| AGENCY | | COMPANY | |
|--------|--|---------|--|
| FOCUS FINANCIAL SERVICES | | TRAVELERS HOME AND MARINE COMPANY | |
| 1155 CENTRAL AVE EUREKA, MO 63025 | | | |

INSURED: MARY STRONG
2559 NW MONTEREY PINES DR
BEND, County CROOK, OR 97701-5272

POLICY NUMBER: 990178S726 633 1
EFFECTIVE DATE 8/16/2013   EXPIRATION DATE 8/16/2014

PROPERTY INFORMATION
LOCATION/DESCRIPTION
2559 NW MONTEREY PINES DR
BEND, County CROOK, OR 97701-5272

**EXHIBIT 11**

- **HAMP MODIFICATION WATERFALL**

With reference to your 6th paragraph on page two of your June 16, 2014 letter, please explain the calculation used to determine "excessive forbearance for the Home Affordable Modification Program (HAMP) workout option", and please cite the rules of HAMP applied to this decision for my reference.

The $12,746.93 amount that you cite in this paragraph is equal to 10% of the $208,036.24 "total amount to pay loan in full" indicated on The Nationstar Mortgage Payoff Statement dated June 6, 2014. This is 10%, not "more than 30% of the modified principal balance" as you reference in the last sentence of your 7th paragraph on page two of your letter.  Please explain your math to me.  Please explain, as indicated in your paragraph 8 on page two of your letter how the Standard Modification "would actually raise the principal and interest payment".

Your 2nd paragraph on page three of your June 16, 2014 letter indicates that modification would require an interest rate of 4.375% on the modified balance. HAMP guidelines (below) indicate a modified interest rate of 2% (below).  Please explain this contradiction.



https://www.hmpadmin.com/portal/learningcenter/docs/presentations/mhaservicerwebinar_stdalt wtrfall_presentation.pdf

**EXHIBIT 11**

• **ESCROW IMPOUNDS**

Your 3rd paragraph on page four of your June 16, 2014 letter indicates "Aurora did not begin impounding escrow until February 2012". My records indicate that Nationstar began servicing this loan in 2012. Please explain why these impound amounts were not communicated to OHSI (reference my paragraph 3B above).

Below is a statement from Nationstar Mortgage showing a payment made & "Received on Friday, November 16, 2012", and a payment due of $398.36 "Due On: Thursday, December 1, 2011". Please explain why the Nationstar statement for November 2012 does not indicate impound amounts, as this statement was dated subsequent to the February 2012 date that you refer to.



• **NATIONSTAR ACCOUNTING**

As requested on numerous occasions previously by me, please explain these persistent disparities in Nationstar's accounting for this mortgage loan:

**EXHIBIT 11**

## Nationstar Mortgage Loan Number 0598856094

| STATEMENT DATE | AMOUNT DUE | INTEREST BEARING PRINCIPAL BALANCE | INTEREST RATE | ESCROW BALANCE | PRINCIPAL | INTEREST | ESCROW FOR TAXES AND INSURANCE | REGULAR MONTHLY PAYMENT | TOTAL FEES AND CHARGES | OVERDUE PAYMENTS | TOTAL AMOUNT DUE | PARTIAL PAYMENT UNAPPLIED (???) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/18/14 | $18,701.31 | $182,099.05 | 3.000% | $10,902.64 | $0.00 | $455.25 | $276.02 | $731.27 | $314.30 | $17,655.74 | $18,701.31 | $1,077.15 |
| 2/19/14 | $18,026.95 | $182,099.05 | 2.625% | $10,902.64 | $56.91 | $398.34 | $276.02 | $731.27 | $314.30 | $16,981.38 | $18,026.95 | - |
| 1/21/14 | $29,338.82 | $182,099.05 | 2.625% | $10,902.64 | ?? | $455.25 | $243.55 | $698.80 | $314.30 | $28,039.76 | $29,338.82 | - |
| 1/14/2014 * | - | - | 2.625% | - | - | - | - | $641.89 | - | - | - | - |
| 11/19/13 | $27,913.89 | $182,099.05 | 2.625% | $10,902.64 | ?? | $455.25 | $234.25 | $689.50 | $314.30 | $26,774.58 | $27,913.89 | $37.94 |

* Letter advising interest rate effective 3/1/14

**EXHIBIT 11**

I reiterate my request for the HAMP modification previously applied for on this mortgage loan. I am alarmed by Nationstar's accounting practices.

Regards,

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905

CC:  Department of Justice

**EXHIBIT 11**

Mary Strong
2559 NW Monterey Pines Drive                                   *MAILED USPS*
Bend, OR 97701

August 30, 2014

Nationstar Mortgage
P.O Box 630348
Irving, TX 75063

ATTENTION:  April Crane & Ashley Gregory

RE:    **Mortgage Loan Number 059885609**
          Oregon Foreclosure Avoidance Mediation Program
          BI-130912-653 - Mary P. Strong    Nationstar

I received voicemail from Nationstar, phone number 469-549-3089 (Texas/Central Time), on August 28, 2014 with a time stamp 7:48 a.m. (Oregon/Pacific Time) from Claudia Garcia.  I returned her call and left her voicemail with my email address at 5:46 p.m. August 28.  I'm not sure who Claudia is, as the letters I've received indicate most recently that my "single point of contact" is Amy Perez, and previously was Javier Garcia, neither whom have ever attempted to communicate with me.

As I've indicated repeatedly, I am not available by phone during the hours 4:00 a.m. to 8:00 p.m. Pacific Time due to my work hours.  I once again request that Nationstar contact with me via this email address, in order that Nationstar can communicate with me effectively.  This should not be so difficult.

I have not received responses from Nationstar to the four questions below and previously submitted by me have not been adequately or clearly answered by Nationstar.

Please respond to my request for clarification regarding these four items:

1.   **NATIONSTAR ACCOUNTING**

Based on Nationstar policy to apply payments with the attendant interest rate sequentially, I've outlined my record of the payments made, and due dates these payments should have been applied according to this Nationstar policy.  Please see the chart on page (3) below.  The column on the left indicates DUE DATE, the second column indicates DATE PAID, the third column indicates AMOUNT PAID, and the fourth column indicates PAYOR (Mary Strong and MPA Program payments).

Below is my accounting of escrow and principal/interest payments past due itemized, and a summary of Nationstar statement detail received by me November 2013 to March 2014:

1)   <u>Principal & Interest</u>:  My chart on page (3) below indicates twenty-five payments past due since September 2012 as of July 2014, including one payment made by Mary Strong and returned by Nationstar August 22, 2013.  At $398.34 per month, this total past due is $9,958.50.

## EXHIBIT 12

---

2) <u>Past-Due Escrow Balance Due</u>:  $8,156.87 ($7,180.87 taxes + $976.00 insurance).
   a) <u>Property Tax</u>:  Property taxes for 2011 ($2,345.27), 2012 ($2,362.02) and 2013 ($2,473.58) paid through escrow total $7,180.87.
   b) <u>Insurance</u>:  Hazard insurance paid through escrow for 2012 and 2013 based on current annual cost of $448.00 (see current Traveler's quote to Mary Strong for 2014/2015 renewal) is $976.00.

| | | | | | |
|---|---|---|---|---|---|
| Past due a/o July 2014: 25 months  @ $398.34 | $9,958.50 | | | | |
| Property Tax 2011 | $2,345.27 | | | | |
| Property Tax 2012 | $2,362.02 | | | | |
| Property Tax 2013 | $2,473.58 | | | | |
| *Insurance 2012 & 2013* | *$976.00* | *ESTIMATE - Pd by Nationstar - NO RECIPT* | | | |
| **TOTAL PAST DUE** | **$18,115.37** | | | | |
| Escrow balance | | **$8,156.87** | | | |

Please explain Nationstar's accounting for amounts due in excess of this $18,115.37 total past-due amount including escrows.  Please explain the disparity between my $18,115.37 calculation and the $29,338.82 amount past due indicated on the Nationstar statement sent to me dated January 21, 2014.

3) As requested on numerous occasions previously by me, please explain these persistent disparities in Nationstar's accounting for this mortgage loan.  Statements received by me November 2013 to March 2014:

**Nationstar Statement Detail**
**Nationstar Mortgage Loan Number 0598856094**

| STATEMENT DATE | AMOUNT DUE | INTEREST BEARING PRINCIPAL BALANCE | INTEREST RATE | ESCROW BALANCE | PRINCIPAL | INTEREST | ESCROW FOR TAXES AND INSURANCE | REGULAR MONTHLY PAYMENT | TOTAL FEES AND CHARGES | OVERDUE PAYMENTS | PARTIAL PAYMENT UNAPPLIE (???) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/18/14 | $18,701.31 | $182,099.05 | 3.000% | $10,902.64 | $0.00 | $455.25 | $276.02 | $731.27 | $314.30 | $17,655.74 | $1,077 |
| 2/19/14 | $18,026.95 | $182,099.05 | 2.625% | $10,902.64 | $56.91 | $398.34 | $276.02 | $731.27 | $314.30 | $16,981.38 | |
| 1/21/14 | $29,338.82 | $182,099.05 | 2.625% | $10,902.64 | ?? | $455.25 | $243.55 | $698.80 | $314.30 | $28,039.76 | |
| 1/14/2014 * | - | - | 2.625% | - | - | - | - | $641.89 | - | - | |
| 11/19/13 | $27,913.89 | $182,099.05 | 2.625% | $10,902.64 | ?? | $455.25 | $234.25 | $689.50 | $314.30 | $26,774.58 | $37 |
| * Letter advising interest rate effective 3/1/14 | | | | | | | | | | | |

(a) **Past Due Amounts:**  Please explain the November 19, 2013 statement indicating overdue payments of $26,774.58.

(b) **Amount Due Discrepancies**:  Why does the Amount Due on the January 21, 2014 show $29,338.82, and the Amount Due shown two months later on the March 18, 2014 statement shows $18,701.31?  Please explain the $10,637.51 difference in these two amounts, and itemize the $29,338.82 amount.

(c) **Principal & Interest Allocations**:  Why is the Principal amount of the monthly payment shown as $56.91 on the February 19, 2014 statement, and $0.00 on the March 18, 2014 statement?  Please explain this disparity.

(d) *Escrow Charges for Paid Insurance:*  Why is escrow being charged for insurance that has been prepaid by Mary Strong? *(Travelers Insurance - 2559 Hazard Insurance – $449.00 12-month premium paid 8/20/2013)*

**EXHIBIT 12**

---

(e) **Interest Rate:**  Please explain why the interest rate indicated on my monthly statements from Nationstar has not reflected the consistent drop in the published 6-Month LIBOR rate since January 2012 (see chart on page 4 below).  Specifically please explain why the rate on the March 18, 2014 statement shows 3% following the Nationstar Letter dated January 14, 2014 indicating the interest rate of 2.625%?

(f) **Fees & Charges:**  What are "fees & charges" shown?

(g) **Payments Made and Not Applied:**  What and why are "payments unapplied"?

**EXHIBIT 12**

| DUE DATE | PAID | AMOUNT | PAYOR |
|---|---|---|---|
| June, July & August 2010 | 9/13/2010 | $2,303.62 | MS |
| September 2011 | 10/4/2010 | $621.62 | MS |
| October & partial November 2010 | 10/22/2010 | $681.91 | MS |
| November 2010 bal pr Aurora letter 11/19 | 11/29/2010 | $249.02 | MS |
| Deember 2010 | 11/29/2010 | $445.40 | MS |
| January 2011 | 4/11/2011 | $417.31 | MS |
| February 2011 | 7/27/2012 | $455.27 | MPA |
| March 2011 | 7/27/2012 | $417.33 | MPA |
| April 2011 | 7/27/2012 | $417.33 | MPA |
| Mary 2011 | 5/31/2012 | $455.27 | MPA |
| June 2011 | 7/27/2012 | $417.33 | MPA |
| July 2011 | 7/27/2012 | $417.33 | MPA |
| *Country Financial (homeowner's insurance)* | *8/4/2011* | *$261.37* | *MS* |
| August 2011 | 8/14/2012 | $417.33 | MPA |
| September 2011 | 9/11/2012 | $417.33 | MPA |
| October 2011 | 10/11/2012 | $417.33 | MPA |
| November 2011 | 11/14/2012 | $417.33 | MPA |
| December 2011 | 12/12/2012 | $417.33 | MPA |
| January 2012 | 1/11/2013 | $417.33 | MPA |
| February 2012 | 4/24/2013 | $455.25 | MS |
| March 2012 | 6/10/2013 | $398.34 | MS |
| April 2012 | 8/19/2013 | $398.34 | MS |
| May 2012 | 8/30/2013 | $455.25 | MS |
| June 2012 | 9/16/2013 | $455.25 | MS |
| July 2012 | 10/2/2013 | $455.25 | MS |
| August 2012 | 4/10/2014 | $398.34 | MS |
| September 2012 | | | |
| October 2012 | | | |
| November 2012 | | | |
| December 2012 | | | |
| January 2013 | | | |
| February 2013 | | | |
| March 2013 | | | |
| April 2013 | | | |
| May 2013 | | | |
| June 2013 | | | |
| July 2013 | | | |
| *TRAVELERS - 2559 Insurance - 12 month* | *8/20/2013* | *$449.00* | *MS* |
| *NATIONSTAR REJECT/REFUND* | *8/22/2013* | *-$398.34* | |
| August 2013 | | | |
| September 2013 | | | |
| October 2013 | | | |
| November 2013 | | | |
| December 2013 | | | |
| January 2014 | | | |
| February 2014 | | | |
| March 2014 | | | |
| April 2014 | | | |
| May 2014 | | | |
| June 2014 | | | |
| July 2014 | | | |
| August 2014 | | | |

## EXHIBIT 12

| 6 MONTH LIBOR RATE | Add 2.25% | Rounded to nearest 1/8 of 1% (0.125%) | |
|---|---|---|---|
| January of 2012 | 0.797 | 3.047 | |
| February of 2012 | 0.7573 | 3.0073 | |
| March of 2012 | 0.7413 | 2.9913 | |
| April of 2012 | 0.7314 | 2.9814 | |
| May of 2012 | 0.733 | 2.983 | |
| June of 2012 | 0.7364 | 2.9864 | |
| July of 2012 | 0.7302 | 2.9802 | ⇩ |
| August of 2012 | 0.7175 | 2.9675 | |
| September of 2012 | 0.6717 | 2.9217 | |
| October of 2012 | 0.5823 | 2.8323 | |
| November of 2012 | 0.5283 | 2.7783 | |
| December of 2012 | 0.5142 | 2.7642 | |
| January of 2013 | 0.489 | 2.739 | ⇩ |
| February of 2013 | 0.4634 | 2.7134 | |
| March of 2013 | 0.4477 | 2.6977 | |
| April of 2013 | 0.4364 | 2.6864 | |
| May of 2013 | 0.4214 | 2.6714 | |
| June of 2013 | 0.414 | 2.664 | |
| July of 2013 | 0.4031 | 2.6531 | ⇩ |
| August of 2013 | 0.395 | 2.645 | |
| September of 2013 | 0.3804 | 2.6304 | |
| October of 2013 | 0.3612 | 2.6112 | |
| November of 2013 | 0.3506 | 2.6006 | |
| December of 2013 | 0.3467 | 2.5967 | |
| January of 2014 | 0.3384 | 2.5884 | ⇩ |
| February of 2014 | 0.3308 | 2.5808 | |
| March of 2014 | 0.3311 | 2.5811 | |
| April of 2014 | 0.3238 | 2.5738 | |
| May of 2014 | 0.3231 | 2.5731 | |
| June of 2014 | 0.3239 | 2.5739 | |
| July of 2014 | 0.3268 | 2.5768 | ⇩ |

**EXHIBIT 12**

## 2. HAMP MODIFICATION WATERFALL

Please advise why a 4.375% interest rate is being used to deny me a HAMP modification rather than calculating the 2% rate floor with no multiple of 1/8th as indicated in the published HAMP Forbearance Guide below:



## 3. REJECTED PAYMENT

Please explain why my $398.34 payment submitted 8/19/13 was rejected and returned and marked "RTD-REJECT/REFUND" by Nationstar 8/22/13. Please advise how I will be assured that payments made to this account going forward will be applied properly to this account.



**EXHIBIT 12**

**4. PREPAID HAZARD INSURANCE**

Please explain why escrow is being charged by Nationstar for insurance prepaid by Mary
Strong August 2013 (12 month premium):

| ACORD® | EVIDENCE OF PROPERTY INSURANCE | DATE (MM/DD/YYYY) 8/16/2013 |
|---|---|---|
| | | |

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE
ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE
COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE
ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| AGENCY | PHONE (A/C, No, Ext) | COMPANY |
|---|---|---|
| FOCUS FINANCIAL SERVICES | | TRAVELERS HOME AND MARINE COMPANY |
| 155 S CENTRAL AVE | | |
| EUREKA, MO 63025 | | |
| FAX (A/C, No) | E-MAIL ADDRESS | |
| CODE: UCFR09 | SUB CODE: | |
| AGENCY CUSTOMER ID# | | |

| INSURED | | LOAN NUMBER | POLICY NUMBER 990178S726 633 1 |
|---|---|---|---|
| MARY STRONG | | | |
| 2559 NW MONTEREY PINES DR | EFFECTIVE DATE 8/16/2013 | EXPIRATION DATE 8/16/2014 | CONTINUED UNTIL TERMINATED IF CHECKED |
| BEND, County CROOK, OR 97701-5272 | THIS REPLACES PRIOR EVIDENCE DATED: | | |

| PROPERTY INFORMATION |
|---|
| LOCATION/DESCRIPTION |
| 2559 NW MONTEREY PINES DR |
| BEND, County CROOK, OR 97701-5272 |

Please provide answers to my questions,  confirm that my future payments which will be
properly credited to my mortgage

*[signature]*

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905

Enclosed:  Emails dated July 12, July 13, July 14 and July 25, 2014

CC:    Sally ONeil, Enforcement Officer          Joyce Pierce, Compliance Specialist
       Consumer Protection Section               Department of Consumer & Business
Services
       Department of Justice                     Division of Finance and Corporate
Securities,
       1162 Court Street NE                       Mortgage Lending Section
       Salem, OR  97301 4096                     350 Winter St. NE, Room 410
                                                  Salem, OR 97309-0405

## EXHIBIT 12

---



9/10/2014

MARY STRONG
2559 NW MONTEREY PINES DR
BEND          OR      97701

Re: Loan Number:   0598856094
Returning Funds - Unacceptable Payment Amount

Dear Nationstar Customer,

At Nationstar Mortgage, we strive to keep our customers informed on matters relating to their loans.

We recently received a payment on your behalf in the amount of $   100.00          We are returning these funds as they are insufficient to bring your account current.

As of the date of this letter, the total amount required to bring this account current is: $ 23370.65          . Account statuses are subject to change. Please contact us for up-to-date account information and amounts owed.

If you have any questions, your Assigned Foreclosure Prevention Specialist is:    Amy Perez          and can be reached at:  (877) 782-7012      EXT  4670894    between the hours of 8:00 a.m. to 8:00 p.m. (CST) Monday through Thursday, and 8:00 a.m. and 6:00 p.m. (CST) on Friday; or via mail at the above listed mailing address.

You can also visit us online at www.MyNationstarMtg.com for more information.

Sincerely,

Nationstar Mortgage LLC
Customer Service Department

This is an attempt to collect a d...
If this account is active or has be...
purposes only and not an attem...
only against the property secur...

63322
60150      213          25

**EXHIBIT 13**

**Ellen F. Rosenblum**
Attorney General

*Enclosed:*
*x ausl dated 10/2/14*
*x Letter dated 8/30/14*
*x Lttr dated 10/22/14*
*x Lttr dtn 11/3/14*

Portland Area  (503) 229-5576
Salem Area  (503) 378-4320
Toll Free Area  (877) 877-9392
Fax  (503) 378-8910
www.oregonconsumer.gov

**OREGON DEPARTMENT OF JUSTICE**
**CONSUMER COMPLAINT FORM**

**Please Note the Following:**
Under Oregon Law, the Attorney General cannot act as your private attorney or give you legal advice.  Deadlines may prevent you from starting a lawsuit if you wait too long.  Filing this complaint does not change those deadlines or guarantee the results you want. You may wish to contact a private attorney. If you paid by credit card, the card issuer may offer relief (or protection).

1. Please use dark ink.  Type or print clearly.
2. Return this form with copies of important papers.
3. Keep your original papers.
4. Attach any additional explanation.

MARY    P.    STRONG
First Name    Middle Initial    Last Name

2559 NW MONTEREY PINES DRIVE
Mailing Address

BEND    OR    97701
City    State    Zip

541-728-7905      Marystrong@bendbroadband.com
Day Phone    Evening Phone    Cell phone number    Email address

NATIONSTAR MORTGAGE
Name of Business or person about which you are complaining

P.O. BOX 630348
Mailing/Street Address

IRVING    TX    75063
City    State    Zip

Phone

Date of Transaction(s): _____
Whom have you contacted regarding your complaint?

☐ Attorney _____
☐ Business _____
☑ Other DEPT. OF JUSTICE

How much money, if any, do you believe you lost? PLEASE SEE ATTACHED
☐ I am not requesting action on this complaint.
☐ I am over 65 years of age
☐ I am under 30 years of age
☐ English is not my first language
☐ I am a veteran
☐ I would like info on **Veteran's Benefits**

If you would like to receive **SCAM ALERTS**, print your email address: _____

**FOR OFFICIAL USE ONLY**

FF #: _____  Rec'd From: _____
Comp. Code: _____  Bus Code: _____  Ref'd To: _____
Comp. Code: _____  Bus Code: _____  Uncheck: ☐-Cons.Comp. ☐-Websrch
Closing Code: _____  Ltr Type: _____  Notes: _____
Rtn to: _____  Notify: _____
Cc: _____  $$Amt: _____
☐-ADS ☐-HJM ☐-GJD    DM#5557830   Rev: 7/7/2014

**EXHIBIT 14**

## DETAILS OF COMPLAINT
(attach additional pages if necessary)

If your complaint is about a cell phone account, please list the cell phone number here: _____

If your complaint is about a website, please list the website here: _____

PLEASE SEE DOCUMENTS ATTACHED
& ENCLOSED:
* email DATED 10/2/14
* Letter DATED 8/30/14
* Letter DATED 6/22/14
* Letter DATED 6/3/14

By my signature below, I understand a) this complaint will become part of DOJ's permanent records and is subject to Oregon's Public Records Law; b) this complaint may be released to the business or person about whom I am complaining; c) this complaint may be referred to another governmental agency. By my signature below I authorize any party to release to the DOJ any information and documentation relative to this complaint.

_____          10/2/14      ☐ Over 65?
Signature                                        Date

You can scan the completed form and documents and email to: help@oregonconsumer.gov or;
fax to: 503.378.5017 or;
mail to: Oregon Department of Justice
Financial Fraud/Consumer Protection Section
1162 Court St. NE
Salem, OR 97301.

## EXHIBIT 14

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Thursday, October 02, 2014 2:11 PM
**To:** 'Julie.Mejia@nationstarmail.com'; 'april.crane@nationstarmail.com'; 'Tommy.Price@nationstarmail.com'
**Cc:** 'joyce.l.pierce@state.or.us'; 'sally.oneil@doj.state.or.us'; marystrong@bendbroadband.com
**Subject:** RE: Response to Correspondence from Nationstar Mortgage Loan 0598856094

Regarding the Nationstar letter dated October 2, 2014, attached. This letter, once again, does not address any of the matters raised by me. Your statement *"Our records indicate your concerns regarding your payment history, billing statements, and modification denials have been addressed by Nationstar on multiple occasions"* is patently untrue. Nationstar has yet to address a single issue raised by me, repeatedly, as laid out in my attached letter dated August 30, 2014. I again request that Nationstar answer each item as laid out by me in this letter attached.

With respect to your statement in your letter attached:

> *"Nationstar is unable to determine why the payment for $100.00 has not been cashed. Typically, when a payment is not cashed it indicates we have not received the payment. Nationstar is unable to locate a missing check unless we have been provided with a front and back copy of the cashed check. Unfortunately, since the check has not been cashed, we are unable to locate the payment for $100.00"*

Please see below your letter dated September 10, 2014, mailed to me with my returned, uncashed check for $100, marked "VOID" by me after receiving it returned from Nationstar with this letter. Please explain this direct contradiction on the part of Nationstar.

**Your fraudulent actions in this matter are blatant.**

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701

**EXHIBIT 15**



9/10/2014

MARY STRONG
2559 NW MONTEREY PINES DR
BEND        OR      97701

Re: Loan Number: 0598850094
Returning Funds - Unacceptable Payment Amount

Dear Nationstar Customer,

At Nationstar Mortgage, we strive to keep our customers informed on matters relating to their loans.

We recently received a payment on your behalf in the amount of $  100.00        We are returning these funds as they are insufficient to bring your account current.

As of the date of this letter, the total amount required to bring this account current is: $ 23370.65                    . Account statuses are subject to change. Please contact us for up-to-date account information and amounts owed.

If you have any questions, your Assigned Foreclosure Prevention Specialist is:    Amy Perez                    and can be reached at:   (877) 782-7612        EXT  4070694    between the hours of 8:00 a.m. to 8:00 p.m. (CST) Monday through Thursday, and 8:00 a.m. and 6:00 p.m. (CST) on Friday, or via mail at the above listed mailing address.

You can also visit us online at www.MyNationstarMtg.com for more information.

Sincerely,

Nationstar Mortgage LLC
Customer Service Department

This is an attempt to collect a d...
if this account is active or has b...
purposes only and not an attem...
only to the property secure...

**EXHIBIT 15**

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701

RE:    **Mortgage Loan Number 059885609**
Oregon Foreclosure Avoidance Mediation Program
BI-130912-653 - Mary P. Strong    Nationstar

October 20, 2014

Nationstar Mortgage
P.O Box 630348
Irving, TX 75063

**ATTENTION:** **April Crane & Ashley Gregory**

I am enclosing here a check for $641.90 to be applied to my loan as follows:

**Property Address:  2559 NW Monterey Pines Drive Bend, OR 97701**

| | |
|---|---|
| **Interest:** | **$398.34** |
| **Property Tax:** | **$206.14** |
| **Hazard Insurance:** | **$ 37.42** |
| **Total payment:** | **$641.90** |

1. _**Tax:  $2,473.58 paid 11/12/13,  divided by 12 = $206.14; tax year 11/2013 through 11/2014**_

    **Deschutes County Tax Assessor:  Account History:**
    **_http://dial.deschutes.org/Real/TaxInformation/197885_**

| 2013 | 11-15-2013 | PAYMENT | 11-12-2013 | 11-15-2013 | $2,473.58 | |
|---|---|---|---|---|---|---|

2. _**Insurance:  $449.00 annual divided by 12= $37.42/month**_

I am still waiting for answers to my questions outlined in my August 30, 2014 letter requesting explanation for disparate and undocumented dollar amounts and total balances reported month to month  November 2013 through March 2014 in monthly statements mailed to me.

I still wait for explanation as to why my HAMP modification was denied based on HAMP guidelines  allowing a 2% rate and forbearance.

Kindly respond in writing to my request for explanation and clarification on these points.

Mary Strong

# **EXHIBIT 16**

Mary Strong
2559 NW Monterey Pines Drive
Program
Bend, OR 97701
Nationstar

**RE:    Mortgage Loan Number 059885609**
Oregon Foreclosure Avoidance Mediation

BI-130912-653 - Mary P. Strong

November 16, 2014

Nationstar Mortgage
P.O Box 630348
Irving, TX 75063

**ATTENTION:** **Derek Savells, April Crane,  Ashley Gregory**

Mr. Savells,

Your letter dated October 31, 2014 (attached here) shows the following language on the first page:

> We have conducted an investigation, and it was determined the error asserted within your correspondence did not occur on the account. You requested for Nationstar to explain the delinquent amount from you January 2014, Monthly Billing Statement. Please refer to the breakdown below. Please note that at the time this Monthly Billing Statement was ran, the account was contractually due to the March 1, 2012, monthly installment.

- **Total Amount Due at that time: $28,546.48**
- Of this amount Due:
  - $27,407.17 was unpaid monthly payments
  - $314.30 was unpaid late charges
  - $1,155.75 was lender paid expenses ($921.75 was for Legal Fees and $234.00 was for property inspections)

> We have also enclosed a copy of the most recent Monthly Billing Statement dated October 20, 2014, for your records. Please see the most recent breakdown below regarding the amount due.

- **Total Amount Due: $21,228.02**

Please explain the gross contradiction in your first bullet item "Total Amount Due at that time $28,546.48", and your third bullet item "Total Amount Due $21,228.02". Do you not see and acknowledge the contradiction in these two statements?  Perhaps you and I studied different forms of math in grade school?  $21,228.02 DOES NOT EQUAL $28,546.48.

Your response explaining your logic in your statement and claims of amounts due will be greatly appreciated.

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905

Mary Strong

Cc:  Oregon Department of Justice

**EXHIBIT 17**

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Friday, November 28, 2014 6:05 PM
**To:** 'SecureEmailReply@securemail1.messagelabs.com'; 'Derek.Savells@nationstarmail.com';
'casey.courtney@nationstarmail.com'
**Cc:** 'joyce.l.pierce@state.or.us'; marystrong@bendbroadband.com
**Subject:** RE: November 28, 2014 Correspondence from Nationstar Mortgage Loan 0598856094

Ms. Wills,

Please help me further to understand how the amount due between the March 1, 2012 and June 1, 2012 installments would equal $7,318.46, according to your statement below:

> " The statement dated December 18, 2013, reflected a total amount due of $28,546.48. At the time the statement was printed, *the account was due for the March 1, 2012 installment.* The statement dated October 20, 2014, reflected a total amount due of $21,228.02. At the time the statement was printed, *the account was due for the June 1, 2012 installment."*

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701

**From:** Mary Strong [mailto:marystrong@bendbroadband.com]
**Sent:** Friday, November 28, 2014 10:45 AM
**To:** SecureEmailReply@securemail1.messagelabs.com; Derek.Savells@nationstarmail.com;
casey.courtney@nationstarmail.com
**Cc:** joyce.l.pierce@state.or.us; marystrong@bendbroadband.com
**Subject:** November 28, 2014 Correspondence from Nationstar Mortgage Loan 0598856094

Please reference the language below in the attached letter to Joyce Pierce dated

> "Please be advised the two amounts listed on Mr. Savalles' correspondence dated October 31, 2014, were in regards to the total amount due as of December 18, 2013, and the total amount due as of October 20, 2014. Because Ms. Strong sent payments to Nationstar between December 18, 2013, and October 20, 2014, the total amount due decreased."

> " The statement dated December 18, 2013, reflected a total amount due of $28,546.48. At the time the statement was printed, the account was due for the March 1, 2012 installment. The statement dated October 20, 2014, reflected a total amount due of $21,228.02. At the time the statement was printed, the account was due for the June 1, 2012 installment."

Please explain this math.  Below is my record of payments made on this account since June 2010 (also attached).  Past due amount totals $17,717.03, not $21,228.02.  Please explain your delay crediting payments made through MPA, and your reconciliation of the $3,510.99 between your accounting and mine.

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701

# EXHIBIT 18

| DUE DATE | PAID | AMOUNT | PAYOR | | | |
|---|---|---|---|---|---|---|
| June, July & August 2010 | 9/13/2010 | $2,303.62 | MS | | | |
| September 2011 | 10/4/2010 | $621.62 | MS | | | |
| October & partial November 2010 | 10/22/2010 | $681.91 | MS | | | |
| November 2010 bal pr Aurora letter 11/19 | 11/29/2010 | $249.02 | MS | | | |
| Deember 2010 | 11/29/2010 | $445.40 | MS | | | |
| January 2011 | 4/11/2011 | $417.31 | MS | | | |
| February 2011 | 7/27/2012 | $455.27 | MPA | | | |
| March 2011 | 7/27/2012 | $417.33 | MPA | | | |
| April 2011 | 7/27/2012 | $417.33 | MPA | | | |
| Mary 2011 | 5/31/2012 | $455.27 | MPA | | | |
| June 2011 | 7/27/2012 | $417.33 | MPA | | | |
| July 2011 | 7/27/2012 | $417.33 | MPA | | | |
| *Country Financial (homeowner's insurance)* | *8/4/2011* | *$261.37* | *MS* | | | |
| August 2011 | 8/14/2012 | $417.33 | MPA | | | |
| September 2011 | 9/11/2012 | $417.33 | MPA | | | |
| October 2011 | 10/11/2012 | $417.33 | MPA | | | |
| November 2011 | 11/14/2012 | $417.33 | MPA | | | |
| December 2011 | 12/12/2012 | $417.33 | MPA | | | |
| January 2012 | 1/11/2013 | $417.33 | MPA | | | |
| February 2012 | 4/24/2013 | $455.25 | MS | | | |
| March 2012 | 6/10/2013 | $398.34 | MS | | | |
| April 2012 | 8/19/2013 | $398.34 | MS | | | |
| May 2012 | 8/30/2013 | $455.25 | MS | | | |
| June 2012 | 9/16/2013 | $455.25 | MS | | | |
| July 2012 | 10/2/2013 | $455.25 | MS | | | |
| August 2012 | 4/10/2014 | $398.34 | MS | | | |
| September 2012 - CHECK #1010 | 9/19/2014 | $641.90 | MS | | | |
| October 2012 - CHECK #1011 | 10/21/2014 | $641.90 | MS | | | |
| November 2012 - CHECK #1013 | 11/25/2014 | $649.23 | MS | | | |
| December 2012 | | | | | | |
| January 2013 | | | | | | |
| February 2013 | | | | | | |
| March 2013 | | | | | | |
| April 2013 | | | | | | |
| May 2013 | | | | | | |
| June 2013 | | | | | | |
| July 2013 | | | | | | |
| *TRAVELERS - 2559 Insurance - 12 month* | *8/20/2013* | *$449.00* | *MS* | | | |
| *NATIONSTAR REJECT/REFUND* | *8/22/2013* | *-$398.34* | | | | |
| August 2013 | | | | | | |
| September 2013 | | | | | | |
| October 2013 | | | | | | |
| November 2013 | | | | | | |
| December 2013 | | | | | | |
| January 2014 | | | | | | |
| February 2014 | | | | | | |
| March 2014 | | | | | | |
| April 2014 | | | | | | |
| May 2014 | | | | | | |
| June 2014 | | | | | | |
| July 2014 | | | | | | |
| August 2014 | | | | | | |
| September 2014 | | | | | | |
| October 2014 | | | | | | |
| November 2014 | | | | | | |
| | **TOTAL** | | | | | |
| Past due a/o December 2014: 24 months @ $398.34 | $9,560.16 | *(includes pmt made & returned 8/22/13* | | | | |
| Property Tax 2011 | $2,345.27 | | | | | |
| Property Tax 2012 | $2,362.02 | | | | | |
| Property Tax 2013 | $2,473.58 | | | | | |
| *Insurance 2012 & 2013* | *$976.00* | *ESTIMATE - Pd by Nationstar - NO RECIPT* | | | | |
| TOTAL PAST DUE | $17,717.03 | | | | | |
| Escrow balance | | $8,156.87 | | | | |

## EXHIBIT 18

**From:** Pierce Joyce L [mailto:joyce.l.pierce@state.or.us]
**Sent:** Wednesday, November 19, 2014 9:01 AM
**To:** 'Derek.Savells@nationstarmail.com'
**Cc:** Mary Strong (marystrong@bendbroadband.com); casey.courtney@nationstarmail.com
**Subject:** RE: October 31, 2014 Correspondence from Nationstar Mortgage Loan 0598856094

Mr. Savells,

I have been copied on a series of emails that have occurred between yourself, and Ms. Strong.  Thank you for keeping me in the loop regarding this ongoing matter.  However, because Ms. Strong has filed another complaint against Nationstar, please see attached, I will need to be copied on any response being sent to Ms. Strong regarding this matter or its subsequent resolution.

Thank you for your time and cooperation regarding this ongoing matter.

Sincerely,

Joyce Pierce
Mortgage Lending Section
Compliance Specialist
Division of Finance and Corporate Securities
503-947-7067 | Fax 503-947-7862
Joyce.L.Pierce@state.or.us


**From:**    "Mary Strong" <marystrong@bendbroadband.com>
**To:**      <Derek.Savells@nationstarmail.com>
**Cc:**      <april.crane@nationstarmail.com>, <joyce.l.pierce@state.or.us>, <Julie.Mejia@nationstarmail.com>, <sally.oneil@doj.state.or.us>, <Tommy.Price@nationstarmail.com>, <marystrong@bendbroadband.com>
**Date:**    11/15/2014 08:57 AM
**Subject:**    October 31, 2014 Correspondence from Nationstar Mortgage Loan 0598856094

Mr. Savells,

Your letter dated October 31, 2014 (attached here for your reference) shows the following language on the first page:

Please explain the gross contradiction in your first bullet item "Total Amount Due at that time $28,546.48", and your third bullet item "Total Amount Due $21,228.02".  Do you not see and acknowledge the contradiction in these two statements?  Perhaps you and I studied different forms of math in grade school?  $21,228.02 DOES NOT EQUAL $28,546.48.

Your response explaining your logic in your statement and claims of amounts due will be greatly appreciated.

Mary Strong
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905

## EXHIBIT 18

---

From: Mary Strong [mailto:marystrong@bendbroadband.com <mailto:marystrong@bendbroadband.com> ]
Sent: Wednesday, October 15, 2014 10:03 AM
To: 'Derek.Savells@nationstarmail.com'
Cc: 'april.crane@nationstarmail.com'; 'joyce.l.pierce@state.or.us'; 'Julie.Mejia@nationstarmail.com';
'sally.oneil@doj.state.or.us'; 'Tommy.Price@nationstarmail.com'; marystrong@bendbroadband.com
Subject: RE: 10.14.14 .Correspondence from Nationstar Mortgage Loan 0598856094

There has been no coherent response to ANY of my issues and questions raised on ANY correspondence I have
sent.  Please respond to questions raised in the correspondence provided.

Please insert your answers after each paragraph in my correspondence below.  How many more ways can I
continue asking you for the same thing?  I have highlighted these questions in red, in order to assure you can see
them clearly.

Mary Strong

**********************************

1.    NATIONSTAR ACCOUNTING
Based on Nationstar policy to apply payments with the attendant interest rate sequentially, I've outlined my
record of the payments made, and due dates these payments should have been applied according to this
Nationstar policy.  Please see the chart on page (3) below.  The column on the left indicates DUE DATE, the second
column indicates DATE PAID, the third column indicates AMOUNT PAID, and the fourth column indicates PAYOR
(Mary Strong and MPA Program payments).

Below is my accounting of escrow and principal/interest payments past due itemized, and a summary of Nationstar
statement detail received by me November 2013 to March 2014:

1)    Principal & Interest:  My chart on page (3) below indicates twenty-five payments past due since September
2012 as of July 2014, including one payment made by Mary Strong and returned by Nationstar August 22, 2013. At
$398.34 per month, this total past due is $9,958.50.

2)    Past-Due Escrow Balance Due:  $8,156.87 ($7,180.87 taxes + $976.00 insurance).

a)    Property Tax:  Property taxes for 2011 ($2,345.27), 2012 ($2,362.02) and 2013 ($2,473.58) paid through
escrow total $7,180.87.

b)    Insurance:  Hazard insurance paid through escrow for 2012 and 2013 based on current annual cost of $448.00
(see current Traveler's quote to Mary Strong for 2014/2015 renewal) is $976.00.

Please explain Nationstar's accounting for amounts due in excess of this $18,115.37 total past-due amount
including escrows.  Please explain the disparity between my $18,115.37 calculation and the $29,338.82 amount
past due indicated on the Nationstar statement sent to me dated January 21, 2014.

3)    As requested on numerous occasions previously by me, please explain these persistent disparities in
Nationstar's accounting for this mortgage loan.  Statements received by me November 2013 to March 2014:

(a)  Past Due Amounts:  Please explain the November 19, 2013 statement indicating overdue payments of
$26,774.58.

# EXHIBIT 18

(b)   Amount Due Discrepancies:  Why does the Amount Due on the January 21, 2014 show $29,338.82, and the Amount Due shown two months later on the March 18, 2014 statement shows $18,701.31?  Please explain the $10,637.51 difference in these two amounts, and itemize the $29,338.82 amount.

(c)   Principal & Interest Allocations:  Why is the Principal amount of the monthly payment shown as $56.91 on the February 19, 2014 statement, and $0.00 on the March 18, 2014 statement?  Please explain this disparity.

(d)   Escrow Charges for Paid Insurance:  Why is escrow being charged for insurance that has been prepaid by Mary Strong?  (Travelers Insurance - 2559 Hazard Insurance – $449.00 12-month premium paid 8/20/2013)

(e)   Interest Rate:  Please explain why the interest rate indicated on my monthly statements from Nationstar has not reflected the consistent drop in the published 6-Month LIBOR rate since January 2012 (see chart on page 4 below).  Specifically please explain why the rate on the March 18, 2014 statement shows 3% following the Nationstar Letter dated January 14, 2014 indicating the interest rate of 2.625%?

(f)   Fees & Charges:  What are "fees & charges" shown?

(g)   Payments Made and Not Applied:  What and why are "payments unapplied"?

2.    HAMP MODIFICATION WATERFALL
Please advise why a 4.375% interest rate is being used to deny me a HAMP modification rather than calculating the 2% rate floor with no multiple of 1/8th as indicated in the published HAMP Forbearance Guide below:

3.    REJECTED PAYMENT

Please explain why my $398.34 payment submitted 8/19/13 was rejected and returned and marked "RTD-REJECT/REFUND" by Nationstar 8/22/13.  Please advise how I will be assured that payments made to this account going forward will be applied properly to this account.cid:_2_0E5E2F400E5E2B880058F6F407257D72

4.    PREPAID HAZARD INSURANCE

Please explain why escrow is being charged by Nationstar for insurance prepaid by Mary Strong August 2013 (12 month premium):

# EXHIBIT 18

Mary Strong
*Plaintiff pro se*
2559 NW Monterey
Pines Drive
Bend, OR 97701
541-728-7905

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **MARY P. STRONG, an individual** | |
| **Plaintiff,** | |
| | **Case No. 16CV19876** |
| **vs.** | |
| | |
| **LEHMAN BROTHERS BANK, FSB,** | **APPLICATION FOR TEMPORARY** |
| **BAC HOME LOANS SERVICING** | **RESTRAINING ORDER,** |
| **LP., AND NATIONSTAR** | **PRELIMINARY INJUNCTION, AND** |
| **MORTGAGE LLC.; FEDERAL** | **DECLARATORY RELIEF** |
| **HOME LOAN MORTGAGE** | |
| **CORPORATION AS TRUSTEE FOR** | |
| **SECURITIZED TRUST FREDDIE** | |
| **MAC MULTICLASS** | |
| **CERTIFICATES, SERIES 2998;** | |
| **FREDDIE MAC; AURORA** | |
| **COMMERCIAL CORP.;** | |
| **NATIONSTAR MORTGAGE;** | |
| **MORTGAGE ELECTRONIC** | |
| **REGISTRATION SYSTEM, AKA** | |
| **"MERS" AND DOES 1 THROUGH** | |

100, INCLUSIVE

### Defendants.
_____

## APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

COMES NOW, Plaintiff MARY P. STRONG ("Plaintiff") and files *Verified Emergency Petition for Temporary Restraining Order and/or Preliminary Injunction,* **and Declaratory Relief** against the listed Defendants. A temporary restraining order is appropriate to maintain the status quo. Plaintiff's home will be sold within the next week and Plaintiff are subject to eviction actions, without immediate intervention from this Court.

### A. PARTIES

Plaintiff is now, and at all times relevant to this action, a resident of the County of DESCHUTES, State of OREGON.

At all times relevant to this action, Plaintiff has owned the Property located at 2559 NW MONTEREY PINES DRIVE BEND, OR 97701 (the "Property").

Defendant, LEHMAN BROTHERS BANK, FSB, BAC HOME LOANS SERVICING LP., and NATIONSTAR MORTGAGE LLC. (herein referred to as "LEHMAN BROTHERS, BAC, and NATIONSTAR") is a National Banking Association, doing business in the County of DESCHUTES, State of OREGON. Plaintiff is further informed and believes, and thereon alleges, that LEHMAN BROTHERS, BAC, and NATIONSTAR is the Originator of the loan.

Defendant, FEDERAL HOME LOAN MORTGAGE CORPORATION (herein referred to as "FREDDIE MAC"), as Trustee for securitized trust FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 2998 (herein referred to as "SERIES 2998"). Plaintiff is informed and believes, and thereon alleges that, Defendant FREDDIE MAC, is a national banking association, doing business in the County of DESCHUTES, State of OREGON and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, FREDDIE MAC. Plaintiff is informed and believes, and thereon alleges that, Defendant FREDDIE MAC, is a corporation, doing business in the County of DESCHUTES, State of OREGON and is the purported Sponsor for Securitized Trust and/or a purported

1

Exhibit 1
Page 133 of 144

participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Plaintiff is informed and believes, and thereon alleges that, Defendant is a corporation, doing business in the County of DESCHUTES, State of OREGON and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, AURORA COMMERCIAL CORP. Plaintiff is informed and believes, and thereon alleges that, Defendant AURORA COMMERCIAL CORP., is a corporation, doing business in the County of DESCHUTES, State of OREGON and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Plaintiff is informed and believes, and thereon alleges, that MERS is a corporation duly organized and existing under the laws of New York, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of DESCHUTES, State of OREGON. Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Mortgage/Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust, as more particularly described in this Complaint.

Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

2

## B. INTRODUCTION

On JUNE 28, 2005, plaintiff executed and delivered to defendant LEHMAN BROTHERS, BAC, and NATIONSTAR a promissory note payable to Originator in the amount of $182,200.

On JULY 29, 2005, as security to defendant LEHMAN BROTHERS, BAC, and NATIONSTAR for payment of the note, plaintiff executed a Mortgage/Deed of Trust/mortgage conveying to MERS as trustee for the Originator as beneficiary/mortgagee, that real property located at 2559 NW MONTEREY PINES DRIVE BEND, OR 97701, which is more specifically described as [legal description of real property]. The Mortgage/Deed of Trust/mortgage was recorded as document number #2005.42362 in the official records of DESCHUTES County, Oregon. This Mortgage/Deed of Trust/mortgage is referred to in this complaint as "the Mortgage/Deed of Trust/mortgage," and the property described in the Mortgage/Deed of Trust/mortgage is referred to as "the property." A copy of the Mortgage/Deed of Trust/mortgage is attached, marked Exhibit _____, and incorporated by reference.

Defendant LEHMAN BROTHERS, BAC, and NATIONSTAR did NOT cause to be recorded a notice of default in the official records of DESCHUTES County, Oregon, alleging that a breach of the obligation secured by the Mortgage/Deed of Trust/mortgage has occurred as required by law.

Defendants, and each of them, intend to sell the property, having given notice that sale of the property. Unless restrained, defendants, and each of them, will thus sell the property or cause the property to be sold. This sale would be to plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief, in that plaintiff, having no right to redeem the property from the sale, will forfeit the property if the sale takes place as scheduled.

## C. FACTUAL ALLEGATIONS

For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties,

negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

The loan product sold to Plaintiff in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiff of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff faces the potential of losing their home to the very entity and entities who placed them in this position.

On or about JUNE 28, 2005 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with LEHMAN BROTHERS, BAC, and NATIONSTAR by obtaining a $182,200 mortgage loan secured by Plaintiff's principal residence, 2559 NW MONTEREY PINES DRIVE BEND, OR 97701. This note was secured by a Deed on the Property in favor of LEHMAN BROTHERS, BAC, and NATIONSTAR.

The terms of the finance transaction with LEHMAN BROTHERS, BAC, and NATIONSTAR are not clear or conspicuous, nor consistent, and are illegal which violates several statutes and is in essence creates an illegal loan. Further, this loan was underwritten without proper due diligence by LEHMAN BROTHERS, BAC, and NATIONSTAR as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns. LEHMAN BROTHERS, BAC, and NATIONSTAR also used a "GDW Cost of Savings" as the Index for the basis of this loan, because the Lender controls this Index and it is directly based upon the average rate of interest LEHMAN BROTHERS, BAC, and NATIONSTAR parent company.

In addition, and unbeknownst to Plaintiff, LEHMAN BROTHERS, BAC, and NATIONSTAR illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan

4

which LEHMAN BROTHERS, BAC, and NATIONSTAR knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only. Had LEHMAN BROTHERS, BAC, and NATIONSTAR used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining comply with the requirement to provide Plaintiff with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff would not have qualified for the loan in the first place. Consequently, LEHMAN BROTHERS, BAC, and NATIONSTAR sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff. LEHMAN BROTHERS, BAC, and NATIONSTAR ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

How a particular mortgage loan ended up being transferred to a REMIC TRUST in the securitization process is governed by a contract known as a Pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions. Plaintiff's PSA required at minimum this chain of title.

A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be indorsed to the next party by the previous assignee of record.

In order for the Trustee of the Securitized REMIC Trust to have a valid and enforceable secured claim against Plaintiff's Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

    a.  There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

    b.  The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Plaintiff alleges that the Trust cannot demonstrate that it had perfected its security interest in Plaintiff's Home that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case.

Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff's herein and all other mortgage loans identified in the PSA.

Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Mortgage/Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to:

6

a. The splitting or separation of title, ownership and interest in Plaintiff's Note and Mortgage/Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff's Mortgage/Deed of Trust;

b. When the loan was sold to each intervening entity, there were no Assignments of the Mortgage/Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

c. The failure to assign and transfer the beneficial interest in Plaintiff's Mortgage/Deed of Trust to FREDDIE MAC, in accordance with the PSA of the Defendants, as Securitization Participants;

d. The failure to indorse, assign and transfer Plaintiff's Note and/or mortgage to Defendant FREDDIE MAC, as Trustee for SERIES 2998 Trust, in accordance with the PSA;

e. No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under OREGON law, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

f. Defendants, and each of them, violated the pertinent terms of the PSA.

### D. THE STANDARD FOR INJUNCTIVE RELIEF IS SATISFIED

PRELIMINARY INJUNCTION:

A preliminary injunction may issue under Oregon Rules of Civil Procedure 79, though most of the standards and factors applied to such injunctions are largely determined by case law as its issuance lies with the discretion of the court. *League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Zielinski*, 187 F. Supp. 2d 1263, 1267 (D. Or. 2002).

"A preliminary injunction may issue to a party that demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious

7

questions are raised and the balance of hardship tips in its favor. *Arcamuzi v. Continental Airlines Inc.,* 819 F.2d 935, 937 (9th Cir.1987). 'These two formulations represent two points on a sliding scale on which the required degree of irreparable harm increases as the probability of success decreases.' *Id.* If the plaintiff shows no chance of success on the merits, the injunction should not issue. *Id.* The court must also consider the public interest when that interest may be affected. *Caribbean Marine Serv. v. Baldrige,* 844 F.2d 668, 674 (9th Cir.1988); *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980). There must be some showing of irreparable harm for an injunction to issue. *Los Angeles Memorial Coliseum Commission,* 634 F.2d at 1202." *Far W. Fed. Bank, S.B. v. Dir., Office of Thrift Supervision,* 738 F. Supp. 1564, 1566 (D. Or. 1990).

TEMPORARY RESTRAINING ORDER:

Temporary restraining order are covered under the same rule in Oregon and are subject to the same case law standards. *Or. R. Civ. Pro.* 79; *League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Zielinski,* 187 F. Supp. 2d 1263, 1267 (D. Or. 2002).

<u>PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS AT TRIAL.</u>

The foreclosure sale and/or any further transfer of ownership or encumbrance must be enjoined because the evidence elicited demonstrates that Plaintiff will succeed on the merits at trial. Plaintiff has successfully alleged nine causes of action against Defendants in this case, including violations of TILA and RESPA; Fraud; Unfair and Deceptive Business Practice; Unconscionability; and Quiet Title.

At the very basis of Plaintiff's Complaint, based upon the facts outlined herein and above, Plaintiff has alleged and can demonstrate at trial that Defendants breached their PSA contract and through misrepresentation are about to foreclose on Plaintiff's real property, and that because of the securitization process Defendants and their predecessors in interest failed to properly assign Plaintiff's Mortgage note and Deed of Trust according to state law and the PSA governing the original loan.

**PRAYER**

WHEREFORE, plaintiff requests judgment as follows:

1. A temporary restraining order, a preliminary injunction, and a permanent injunction, all

8

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF          **Exhibit 1
Page 140 of 144**

enjoining defendants, defendants' agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the property, either under the power of sale in the Mortgage/Deed of Trust/mortgage or by foreclosure action;

2. A declaration by the court that sale of the property to enforce the Mortgage/Deed of Trust/mortgage is improper in that plaintiff has raised a claim that the defendant's do not legally hold the note or Mortgage/Deed of Trust and/or do not have right to foreclose on the subject property;

3. Costs of suit; and

4. Any further relief that the court may deem just and equitable.


Dated: _____


## **VERIFICATION**

I am the plaintiff in this action. I have read the foregoing complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of Oregon that the foregoing is true and correct.

9

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND
DECLARATORY RELIEF

Mary Strong, *Plaintiff, pro se*
2559 NW Monterey Pines Drive
Bend, OR 97701
541-728-7905

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

**MARY P. STRONG, an individual**

|  |  |
|---|---|
|  | **Case No. 16CV19876** |
| **vs.** |  |
| **LEHMAN BROTHERS BANK, FSB,** | **NOTICE OF PENDENCY OF ACTION** |
| **BAC HOME LOANS SERVICING** | |
| **LP., AND NATIONSTAR** | |
| **MORTGAGE LLC.; FEDERAL** | |
| **HOME LOAN MORTGAGE** | |
| **CORPORATION AS TRUSTEE FOR** | |
| **SECURITIZED TRUST FREDDIE** | |
| **MAC MULTICLASS** | |
| **CERTIFICATES, SERIES 2998;** | |
| **FREDDIE MAC; AURORA** | |
| **COMMERCIAL CORP.;** | |
| **NATIONSTAR MORTGAGE;** | |
| **MORTGAGE ELECTRONIC** | |
| **REGISTRATION SYSTEM, AKA** | |
| **"MERS" AND DOES 1 THROUGH** | |
| **100, INCLUSIVE** | |

## LIS PENDENS

PLEASE TAKE NOTICE that this action was commenced in the above named court by the above entitled Plaintiff against the above entitled Defendants, and is now pending.

The Plaintiff alleges a real property claim affecting real property located at 2559 NW MONTEREY PINES DRIVE BEND, OR 97701.

The land referred to herein is situated in the County of DESCHUTES, State of Oregon and bears the legal description as follows:

LOT 9 OF WESTSIDE PINES, PHASE II, CITY OF BEND, DESCHUTES COUNTY, OREGON

Dated: _____

Respectfully Submitted,

s/ Mary Strong_____
Mary Strong, Plaintiff, pro se

## VERIFICATION

1

NOTICE OF PENDENCY OF ACTION

**Exhibit 1**
**Page 143 of 144**

RECEIVED
LITIGATION

JUN 2 8 2016

DR

Exhibit 1
Page 144 of 144

Skip to Main Content  Logout  My Account  Search Menu  Search Civil, Family, Probate and Tax Court Case Records  Refine Search  Back

Location : All Locations    Images  Help

# REGISTER OF ACTIONS
## CASE NO. 16CV19876

| | | | |
|---|---|---|---|
| **Mary P Strong vs Lehman Brothers Bank** | § | Case Type: | **Property - General** |
| | § | Date Filed: | **06/23/2016** |
| | § | Location: | **Deschutes** |
| | § | | |
| | § | | |

---

### PARTY INFORMATION

| | | **Attorneys** |
|---|---|---|
| **Defendant** | **Lehman Brothers Bank** | |
| **Plaintiff** | **Strong, Mary P** | |

---

### EVENTS & ORDERS OF THE COURT

---

### FINANCIAL INFORMATION

| | | |
|---|---|---|
| **Plaintiff** Strong, Mary P | | |
| Total Financial Assessment | | 0.00 |
| Total Payments and Credits | | 531.00 |
| **Balance Due as of 07/25/2016** | | **(531.00)** |

| 06/23/2016 | Counter Payment | Receipt # 2016-2292468 | Strong, Mary P | (531.00) |
|---|---|---|---|---|

**Exhibit 2**
**Page 1 of 1**